# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, STATE OF CONNECTICUT and STATE OF TEXAS, )<br><br>*Plaintiffs,* )<br><br>v. )<br><br>CINGULAR WIRELESS CORPORATION, SBC COMMUNICATIONS INC., BELLSOUTH CORPORATION and AT&T WIRELESS SERVICES, INC., )<br><br>*Defendants.* ) | Civil No.: 1:04CV01850 (RBW)<br><br>Filed: November 3, 2004 |

### FINAL JUDGMENT

WHEREAS, plaintiffs, United States of America, and the states of Connecticut and Texas ("plaintiff states"), filed their Complaint on October 25, 2004, plaintiffs and defendants, Cingular Wireless Corporation, SBC Communications Inc., BellSouth Corporation and AT&T Wireless Services, Inc. ("AT&T Wireless"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the defendants to assure that competition is not substantially lessened;

AND WHEREAS, plaintiffs require defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to plaintiffs that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I.  **Jurisdiction**

This Court has jurisdiction over the subject matter of and each of the parties to this action.  The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II.  **Definitions**

As used in this Final Judgment:

A.  "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

B.  "AT&T Wireless" means defendant AT&T Wireless Services, Inc., a Delaware corporation with headquarters in Redmond, Washington, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.  "BellSouth" means defendant BellSouth Corporation, a Georgia corporation with headquarters in Atlanta, Georgia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

D.  "Cingular" means defendant Cingular Wireless Corporation, a Delaware corporation with headquarters in Atlanta, Georgia, and Cingular Wireless LLC, a Delaware limited liability company formed as a joint venture between SBC and BellSouth, with headquarters in Atlanta, Georgia, their successors and assigns, and their subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

E.  "Divestiture Assets" means Wireless Business Divestiture Assets, Spectrum License Divestiture Assets, and Minority Interests, including any direct or indirect financial ownership or leasehold interests and any direct or indirect role in management or participation in control therein.

F.  "Minority Interests" means the equity interests owned by any defendant in the following entities that are the licensees or operators of mobile wireless services businesses in the specified Metropolitan Statistical Areas ("MSAs") and Rural Statistical Areas ("RSAs") (collectively, Cellular Marketing Areas ("CMAs")) used to define cellular license areas by the Federal Communications Commission ("FCC"):

(1)  Alltel Communications of North Louisiana Cellular Limited Partnership, covering the Shreveport, Louisiana MSA (CMA 100), Monroe, Louisiana MSA (CMA 219), Louisiana RSA-1 (CMA 454), Louisiana RSA-2 (CMA 455) and Louisiana RSA-3 (CMA 456);

(2)  Athens Cellular Inc., covering the Athens, Georgia MSA (CMA 234);

(3)  CellTelCo, covering the St. Joseph, Missouri MSA (CMA 275);

(4)  Pittsfield Cellular Telephone Co., covering the Pittsfield, Massachusetts MSA (CMA 213); and

(5)  Topeka Cellular Telephone Co., Inc., covering the Topeka, Kansas MSA (CMA 179).

As an alternative to the divestiture of the Alltel Communications of North Louisiana Cellular Limited Partnership, CellTelCo, and Topeka Cellular Telephone Co., Inc. Minority Interests as required by Section IV of this Final Judgment, defendants may request, at least 20 days prior to consummation of the Transaction, approval from plaintiff United States to retain such interests. Plaintiff United States in its sole discretion may approve this request if it is demonstrated that the retained minority interest will become irrevocably and entirely passive, so long as defendants own the minority interests, and will not significantly diminish competition.

G.  "Multi-line Business Customer" means a corporate or business customer that contracts with AT&T Wireless for mobile wireless services to provide multiple telephones to its employees or members whose services are provided pursuant to a contract with the corporate or business customer.

H.  "SBC" means defendant SBC Communications Inc., a Delaware corporation with headquarters in San Antonio, Texas, its successors and assigns, and its subsidiaries, divisions,

groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

I.  "Skagit" means Skagit Wireless LLC, an Oregon corporation with headquarters in Portland, Oregon, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

J.  "Spectrum License Divestiture Assets" means a license for 10 MHz of contiguous PCS spectrum in the specified MSAs and Basic Trading Areas ("BTAs") used to define cellular and PCS license areas by the FCC:

(1)  the Dallas-Fort Worth, Texas MSA (CMA 009);

(2)  the Detroit, Michigan BTA (BTA 112), provided that the license to be transferred does not have to include any PCS spectrum in Monroe and Sanilac counties; and

(3)  the Knoxville, Tennessee BTA (BTA 232), provided that as an alternative to the divestiture of a license for 10 MHz of contiguous PCS spectrum as required by Section IV of this Final Judgment, defendants, with the approval of plaintiff United States in its sole discretion, can restructure AT&T Wireless's existing relationship with Skagit such that (i) defendants have no equity or leasehold interest in, hold no debt of, and have no managerial or operational interest in Skagit's PCS license in the Knoxville Tennessee BTA, and (ii) Skagit's PCS license in the Knoxville Tennessee BTA is contractually committed to be used in a manner that resolves the competitive concerns alleged by plaintiffs in the Complaint.

K.  "Transaction" means the Agreement and Plan of Merger By and Among AT&T Wireless Services, Inc., Cingular Wireless Corporation, Cingular Wireless LLC, Links I Corporation, SBC Communications Inc., and BellSouth Corporation, dated February 17, 2004.

L.  "Wireless Business Divestiture Assets" means, for each mobile wireless business to be divested under this Final Judgment, all types of assets, tangible and intangible, used by defendants in the operation of the mobile wireless businesses to be divested (including the provision of long distance telecommunications services for wireless calls).  "Wireless Business Divestiture Assets" shall be construed broadly to accomplish the complete divestitures of the entire business of AT&T Wireless in each of the following MSA and RSA license areas as required by this Final Judgment and to ensure that the divested mobile wireless businesses remain viable, ongoing businesses:

(a)  Oklahoma City, Oklahoma MSA (CMA 045);

(b)  Connecticut RSA-1 (CMA 357), provided that defendants may retain 10 MHz of AT&T Wireless's PCS spectrum, provided that 10 MHz of contiguous PCS spectrum throughout the RSA is divested to an Acquirer;

(c)  Kentucky RSA-1 (CMA 443), provided that defendants may retain 15 MHz of AT&T Wireless's PCS spectrum in Fulton county and 10 MHz of AT&T Wireless's PCS spectrum in the other counties contained within the RSA, provided that 30 MHz of contiguous PCS spectrum in Fulton county and 20 MHz of contiguous PCS spectrum in the other counties contained in the RSA is divested to an Acquirer;

(d)  Oklahoma RSA-3 (CMA 598); and

(e)  Texas RSA-11 (CMA 662), provided that defendants may retain 25 MHz of AT&T Wireless's PCS spectrum in Sabine county, and 20 MHz of AT&T Wireless's PCS spectrum in Angelina, Nacogdoches, and San Augustine counties, provided that 10 MHz of contiguous PCS spectrum throughout the RSA is divested to an Acquirer.

Wireless Business Divestiture Assets shall include, without limitation, all types of real and

personal property, monies and financial instruments, equipment, inventory, office furniture, fixed

assets and furnishings, supplies and materials, contracts, agreements, leases, commitments,

spectrum licenses issued by the FCC and all other licenses, permits and authorizations,

operational support systems, cell sites, network infrastructure, switches, customer support and

billing systems, interfaces with other service providers, business and customer records and

information, customer contracts, customer lists, credit records, accounts, and historic and current

business plans which relate primarily to the wireless business being divested, as well as any

patents, licenses, sub-licenses, trade secrets, know-how, drawings, blueprints, designs, technical

and quality specifications and protocols, quality assurance and control procedures, manuals and

other technical information defendants supply to their own employees, customers, suppliers,

agents, or licensees, and trademarks, trade names and service marks or other intellectual

property, including all intellectual property rights under third-party licenses that are capable of

being transferred to an Acquirer either in their entirety, for assets described in (1) below, or

through a license obtained through or from the divesting defendant, for assets described in (2)

below; provided that defendants shall only be required to divest Multi-line Business Customer

contracts, if 50 percent or more of the Multi-line Business Customer's subscribers reside or work

within any of the five (5) license areas described herein, and further, any subscribers who obtain

mobile wireless services through any such contract retained by defendants and who are located

within the five (5) geographic areas identified above, shall be given the option to terminate their

relationship with defendants, without financial cost, within one year of the closing of the

Transaction.  Defendants shall provide written notice to these subscribers within 45 days after the closing of the Transaction.

These divestitures of the Wireless Business Divestiture Assets shall be accomplished by:

(1)  transferring to the Acquirers the complete ownership and/or other rights to the assets (other than those assets used substantially in the operations of AT&T Wireless's overall wireless business which must be retained to continue the existing operations of the wireless properties that defendants are not required to divest, and that either are not capable of being divided between the divested wireless businesses and those not divested, or are assets that the defendants and the Acquirer(s) agree, subject to approval of plaintiff United States upon consultation with any relevant plaintiff state, shall not be divided); and

(2)  granting to the Acquirer(s) an option to obtain a non-exclusive, transferable license from defendants for a reasonable period, subject to approval of plaintiff United States upon consultation with any relevant plaintiff state, at the election of an Acquirer to use any of AT&T Wireless's retained assets under paragraph (1) above, used in the operation of the wireless business being divested, so as to enable the Acquirer to continue to operate the divested wireless business without impairment.  Defendants shall identify in a schedule submitted to plaintiffs and filed with the Court, as expeditiously as possible following the filing of the Complaint and in any event prior to any divestitures and before the approval by the Court of this Final Judgment, any intellectual property rights under third-party licenses that are used by the wireless businesses being divested but that defendants could not transfer to an Acquirer entirely or by license without third-party consent, and the specific reasons why such consent is necessary and how such consent would be obtained for each asset.

-8-

### III.  **Applicability**

A.  This Final Judgment applies to defendants Cingular, SBC, BellSouth and AT&T Wireless, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.  Defendants shall require, as a condition of the sale or other disposition of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, that the purchaser agrees to be bound by the provisions of this Final Judgment, provided that defendants need not obtain such an agreement from the Acquirer(s).

### IV.  **Divestitures**

A.  Defendants are ordered and directed, within 120 days after consummation of the Transaction, or five (5) days after notice of entry of this Final Judgment, whichever is later, to divest the Divestiture Assets to an Acquirer or Acquirers acceptable to plaintiff United States in its sole discretion upon consultation with any relevant plaintiff state, and, if applicable, to a Divestiture Trustee designated pursuant to Section V of this Final Judgment.   Plaintiff United States, in its sole discretion upon consultation with any relevant plaintiff state, may agree to one or more extensions of this time period not to exceed 60 days in total, and shall notify the Court in such circumstances.  With respect to divestiture of the Divestiture Assets by defendants or the Divestiture Trustee, if applications have been filed with the FCC within the period permitted for divestiture seeking approval to assign or transfer licenses to the Acquirer(s) of the Divestiture Assets, but an order or other dispositive action by the FCC on such applications has not been

issued before the end of the period permitted for divestiture, the period shall be extended with respect to divestiture of those Divestiture Assets for which FCC approval has not been issued until five (5) days after such approval is received. Defendants agree to use their best efforts to accomplish the divestitures set forth in this Final Judgment and to seek all necessary regulatory approvals as expeditiously as possible. This Final Judgment does not limit the FCC's exercise of its regulatory powers and process with respect to the Divestiture Assets. Authorization by the FCC to conduct the divestiture of a Divestiture Asset in a particular manner will not modify any of the requirements of this decree.

B. In accomplishing the divestitures ordered by this Final Judgment, defendants shall promptly make known, if they have not already done so, by usual and customary means, the availability of the Divestiture Assets. Defendants shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client or work product privileges. Defendants shall make available such information to plaintiffs at the same time that such information is made available to any other person.

C. Defendants shall provide to the Acquirer(s) and plaintiffs information relating to the personnel involved in the operation, development, and sale of the Wireless Business Divestiture Assets to enable the Acquirer(s) to make offers of employment. Defendants will not interfere with any negotiations by the Acquirer(s) to employ any defendant employee whose primary

responsibility is the operation, development, and sale of the Wireless Business Divestiture Assets.

D.  Defendants shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, and other documents and information customarily provided as part of a due diligence process.

E.  Defendants shall warrant to all Acquirer(s) that (1) each asset of the Wireless Business Divestiture Assets will be operational on the date of sale, and (2) every wireless spectrum license is in full force and effect on the date of sale.

F.  Defendants shall not take any action that will impede in any way the permitting, licensing, operation, or divestiture of the Divestiture Assets.

G.  Defendants shall warrant to the Acquirer(s) of the Divestiture Assets that there are no material defects in the environmental, zoning, licensing or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, licensing or other permits relating to the operation of the Divestiture Assets.

H.  Unless plaintiff United States otherwise consents in writing, upon consultation with any relevant plaintiff state, the divestitures pursuant to Section IV, or by a Divestiture Trustee appointed pursuant to Section V of this Final Judgment, shall include the entire Divestiture Assets and with respect to the Wireless Business Divestiture Assets and Spectrum License

-11-

Divestiture Assets, shall be accomplished in such a way as to satisfy plaintiff United States, in its sole discretion upon consultation with any relevant plaintiff state, that these assets can and will be used by the Acquirer(s) as part of a viable, ongoing business engaged in the provision of mobile wireless services.  Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of plaintiff United States upon consultation with any relevant plaintiff state, that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint.  The divestitures of the Wireless Business Divestiture Assets and Spectrum License Divestiture Assets, whether pursuant to Section IV or Section V of this Final Judgment,

(1)      shall be made to an Acquirer (or Acquirers) that, in plaintiff United States's sole judgment upon consultation with any relevant plaintiff state, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the provision of mobile wireless services; and

(2)      shall be accomplished so as to satisfy plaintiff United States in its sole discretion upon consultation with any relevant plaintiff state, that none of the terms of any agreement between the Acquirer (or Acquirers) and any defendant shall give defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere with the ability of the Acquirer to compete effectively.

I.  At the option of the Acquirer(s), defendants shall enter into a contract for transition services customarily provided in connection with the sale of a business providing mobile wireless services sufficient to meet all or part of the needs of the Acquirer's(s) needs for a period

of up to one year.  The terms and conditions of any contractual arrangement meant to satisfy this

provision must be reasonably related to market conditions.

J.  To the extent that the mobile wireless businesses to be divested use intellectual

property, as required to be identified by Section II.L, that cannot be transferred or assigned

without the consent of the licensor or other third parties, defendants shall use their best efforts to

obtain those consents.

K.  In the event plaintiff United States approves retention of any Minority Interests,

defendants shall not obtain any additional equity interest in such entity.

# V.  <u>Appointment of Divestiture Trustee</u>

A.  If defendants have not divested the Divestiture Assets within the time period

specified in Section IV.A, defendants shall notify plaintiff United States and any relevant

plaintiff state of that fact in writing, specifically identifying the Divestiture Assets that have not

been divested.  Then, upon application of plaintiff United States, upon consultation with any

plaintiff state, the Court shall appoint a Divestiture Trustee selected by plaintiff United States

and approved by the Court to effect the divestiture of the Divestiture Assets. The Divestiture

Trustee, will have all the rights and responsibilities of the Management Trustee appointed

pursuant to the Preservation of Assets Stipulation and Order, and will be responsible for:

(1)  accomplishing divestiture of all Divestiture Assets transferred to the

Divestiture Trustee from defendants, in accordance with the terms of this Final Judgment, to an

Acquirer or Acquirers approved by plaintiff United States, upon consultation with any relevant plaintiff state, under Sections IV.A and IV.C of this Final Judgment, and

(2)  exercising the responsibilities of the licensee of any transferred Divestiture Assets and controlling and operating any transferred Wireless Business Divestiture Assets, to ensure that the businesses remain ongoing, economically viable competitors in the provision of mobile wireless services in the five (5) license areas specified in the Wireless Business Divestiture Assets, until they are divested to an Acquirer or Acquirers, and the Divestiture Trustee shall agree to be bound by this Final Judgment.

B.  Defendants shall submit a proposed trust agreement ("Trust Agreement") to plaintiff United States and any relevant plaintiff state, which must be consistent with the terms of this Final Judgment and which must receive approval by plaintiff United States in its sole discretion, upon consultation with any relevant plaintiff state, who shall communicate to defendants within ten (10) business days its approval or disapproval of the proposed Trust Agreement, and which must be executed by the defendants and the Divestiture Trustee within five (5) business days after approval by plaintiff United States; and

C.  After obtaining any necessary approvals from the FCC for the assignment of the licenses of the remaining Divestiture Assets to the Divestiture Trustee, defendants shall irrevocably divest the remaining Divestiture Assets to the Divestiture Trustee, who will own such assets (or own the stock of the entity owning such assets, if divestiture is to be effected by the creation of such an entity for sale to Acquirer(s)) and control such assets, subject to the terms of the approved Trust Agreement.

D.  After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the Divestiture Assets.  The Divestiture Trustee shall have the power and authority to accomplish the divestiture to an Acquirer(s) acceptable to plaintiff United States, in its sole judgment upon consultation with any relevant plaintiff state, at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate.  Subject to Section V.G of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of defendants the Management Trustee appointed pursuant to the Preservation of Assets Stipulation and Order, and any investment bankers, attorneys or other agents, who shall be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture.

E.  In addition, notwithstanding any provision to the contrary, plaintiff United States, in its sole discretion upon consultation with any relevant plaintiff state, may require defendants to include additional assets, or allow, with the written approval of plaintiff United States, defendants to substitute substantially similar assets, which substantially relate to the Wireless Business Divestiture Assets to be divested by the Divestiture Trustee to facilitate prompt divestiture to an acceptable Acquirer.

F.  Defendants shall not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance.  Any such objections by defendants must be conveyed in writing to plaintiff United States, any relevant plaintiff state, and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section VI.

G.  The Divestiture Trustee shall serve at the cost and expense of defendants, on such terms and conditions as plaintiff United States approves, and shall account for all monies derived from the sale of the assets sold and all costs and expenses so incurred.  After approval by the Court of the Divestiture Trustee's accounting, including fees for its services and those of any professionals and agents retained by the Divestiture Trustee, all remaining money shall be paid to defendants and the trust shall then be terminated.  The compensation of the Divestiture Trustee and any professionals and agents retained by the Divestiture Trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the Divestiture Trustee with an incentive based on the price and terms of the divestiture, and the speed with which it is accomplished, but timeliness is paramount.

H.  Defendants shall use their best efforts to assist the Divestiture Trustee in accomplishing the required divestitures including their best efforts to effect all necessary regulatory approvals and will provide any necessary representations or warranties as appropriate related to sale of the Divestiture Assets.  The Divestiture Trustee and any consultants, accountants, attorneys, and other persons retained by the Divestiture Trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and defendants shall develop financial and other information relevant to the assets to be divested as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information.  Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestitures.

I.  After its appointment, the Divestiture Trustee shall file monthly reports with plaintiff United States, any relevant plaintiff state, and the Court setting forth the Divestiture Trustee's efforts to accomplish the divestitures ordered under this Final Judgment.  To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court.  Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person.  The Divestiture Trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

J.  If the Divestiture Trustee has not accomplished such divestitures within six months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestitures, (2) the reasons, in the Divestiture Trustee's judgment, why the required divestitures have not been accomplished, and (3) the Divestiture Trustee's recommendations.  To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court.  The Divestiture Trustee shall at the same time furnish such report to the plaintiff United States and any relevant plaintiff state who shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's

appointment by a period requested by plaintiff United States upon consultation with any relevant plaintiff state.

K.  After defendants transfer the Divestiture Assets to the Divestiture Trustee, and until those Divestiture Assets have been divested to an Acquirer or Acquirers approved by plaintiff United States pursuant to Section IV.A and IV.H, the Divestiture Trustee shall have sole and complete authority to manage and operate the Divestiture Assets and to exercise the responsibilities of the licensee, and shall not be subject to any control or direction by defendants. Defendants shall not retain any economic interest in the Divestiture Assets transferred to the Divestiture Trustee, apart from the right to receive the proceeds of the sale or other disposition of the Divestiture Assets.

L.  The Divestiture Trustee shall operate the Wireless Business Divestiture Assets consistent with the Preservation of Assets Stipulation and Order and this Final Judgment, with control over operations, marketing and sales.  Defendants shall not attempt to influence the business decisions of the Divestiture Trustee concerning the operation and management of the Wireless Business Divestiture Assets, and shall not communicate with the Divestiture Trustee concerning divestiture of the Divestiture Assets or take any action to influence, interfere with, or impede the Divestiture Trustee's accomplishment of the divestitures required by this Final Judgment, except that defendants may communicate with the Divestiture Trustee to the extent necessary for defendants to comply with this Final Judgment and to provide the Divestiture Trustee, if requested to do so, with whatever resources or cooperation may be required to complete  divestiture of the Divestiture Assets and to carry out the requirements of the Preservation of Assets Stipulation and Order and this Final Judgment.  Except as provided in this

-18-

Final Judgment and the Preservation of Assets Stipulation and Order, in no event shall defendants provide to, or receive from, the Divestiture Trustee or the mobile wireless businesses under the Divestiture Trustee's control any non-public or competitively sensitive marketing, sales, or pricing information relating to their respective mobile wireless businesses.

## VI.  <u>Notice of Proposed Divestitures</u>

A.  Within two (2) business days following execution of a definitive divestiture agreement, defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestitures required herein, shall notify plaintiff United States and any relevant plaintiff state in writing of any proposed divestiture required by Section IV or V of this Final Judgment.  If the Divestiture Trustee is responsible, it shall similarly notify defendants.  The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.  Within fifteen (15) calendar days of receipt by plaintiff United States and any relevant plaintiff state of such notice, plaintiff United States and any relevant plaintiff state may request from defendants, the proposed Acquirer or Acquirers, any other third party, or the Divestiture Trustee if applicable additional information concerning the proposed divestiture, the proposed Acquirer or Acquirers, and any other potential Acquirer.  Defendants and the Divestiture Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.  Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after plaintiff United States and any relevant plaintiff state have been provided the additional information requested from defendants, the proposed Acquirer or Acquirers, any third party, and the Divestiture Trustee, whichever is later, plaintiff United States, upon consultation with any relevant plaintiff state, shall provide written notice to defendants and the Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture.  If plaintiff United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V.F of this Final Judgment.  Absent written notice that plaintiff United States does not object to the proposed Acquirer or upon objection by plaintiff United States, a divestiture proposed under Section IV or Section V shall not be consummated.  Upon objection by defendants under Section V.F, a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII.  <u>Financing</u>

Defendants shall not finance all or any part of any divestiture made pursuant to Section IV or V of this Final Judgment.

## VIII.  <u>Preservation of Assets</u>

Until the divestitures required by this Final Judgment have been accomplished, defendants shall take all steps necessary to comply with the Preservation of Assets Stipulation

and Order entered by this Court.  Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## IX. Affidavits

A.  Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV or V of this Final Judgment, defendants shall deliver to plaintiff United States and any relevant plaintiff state an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment.  Each such affidavit shall include the name, address, and telephone number of each person who during the preceding thirty (30) days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period.  Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information.  Assuming the information set forth in the affidavit is true and complete, any objection by plaintiff United States, after consultation with any relevant plaintiff state, to information provided by defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.  Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to plaintiff United States and any relevant plaintiff state an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have

implemented on an ongoing basis to comply with Section VIII of this Final Judgment.

Defendants shall deliver to plaintiff United States and any relevant plaintiff state an affidavit

describing any changes to the efforts and actions outlined in defendants' earlier affidavits

provided pursuant to this section within fifteen (15) calendar days after the change is

implemented.

C.  Defendants shall keep all records of all efforts made to preserve and divest the

Divestiture Assets until one year after such divestitures have been completed.


## X.  Compliance Inspection

A.  For the purposes of determining or securing compliance with this Final Judgment, or

of determining whether the Final Judgment should be modified or vacated, and subject to any

legally recognized privilege, from time to time duly authorized representatives of the United

States Department of Justice, including consultants and other persons retained by the United

States, shall, upon written request of a duly authorized representative of the Assistant Attorney

General in charge of the Antitrust Division, and on reasonable notice to defendants, be

permitted:

(1)  access during defendants' office hours to inspect and copy, or at plaintiff

United States' option, to require defendants provide copies of, all books, ledgers, accounts,

records and documents in the possession, custody, or control of defendants, relating to any

matters contained in this Final Judgment; and

(2)  to interview, either informally or on the record, defendants' officers,

employees, or agents, who may have their individual counsel present, regarding such matters.

The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.  Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.  No information or documents obtained by the means provided in this section shall be divulged by plaintiff United States to any person other than an authorized representative of the executive branch of the United States or, pursuant to a customary protective Order or waiver of confidentiality by defendants, the FCC, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.  If at the time information or documents are furnished by defendants to plaintiff United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then plaintiff United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI.  <u>No Reacquisition</u>

Defendants may not reacquire or lease any part of the Divestiture Assets during the term of this Final Judgment.

-23-

## XII.  Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII.  Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XIV.  Public Interest  Determination

Entry of this Final Judgment is in the public interest.

Date:  _____

_____
**United States District Judge**