## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | Civil Action No. 1:05CV02102 (EGS) |
| ) | |
| **SBC Communications, Inc. and** ) | |
| **AT&T Corp.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | Civil Action No. 1:05CV02103 (EGS) |
| ) | |
| **Verizon Communications, Inc. and** ) | |
| **MCI, Inc.,** ) | |
| ) | |
| **Defendants.** ) | |

**COMPTEL'S REPLY TO OPPOSITION OF THE UNITED STATES, AT&T, AND VERIZON TO COMPTEL'S MOTION FOR LEAVE TO INTERVENE, OR IN THE ALTERNATIVE, TO PARTICIPATE AS *AMICUS CURIAE***

## TABLE OF CONTNENTS

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................2

I.     THE OPPOSITIONS RAISE TRIVIAL OBJECTIONS...........................3

II.    COMPTEL SATISFIES THE STANDARDS FOR PERMISSIVE
INTERVENTION ....................................................................................7

     A.    A "Peek at the Merits" Establishes that COMPTEL's Intervention
Will Not Unduly Delay or Prejudice the Rights of the Parties .........................7

          1.    COMPTEL Should Be Given the Opportunity to Persuade the
Court that the Consent Judgments Are Contrary to the Public Interest......8

          2.    COMPTEL's Entry as a Party Will Not Unduly Prejudice
Any Original Party ..................................................................................11

          3.    COMPTEL's Limited Discovery Requests Are Essential to the
Court's Inquiry and Will Not Cause Undue Delay ....................................12

     B.    COMPTEL Has A "Claim" Within the Meaning of Rule 24(b)(2) .................13

     C.    COMPTEL's Pleading Is Not Procedurally Defective .....................................15

     D.    COMPTEL Has Already Demonstrated that the Government Is Not
Aggressively Representing the Public Interest .................................................16

CONCLUSION...................................................................................................17

## TABLE OF AUTHORITIES

## FEDERAL CASES

Diamond v. Charles,
476 U.S. 54 (1986)......................................................................................14

Equal Employment Opportunity Commission v. National Children's Ctr., Inc.,
146 F.3d 1042 (D.C. Cir 1998) .............................................................15, 16

In re Applications of GTE Corporation, Transferor, and Bell Atlantic
Corporation, 15 FCC Rcd. 14032, 2000 FCC LEXIS 5946 .........................5

In the Matter of SBC Communications, Inc. and AT&T Corp.,
20 FCC Rcd. 18290, 2005 FCC LEXIS 6385................................................5

In the Matter of Verizon Communications, Inc. and MCI, Inc.,
20 FCC Rcd. 18433, 2005 FCC LEXIS 6386................................................6

Massachusetts v. Microsoft Corp.,
362 F.3d 1199 (D.C. Cir. 2004) ..................................................................16

United States v. Alex Brown & Sons,
169 F.R.D. 532 (S.D.N.Y. 1996) .................................................................13

United States v. American Cyanamid Co.,
719 F.2d 558 (2nd Cir. 1982).......................................................................15

United States v. BNS, Inc.,
858 F.2d 456 (9th Cir. 1988) .........................................................................5

United States v. LTV Corp.,
746 F.2d 51 (D.C. Cir. 1984) .......................................................................16

United States v. Mass. Sch. of Law at Andover, Inc.,
118 F.3d 776 (D.C. Circuit 1997).........................................7, 8, 13, 14, 16

United States v. Thompson Corp.,
1996-2 Trade Cas. (CCH) ¶ 71,620 (D.D.C. Sept. 25, 1996)................16, 17

## FEDERAL STATUTES

15 U.S.C. § 16........................................................................5, 9, 10, 12, 14, 15

15 U.S.C. § 18..................................................................................................1

Fed. R. Civ. P. 24 ............................................................................................................7, 15

## MISCELLANEOUS MATERIAL

Pub. L. No. 108-237, Tit. II, § 221(a)(1)(B), 118 Stat. 661, 668 (2004) .............................4

DOJ Merger Remedies Guide .....................................................................................12, 18

COMPTEL hereby respectfully submits this Reply to Opposition of the United States, AT&T and Verizon to COMPTEL's Motion for Leave to Intervene, or, in the Alternative, to Participate as *Amicus Curiae*.

## INTRODUCTION

The underlying Complaints filed in these consolidated actions allege serious and substantial violations of Section 7 of the Clayton Act, 15 U.S.C. § 18.  Specifically the Complaints allege that:

> "[t]he transaction would likely have the following effects, among others:
>
> a.    competition in the provision and sale of Local Private Lines in numerous geographic markets would be eliminated or substantially lessened;
>
> b.    competition in the provision and sale of voice and data telecommunications services that rely on Local Private Lines in numerous geographic markets would be substantially lessened; and
>
> c.    prices for Local Private Lines, as well as voice and data telecommunications services provided via Local Private Lines, would likely increase to levels above those that would prevail absent the merger[s]."

Compl.'s ¶ 33.

If the proposed remedies fail to restore the competition that the Department of Justice ("DOJ") alleges will be eliminated by these mergers, it is COMPTEL's members--those that purchase private lines from Defendants, and those that attempt to sell private lines in competition with Defendants—that stand to suffer the most harm. Unfortunately, the relief proposed by the DOJ ignores both Supreme Court precedent and the DOJ's own guidelines by not requiring the divestiture of ongoing businesses that can replace the competitive importance of the pre-merger AT&T and MCI.

DOJ has gone even further, though.  By rejecting and flouting the very amendments that Congress passed in 2004 to require a full public interest review by the court, the DOJ has attempted to cause this Court to abandon its responsibilities and rubber stamp its consent

1

decrees. In seeking to deny COMPTEL both intervenor status and status as an amicus, DOJ and

the Defendants misrepresent the law and distort the competitive significance of the violations

alleged in the Complaints.

## ARGUMENT

On February 8, 2006, COMPTEL filed with the Court a Motion to Intervene, or, in the

Alternative, to Participate as *Amicus Curiae* in these Tunney Act Proceedings ("COMPTEL

Motion").  COMPTEL explained that it should be granted intervenor status under Federal Rule

of Civil Procedure 24(b) in order to more fully assist the court in evaluating whether it is in the

public interest for the Court to enter a consent decree that falls woefully short of restoring the

competition that the Department of Justice asserts in its Complaints will be lost in certain

metropolitan markets for local private line service.  COMPTEL explained that the facts of this

case, including: 1) the complexity of the industry involved; 2) the Court's expanded scope of

public interest review under the Tunney Act Reform – and the DOJ's failure to provide the

requisite information that would allow the Court to undertake this expanded scope of review –

and 3) a proffered remedy that is wholly inadequate (under both Supreme Court standards and

DOJ guidelines) to address the harms identified in the Complaints, argued for permissive

intervention by COMPTEL.  Specifically, COMPTEL asked

> permission to intervene for the limited purpose of (1) submitting to the Court a
> response to the Government's response to COMPTEL's comments; (2)
> participating in hearings held by the Court (or seeking a hearing if necessary); and
> (3) any discovery relevant to DOJ's relevant market definition, competitive effect
> in the relevant market, and any information DOJ considered in determining the
> proposed remedy.

COMPTEL Motion at 1.  In the alternative, COMPTEL requested permission to participate to a

similar extent as *amicus curiae*.  *Id.*

## I.     THE OPPOSITIONS RAISE TRIVIAL OBJECTIONS

On February 22, 2006, the DOJ and both Defendants filed Oppositions to COMPTEL's Motion. All parties opposed any participation by COMPTEL, beyond filing written comments with the DOJ. COMPTEL filed such comments on February 13, 2006. All parties claim that COMPTEL has not demonstrated that it should be granted permissive intervention under Rule 24(b). The DOJ, however, goes further than the Defendants and says that even if COMPTEL meets the Court's standards for permissive intervention, the Court should refuse COMPTEL such further participation as a matter of discretion. Finally, all parties argue that COMPTEL should also be denied the ability to participate as *amicus curiae*—but for different reasons. DOJ argues that COMPTEL's request is premature, (Mem. of United States in Opp'n to COMPTEL's Mot. for Leave to Intervene or in the Alternative to Participate as *Amicus Curiae* ("DOJ Opp'n") at 1) while Verizon contends that COMPTEL has filed too late (*See* Mem. of Verizon Communications Inc. in Opp'n to COMPTEL's Mot. for Leave to Intervene, or in the Alternative to Participate as *Amicus Curiae* ("Verizon Opp'n") (citing D.C. Cir. R. 29(b)) at 10).

Some of the objections raised by the parties are obviously baseless—such as their objections to COMPTEL's participation as *amicus curiae* and DOJ's insistence that the Court not grant COMPTEL permissive intervenor status, regardless of the merits of its request. Others—such as those raised primarily by Defendants (which conflate the FCC's license transfer proceeding, the investigation by DOJ, and the present proceeding as a unified "government" effort)—are as misleading as they are specious.

Additionally, the Defendants (but not DOJ) say that the Court should deny COMPTEL's Motion, because it has not demonstrated that the DOJ is failing to "vigorously and faithfully represent[] the public interest." *Id.* at 4; AT&T Inc.'s Mem. of Points and Authorities in Opp'n to COMPTEL's Mot. for Leave to Intervene, or in the Alternative, to Participate as *Amicus*

*Curiae* ("AT&T Opp'n") at 1.  This statement, from these Defendants, is indeed ironic.  There are now only two Defendants, despite four Defendants being listed in the Complaints before this Court.  This is because, as COMPTEL explained in its Motion, the DOJ has allowed the parties to consummate their mergers, in one case, prior to even initiating the comment period under the Tunney Act. SBC and AT&T closed their merger on November 18, 2005.  Almost a full month later, on December 15, 2005, the DOJ initiated the 60 day comment period with its Federal Register publication.  Verizon closed its acquisition of MCI about three weeks after publication, on January 6, 2006.   Allowing the consolidation to occur without waiting for the Court's public interest determination seriously impedes the ability of the Court to perform the meaningful review required by the Tunney Act.

These are both significant mergers.  Congress modified the Tunney Act less than two years ago in order to ensure that district courts had both the discretion, and the affirmative obligation, to undertake a rigorous independent analysis of whether entry of the proffered consent decree is in the public interest.[1]  If the DOJ were truly representing the public interest, within the framework established by Congress—whereby this Court has a meaningful role to play—DOJ would not have, in concert with the Defendants, constructively limited the only practical role for this Court to that of being a "rubber stamp."  At least one Circuit agrees that allowing mergers to close before completion of the Tunney Act review is inconsistent with the purpose of the Act:

> [b]y expanding a district court's authority over consent decrees through the
> independent review provisions of the APPA, Congress necessarily intended that

---

[1]    Among the specific findings of fact made by Congress in amending the Tunney Act is the statement "it would misconstrue the meaning and Congressional intent in enacting the Tunney Act to limit the discretion of district courts to review antitrust consent judgments solely to determining whether entry of those consent judgments would make a 'mockery of the judicial function'." Pub. L. No. 108-237, Tit. II, § 221(a)(1)(B), 118 Stat. 661, 668 (2004).

> the court have the power to make its review effective. We believe that the review process in merger cases would be undermined if courts were unable to maintain the status quo while determining whether a proposed consent decree is in the public interest. That very interest could be harmed irreparably by permitting a merger to become a *fait accompli* while the court awaited public comments and performed its APPA review function.

*United States v. BNS, Inc.,* 858 F.2d 456, 461-62 (9th Cir. 1988) (upholding a District Court's decision requiring the merging parties to operate separately prior to entry of the proposed judgment). This very principle was incorporated into the 2004 amendments to the Tunney Act, which require courts to make specific findings before concluding that the consent decree is in the public interest. 15 U.S.C.§ 16(e)(1)(A), (B).

Further, the Defendants (but not DOJ) imply that, because COMPTEL participated as a party in the FCC's Public Notice and Comment Proceedings on the Defendants' license transfer applications, it has had an adequate opportunity to raise its objections with "the government." Defendants' assertions are misplaced. The FCC has repeatedly explained that it uses a different standard of review for license transfer applications than the DOJ uses under the antitrust laws.[2] Unlike the DOJ, the FCC is not charged by Congress with enforcing the antitrust laws.

---

[2] See, e.g., In re Applications of GTE Corporation, Transferor, and Bell Atlantic Corporation, Transferee, for Consent to Transfer Control of Domestic and International Sections 214 and 310 Authorizations and Application to Transfer Control of a Submarine Cable Landing License, Memorandum Opinion and Order, 15 FCC Rcd. 14032, 2000 FCC LEXIS 5946, at ¶ 23 ("[W]hile the antitrust laws look to whether the transaction will lessen competition] the Communications Act requires the Commission to employ a different standard.") See also id. at n.65 ("Although the Commission's analysis of competitive effects is informed by antitrust principles and judicial standards of evidence, it is not governed by them, which permits the Commission to arrive at a different assessment of likely competitive benefits or harms than antitrust agencies adduce based on antitrust law.") (internal citations omitted). This analysis was followed, in the present cases. See, e.g., In the Matter of SBC Communications, Inc. and AT&T Corp. Applications for Approval of Transfer of Control, WC Docket No. 05-65, Memorandum Opinion and Order, 20 FCC Rcd. 18290, 2005 FCC LEXIS 6385, at ¶ 18 (" The Commission and the DOJ each have independent authority to examine telecommunications mergers, but the standards governing the Commission's review differ from those of DOJ. As stated above, the DOJ reviews mergers pursuant to Section 7 of the Clayton Act, which prohibits mergers that are likely to lessen competition substantially in any line of commerce. The Commission, on the other hand, as stated above, is charged with determining whether the transfer of control serves the broader public interest.") (citations omitted); In the Matter of Verizon Communications, Inc. and MCI, Inc. Applications for Approval of Transfer of Control, WC Docket No. 05-75, Memorandum Opinion and Order, 20 FCC Rcd. 18433, 2005 FCC LEXIS 6386 at ¶ 18 (same).

Moreover, both standards are obviously quite different from the Court's public interest standard of review under the Tunney Act.

Verizon's insinuations about COMPTEL's "active participation" in the DOJ "proceeding" are simply fabrications. COMPTEL was not a party to the DOJ's investigation leading up to the filing of the Complaints. COMPTEL informally communicated its willingness to assist DOJ staff in issue identification and locating affected parties. DOJ did not take COMPTEL up on its offer. While COMPTEL was aware that DOJ had requested information from some of its members, COMPTEL did not try to insert itself into DOJ's investigation. At that time, COMPTEL had no reason to believe that the DOJ would not follow its own Merger Guidelines methodology in conducting its investigation—and crafting its Complaints—or that DOJ would fail to follow its Merger Remedy Guidelines when constructing a remedy. COMPTEL did arrange one teleconference between DOJ and a few of its members about a week before the settlements were announced, which had no effect on the remedies.

Although the parties have questioned whether, under prevailing Circuit law, COMPTEL has met the legal requirements for limited permissive intervention, COMPTEL submits that it has met the minimum requirements and that the assistance it can provide to the Court more than warrants its participation. Not only does the Tunney Act specifically authorize the Court to grant COMPTEL permissive intervention for the limited purposes it seeks, but, given the unique facts and circumstances of this case, granting COMPTEL such intervention will enable the Court to thoroughly perform the independent and thorough public interest analysis that Congress has compelled.

## II.     COMPTEL SATISFIES THE STANDARDS FOR PERMISSIVE INTERVENTION

Federal Rule of Civil Procedure 24 (b) permits the Court to allow "anyone . . . to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common . . . ." The Rule also provides that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b). COMPTEL has shown that it has a claim relating to the anticompetitive effects of the mergers and the inadequacy of the proposed remedies to mitigate those effects. Any delay caused by COMPTEL's intervention will not be undue or prejudicial to the rights of the Defendants because, as noted above, the mergers have already closed. For these reasons, the Court should grant COMPTEL's Motion.

### A.  A "Peek at the Merits" Establishes that COMPTEL's Intervention Will Not Unduly Delay or Prejudice the Rights of the Parties

Although the DOJ acknowledges that "COMPTEL raises several concerns about the adequacy of the amended proposed Final Judgments, mirroring the comments they submitted to the United States[,]" it contends that "[t]hose issues have no bearing on the Motion. . . ." DOJ Opp'n at 5, n.4. Ironically, the very next case that DOJ cites is *United States v. Mass. Sch. of Law at Andover, Inc.*, 118 F.3d 776 (D.C. Circuit 1997) ("*MSL*"). In the *MSL* case, the Court explained that

> [a]t least for intervention for purposes of appeal of a Tunney Act case, the delay or prejudice' standard of Rule 24(b)(2) appears to force consideration of the merits of the would-be intervenor's claims. If the attempted intervenor shows adequate grounds for upsetting the consent judgment, then delay will be entailed . . . but it would be hard to say that this delay is undue. . . . Thus the intervention issue and the merits merge. The result is somewhat similar to National Mediation Board representation certification cases, where we take a 'peek at the merits' to determine whether we have jurisdiction to review."

*MSL*, 118 F.3d 776, 782-83 (internal citations omitted). The concerns that COMPTEL raises with respect to the adequacy of the proposed remedies to mitigate the anticompetitive harms DOJ

alleges will be caused by the mergers are the basis of COMPTEL's claims that approval of the consent decrees will not serve the public interest. DOJ cannot have it both ways – i.e., assert, on the one hand, that COMPTEL has failed to identify a claim that has a question of law or fact in common with the main action and contend, on the other, that the Court should ignore COMPTEL's "claims" in ruling on the COMPTEL's Motion. COMPTEL encourages this Court to follow the *MSL* reasoning by accepting the D.C. Circuit's invitation to "take a peek at the merits" before deciding whether COMPTEL's limited intervention would cause "undue" (or even any) delay or prejudice to the parties without providing a greater correspondent benefit to the Court.

     **1.   COMPTEL Should Be Given the Opportunity to Persuade the Court that the Consent Judgments Are Contrary to the Public Interest**

As COMPTEL explained in its Motion, the consent decrees that the DOJ has asked this Court to enter do not remedy the harms alleged in the Complaints, and as such, are patently contrary to the public interest. The "divestiture assets" that are supposed to replace the competition lost through the elimination of the nation's largest/second largest and oldest/second oldest competitive carriers are assets that: 1) are a small fraction of the pre-merger assets of these competitors within the affected markets; 2) are not necessary to serve existing demand; 3) are not being productively employed by any carrier today; 4) still require substantial investments in building access agreements, inside wiring expense, and the deployment of expensive optical-electronic equipment before they could even become productive; and 5) are not even "permanent" transfers of dark fiber capacity. It is a truly dystopic view of "competition" that networks that took decades and tens of billions of dollars to build can be "replaced" by requiring

these entities to grant a few limited leasehold interests in unproductive assets.  Such a view of "competition" is certainly incompatible with the public interest.

Not only will the PAFJs fail to restore the competition in the local private line market that the DOJ asserts the mergers will destroy, but, by not "replacing the competitive intensity lost as a result of the merger," the consent decrees, as proffered, will enhance the incentives and abilities of the post-merger firms to coordinate terms of wholesale and retail market competition. Moreover, this enhanced coordination threat *flows directly from the facts as alleged in the Complaints*.

Verizon's objection that "the Department simply has not alleged that the Verizon/MCI transaction will reduce competition as a result of post-merger coordination with any other firm[]" (Verizon Opp'n at 9) ignores the fact that the Department has alleged that the mergers will violate Section 7 of the Clayton Act by: 1) eliminating competition in the provision and sale of Local Private Lines in numerous geographic markets; 2) reducing competition in the retail voice and data telecommunications markets that rely on Local Private Lines; and 3) increasing prices for Local Private Lines, as well as retail voice and data telecommunications services that rely on Local Private Lines, above pre-merger levels.  Compl.'s at ¶ 33 ("Violations Alleged").  Whether the Department has adequately explained *how its proposed consent decrees have addressed the violations alleged in its Complaints*—including "the impact of entry of such judgment upon competition in the relevant market or markets" (as required under the language of 15 U.S.C. § 16(e)(1)(B))—is the focal point of this proceeding.  Verizon cannot simply foreclose scrutiny by asserting that "[w]hether and how the proposed Final Judgment addresses that risk" (when the risk flows directly from the Violations Alleged section of the Complaint) "is outside the scope of

this proceeding."[3]  Verizon Opp'n at 9.  To allow such an outcome would vitiate the Tunney Act

two years after it was amended and strengthened, hold the public interest hostage to the DOJ's

caprice, and reward the Government for providing less information and explanation than it is

required to provide under the Tunney Act.

     The fact that the Competitive Impact Statements do not discuss, nor do the PAFJs

address, this anticompetitive effect does not mean that the public interest is not ill-served by

entry of the PAFJs.  To the contrary, the DOJ's fundamental misapprehension of how increased

concentration in the local private line market (correctly identified as a critical input to retail

telecommunications services) will affect retail market competition considering the prevalence of

another important, but easily-overlooked, feature of this industry—the use of exclusionary term

and volume discount contracts in the local private line market—argues powerfully for the

inclusion of COMPTEL as a party to this proceeding.

     Thus, a "quick peek at the merits" demonstrates that COMPTEL is likely to be successful

in its efforts to overturn a consent decree that is clearly not in the public interest.  As the Court

can, no doubt, appreciate just from the pleadings on COMPTEL's Motion, the

telecommunications industry is very complex, and even what seem like very straightforward

solutions may not be likely to have the anticipated effects.  COMPTEL's expertise in this respect

could be invaluable to the Court in conducting its public interest review.  Moreover, allowing

COMPTEL to intervene will enable the Court to take full advantage of COMPTEL's expertise

on the current PAFJ, and any subsequent amended PAFJs.  Finally, because any additional delay

that is caused by COMPTEL's intervention—if there is any delay at all—is likely to be in the

---

[3]    Verizon, again, erroneously notes that the FCC rejected this argument.  *Id.*  Aside from the fact that the FCC's opinion is simply irrelevant to this Court's review, the FCC did not consider *COMPTEL's* argument and reject it.  COMPTEL did not assert this argument at the FCC, and no other party explained (as COMPTEL has in its comments before this Court) how the Defendants would be able to coordinate pricing, and detect and punish cheating through their existing exclusive/exclusionary discount contracts.

public interest (*i.e.*, in helping the Court to understand how entry of a defective remedy will harm the public interest), granting COMPTEL intervenor status will not result in any "undue" delay under the D.C. Circuit's analysis in the *MSL* case.

### 2. COMPTEL's Entry as a Party Will Not Unduly Prejudice Any Original Party

The Defendants object to COMPTEL's entry as a party on general "delay" grounds. While COMPTEL has just explained why a "quick peek at the merits" shows that no delay caused by COMPTEL's entry as a party is likely to be "undue," the Defendants have no legitimate claim of injury on this point in any regard. Both Defendants have already closed their mergers, and AT&T has already "completed agreements to divest the required assets" and these agreements have already "been submitted to DOJ for its review pursuant to the terms of the PAFJ." AT&T Opp'n at 3. If COMPTEL is granted Intervenor status, and one month later than would otherwise have been the case, and the Court finds that entry of the PAFJs as proposed will replace the competition lost as a result of the mergers and that entry of the consent decrees is in the public interest, neither Verizon nor AT&T suffers any injury. In fact, both parties will simply have continued to enjoy the enhanced market power they gained as a result of the mergers. While both Defendants urge the Court to deny COMPTEL's Motion for the sake of the public's interest in competition, this is not their interest to assert. The fact of the matter is that the Defendants can only be harmed if COMPTEL is successful in persuading the Court to reject the PAFJs. However, the Court will only "harm" the Defendants if rejecting the PAFJs is in the public interest. Any interest the Defendants have in harming the public interest is not a cognizable interest for the Court to protect.

### 3.  COMPTEL's Limited Discovery Requests Are Essential to the Court's Inquiry and Will Not Cause Undue Delay

All of the parties oppose COMPTEL's request to seek through discovery information over and above what the DOJ has supplied in the present case.  DOJ Opp'n at 11, n. 12; AT&T Opp'n at 2, 10; Verizon Opp'n at 7.  The Defendants, again, have no legitimate basis for complaint.[4]  COMPTEL asks only for information from the DOJ, and only the type of information that the DOJ is required to produce—but has not—under the requirements of the Tunney Act.  Specifically, with respect to the proposed remedy, the Tunney Act requires that

> [c]opies of such proposal and any other materials and documents which the United States considered determinative in formulating such proposal, shall also be made available to the public at the district court . . .

15 U.S.C. § 16(b).   Because the remedy proffered in this case is so inconsistent with the DOJ's established practices for merger remedies,[5] and the DOJ has not submitted any "materials or documents" so far, COMPTEL must ask whether the DOJ "scrutinized carefully," or even at all, what is a clearly inadequate proposal under DOJ policy. Moreover, the DOJ does not explain at all how the proposed remedy satisfies the requirement that the relief ordered by the consent decrees restore the competitive environment to pre-merger levels.   The plausible effectiveness of the remedy must be tied to some fairly specific notion of geographic market definition.  For example, do the acquiring company Defendants typically price-discriminate on a building-specific basis—such that building-specific divestitures provide some limited relief for some customers?  COMPTEL has seen no tariff filings from the SBC or Verizon suggesting this is the

---

[4]      Verizon, again however, makes misleading assertions about COMPTEL's participation in the FCC license transfer proceedings, and COMPTEL's access to Verizon's confidential information.  While these statements are largely irrelevant, because COMPTEL has not requested permission to seek discovery from Verizon, COMPTEL notes that its access to Verizon's information in the FCC proceeding was subject to a protective order that limited COMPTEL's use of that information to the FCC matter, which is now closed.

[5]      "The Division should scrutinize carefully the merging firm's proposal to sell less than an existing business entity because the merging firm has an obvious incentive to sell fewer assets than are required for the purchaser to compete effectively going forward." DOJ Merger Remedy Guide at 13.

case, so COMPTEL is justified in asking the DOJ to explain what documents they have to suggest otherwise. Furthermore, it is appropriate for the Court to inquire whether DOJ considered any other potential harms in any relevant market that were, or were not, supposed to be addressed in the PAFJs. Finally, it is appropriate for COMPTEL to be granted intervenor status in this proceeding to seek access to this relevant information. See *MSL*, 118 F.3d 776, 784 (D.C. Cir. 1997) (granting intervention to consider claim of access to documents relevant to consent decree formation); *United States v. Alex Brown & Sons*, 169 F.R.D. 532, 540 (S.D.N.Y. 1996) (intervention granted to seek documentary evidence and to raise objections to prospective nondisclosure provisions in consent decree).

### B. COMPTEL Has A "Claim" Within the Meaning of Rule 24(b)(2)

All parties contend that COMPTEL has failed to satisfy Rule 24(b)(2) by stating a "claim" in common with the main action—as the term "claim" has been interpreted in certain other cases. AT&T Opp'n at 11; DOJ Opp'n at 6-8; Verizon Opp'n at 6-7. The DOJ's objection is primarily procedural; that COMPTEL failed to file a separate pleading setting forth its claim. DOJ Opp'n at 7. In addition, DOJ and SBC argue that COMPTEL's intervention will not increase the efficiency of this litigation, reduce the risk of inconsistency or dispose of related controversies. AT&T Opp'n at 11; DOJ Opp'n at 6. Both ignore the possibility that granting COMPTEL permissive intervenor status will actually promote judicial economy by allowing the Court to conduct a thorough public interest review once and for all, versus round after round of modifications.

Verizon curiously (and erroneously) asserts that COMPTEL "conspicuously does not raise a claim that the proposed transaction violates Section 7 of the Clayton Act." Verizon Opp'n at 6. Verizon also asserts that COMPTEL "does not even argue that it could allege a

violation of the antitrust laws or what claim it might hypothetically assert in such a suit." *Id.*
COMPTEL is puzzled as to why Verizon would make such assertions because the Motion is
filled with references to the harms COMPTEL's members will suffer as a direct result of the
mergers.[6]  COMPTEL Motion at 5, 6-7.  COMPTEL has clearly satisfied the pleading
requirements by demonstrating that it has standing to bring its own case under Section 7 of the
Clayton Act.[7]  *Id.* at 5, 13 n.6.  Moreover, given that the jurisdictional foundation of this matter is
DOJ's uncontested contention in the Complaints that the mergers violate Section 7 of the
Clayton Act, and that COMPTEL has timely asserted a commonality of claims, it seems
pointless to search for a pleading error that so obviously does not exist.

The Complaints allege injury to competition in the local private line markets resulting
from these mergers.  Reduced competition in the market for local private lines hurts the broadest
cross-section of COMPTEL's membership—those firms that purchase local private lines from
the Defendants, and those that attempt to sell local private lines in competition with the post-
merger Defendants.  *Id.* at 5.  Thus, COMPTEL has clearly demonstrated that it has the "kind of
claim[] . . . that can be raised in courts of law as part of an actual or *impending law suit.*"
*Diamond v. Charles*, 476 U.S. 54, 76 (1986) (O'Connor, J., concurring) (emphasis added).
Indeed, the D.C. Circuit has noted that, in determining whether parties seeking intervention have
claims in common with the main action in Tunney Act proceedings, "the search for overlap is a
forward-looking exercise."  See *MSL*, 118 F.3d at 782.

---

[6]      "These mergers harm COMPTEL's members . . . who lose the ability to purchase Local Private Line
Services from [competitive sources]."  Mergers "foreclose access to non-Bell transmission facilities."  Mergers
"ensure prices for Local Private Line Services will be even more completely controlled by the merged company."
COMPTEL Motion at 5.  Mergers are "reconstituting the Bell System" by re-combining AT&T with three of the
originally-divested Regional Bell Operating Companies. *Id.* at 6-7.
[7]      Note also, that the Tunney Act tolls the statute of limitations for the time while this action is pending, plus
one year.  15 U.S.C. § 16(i).  So COMPTEL clearly has a "forward looking" claim in common with this matter.

Concerns regarding the anticompetitive effects of the consent decrees, such as those raised by COMPTEL, are certainly relevant to the determination the Court must make in its review of the consent decrees. The Tunney Act itself provides that the Court, in making its public interest determinations, may:

> authorize full or limited participation in proceedings before the court by interested persons or agencies, including appearance amicus curiae, *intervention as a party pursuant to the Federal Rules of Civil Procedure*, examination of witnesses or documentary materials, or participation in any other manner and extent which serves the public interest as the court may deem appropriate.

15 U.S.C. § 16(f)(3) (emphasis added). Contrary to the plain language of the statute, the Parties would have the Court believe that no one could ever satisfy the grounds for permissive intervention in a Tunney Act case.

In consent decree cases, courts have "eschewed strict readings of the phrase 'claim or defense.'"[8] For example, in affirming a trial court decision granting permissive intervenor status to parties in a consent decree termination case, the Second Circuit stated as follows:

> The court concluded that the applicants' claims that termination would have an anticompetitive effect on the laminates market are directly related to the ultimate questions herein, and that no undue delay would result from granting leave to intervene. Thus, permissive intervention was granted. We agree with this reasoning and do not believe that it amounted to an abuse of discretion.

*United States v. American Cyanamid Co.*, 719 F.2d 558, 563 (2nd Cir. 1982).

**C.    COMPTEL's Pleading Is Not Procedurally Defective**

The Court should reject out of hand the parties' argument that COMPTEL's Motion should be denied because it did not include a Rule 24(c) pleading setting forth its claim. This Circuit has not traditionally been sympathetic to attempts to deny permissive intervention on such purely procedural grounds:

---

[8]    *Equal Employment Opportunity Comm'n v. Nat'l. Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir 1998).

15

> "[t]he [parties] claim [trade associations seeking to intervene] may not intervene because they did not include with their motion to intervene 'a pleading setting forth the claim or defense for which intervention is sought.' Neither [party] explains what type of pleading the would-be intervenors could have filed in a case such as this . . . . In any event, 'procedural defects in connection with intervention motions should generally be excused by a court.' The Government acknowledged as much at oral argument, stating, 'this Court and other courts have not been hypertechnical, actually, in making sure that ... potential intervenors do file a pleading.'"

See *Massachusetts v. Microsoft Corp.,* 362 F.3d 1199, 1236 (D.C. Cir. 2004) (internal citations omitted). At bottom, the "hypertechnical" legal arguments that COMPTEL has somehow failed to satisfy the minimal showing for permissive intervention must fail, because "as its name would suggest, permissive intervention is an inherently discretionary enterprise." *Equal Employment Opportunity Comm'n v. Nat'l. Children's Ctr., Inc.,* 146 F.3d 1042, 1046 (D.C. Cir 1998).

### D.    COMPTEL Has Already Demonstrated that the Government Is Not Aggressively Representing the Public Interest

Verizon argues that COMPTEL should be denied intervention because it has not shown "'that the government is not vigorously and faithfully representing the public interest.'" Verizon Opp'n at 2 (citing *MSL,* 118 F.3d 776, 783 (D.C. Cir. 1997) quoting *United States v. LTV Corp.,* 746 F.2d 51, 54 n.7 (D.C. Cir. 1984)). AT&T also contends that it is "well established in this Circuit that 'discretionary intervention under the Tunney Act is usually denied in the absence of a showing that the government is not vigorously and faithfully representing the public interest, that it was unduly influenced or that it exercised bad faith or malfeasance in reaching the proposed final judgment." AT&T Opp'n at 1 (citing *United States v. Thompson Corp.,* 1996-2 Trade Cas. (CCH) ¶ 71,620 (D.D.C. Sept. 25, 1996)).

Contrary to the contentions of the Defendants, COMPTEL has stated clearly and forthrightly its belief that the DOJ is not adequately representing the public interest for several reasons: DOJ has failed to offer a consent decree that even attempts to address all of the barriers

16

to entry the DOJ identified in its Complaints; the DOJ's proposed remedies do not address all the harms identified in the Complaints; and, by allowing the parties to merge prior to this court's review, without even requiring a "hold separate order," the DOJ has affirmatively frustrated this Court's ability to perform the functions prescribed by Congress as necessary to protect the public interest.[9]

Thus, it is clear that COMPTEL has in fact made a prima facie showing that DOJ's proposed remedies will not serve the public interest or restore the competition that DOJ alleges will be lost as a result of the mergers. By "taking a peek" at the merits of COMPTEL's arguments, the Court can satisfy itself that COMPTEL has raised serious questions about whether the DOJ's consent decrees vigorously and faithfully promote the public interest. COMPTEL need not do more to justify its intervention.

## CONCLUSION

COMPTEL represents firms who are not only retail competitors to (and wholesale customers of) the pre-merger and post-merger Defendants, but also companies that wish to be wholesale competitors to the Defendants in the Local Private Line market. As such, COMPTEL has a powerful incentive to see that these remedies are structured in such a way that they truly restore the competition lost as a result of these mergers. Successful remedies mean that COMPTEL members who use Local Private Lines as inputs to compete with the post-merger firms in retail markets will not face higher prices and enhanced likelihood of predation by their largest input supplier and largest downstream competitor. Similarly, successful remedies also

---

[9]    "The present case is about the Government's failure to follow its own merger analysis guidelines in its Complaints, its failure to follow its remedial guidelines in its PAFJ . . . ." COMPTEL Motion at 11. "Here, the PAFJs requirements come nowhere close [to][sic] ensuring the restoration of competition in the post-merger Local Private Line services markets . . . ." *Id.* at 16. See also, *Id* at 2, n.2 (noting that DOJ's less-than-prudent failure to take steps to ensure the *status quo ante* pending the Court's public interest analysis and subsequent entry (or modification of) of the consent decrees).

mean that COMPTEL members that wish to provide Local Private Line service in competition

with the Defendants are able to use the remedial assets to replace the pre-merger presence of

AT&T and MCI as alternative providers of wholesale transmission service.[11] Moreover,

regardless of whether the DOJ is "vigorously representing the public interest," it is beyond

dispute that COMPTEL's interest in securing a successful remedy to the harms alleged in the

Complaints is unequaled by any current party to this action—DOJ included.  COMPTEL is

uniquely well-situated to inform the Court's analysis as a party to this proceeding.  Granting

COMPTEL permissive intervenor status will prejudice no party and produce no "undue" delay.

Instead, it will only promote the public interest in obtaining a careful and independent review of

whether entry of the PAFJs is in the public interest.  It is, therefore, COMPTEL's sincere hope

that the Court will accept its offer of expertise by granting COMPTEL's Motion.


Dated:  March 1, 2006                                Respectfully submitted,

                                                    _____
                                                    Kevin R. Sullivan  (D.C. Bar No. 411718)
                                                    Peter M. Todaro (D.C. Bar No. 455430)
                                                    King & Spalding LLP
                                                    1700 Pennsylvania Avenue N.W.
                                                    Washington, DC  20006
                                                    202-737-0500
                                                    202-626-3737 (fax)

                                                    Jonathan Lee (D.C. Bar No. 435586)
                                                    Sr. Vice President, Regulatory Affairs
                                                    COMPTEL

---

[11]    Indeed, AT&T confirms COMPTEL's interest in this regard when it notes that it "has completed agreements to divest the required assets to well-established Private Line companies—some of which are significant COMPTEL members." AT&T Opp'n at 3.  That AT&T has "completed agreements to divest the required assets" is, of course, hardly dispositive to the question of whether "the required assets" are sufficient to restore pre-merger competition. As the DOJ correctly explains, "the merging firm has an obvious incentive to sell fewer assets than are required for the purchaser to compete effectively going forward. Further, at the right price a purchaser may be willing to purchase these assets even if they are insufficient to produce competition at the premerger level." DOJ Merger Remedies Guide at 9.

1900 M Street, NW
Suite 800
Washington, D.C.  20036-3508
202-296-6650
202-296-7585 (fax)

*Attorneys for Proposed Intervenor*
*COMPTEL*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2006, a true and correct copy of COMPTEL's Reply to Opposition of the United States, AT&T, and Verizon to COMPTEL's Motion for Leave to Intervene, or in the Alternative, to Participate as Amicus Curiae was filed with the clerk's office and copies were sent by U.S. Mail to the following:

*Attorneys for Plaintiff*

Laury E. Bobbish
Assistant Chief, Telecommunications &
Media Enforcement Section
Antitrust Division
U.S. Department of Justice
City Center Building
1401 H Street, N.W., Suite 8000
Washington, D.C. 20530

Lawrence M. Frankel
Attorney, Telecommunications & Media
Enforcement Section
Antitrust Division
U.S. Department of Justice
City Center Building
1401 H Street, N.W., Suite 8000
Washington, D.C. 20530

*Attorneys for Verizon Communications, Inc.*

John Thorne
Verizon Communications Inc.
1515 North Courthouse Road
Arlington, Virginia 22201

Mark C. Hansen
Kellogg, Huber, Hansen, Todd, Evans &
Figel, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209

*Attorneys for MCI, Inc.*

Paul M. Eskildsen
MCI, Inc.
22001 Loudoun County Parkway
Ashburn, Virginia 20147

*Attorneys for SBC Communications*

Wm. Randolph Smith
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Richard L. Rosen
Arnold & Porter
555 Twelfth Street, NW
Washington, D.C. 20004-1206

James D. Ellis
Wayne Watts
SBC Communications Inc.
175 East Houston Street
San Antonio, Texas 78205

*Attorneys for AT&T Corp.*

Ilene Knable Gotts
Wachtell, Lipton Rosen & Katz
51 West 52nd Street
New York, New York 10019

David L. Lawson
David W. Carpenter
Sidley Austin Brown & Wood LLP
1501 K Street, N.W.
Washington, D.C. 20005

James W. Cicconi
Lawrence J. Lafaro
AT&T Corp.
One AT&T Way
Bedminster, NJ 07921

Meghan S. Blaszak