# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br>v.<br><br>SBC Communications, Inc. and<br>AT&T Corp.,<br><br>    Defendants,<br><br>The Alliance for Competition in<br>  Telecommunications<br><br>    and<br><br>COMPTEL,<br><br>    *Amicus-Curiae.* | Civil Action No.: 1:05CV02102 (EGS) |
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>Verizon Communications Inc. and<br>MCI, Inc.,<br><br>    Defendants,<br><br>The Alliance for Competition in<br>  Telecommunications<br><br>    and<br><br>COMPTEL,<br><br>    *Amicus-Curiae.* | Civil Action No.: 1:05CV02103 (EGS) |

## DECLARATION OF RANDOLPH C. NICKLAS
## XO COMMUNICATIONS

Pursuant to 28 U.S.C. § 1746, and the Rules of Civil Procedure of the United States District Court for the District of Columbia, I, Randolph C. Nicklas declare the following:

1). My name is Randolph C. Nicklas. I am employed by XO Communications ("XO") as Vice President of Engineering. My business address is 11111 Sunset Hills Road, Reston, Virginia 20190. At XO, I am responsible for our network engineering, which includes network design, procurement, deployment, operation, maintenance and repair. In this capacity, I also oversee the purchase of network capacity and access from other telecommunications providers to augment the XO-owned network, including from Verizon, and AT&T, previously SBC Communications, and, at one time, from the old (pre-merger) AT&T and MCI. Prior to my employment with XO, I held a number of positions with MCI, Cisco, Intelsat, and Computer Sciences Corporation over a 21 year career.

2). XO is a facilities-based competitive local exchange carrier based in Reston, Virginia, providing a spectrum of services to business customers (mostly small and medium size enterprises), including local and long distance voice, Internet access, Virtual Private Networking, Ethernet, Wavelength, Web Hosting, and integrated voice and data services. XO operates in 30 cities in 26 states using a combination of network assets it owns or controls and facilities or services leased from other providers. It has deployed over 7,000 route miles of its own fiber optic facilities and almost 150 Class V5 circuit switches and VOIP soft switches.

3). XO is one of the largest local exchange competitors to Verizon and SBC remaining after the mergers of those entities with their two largest local competitors, the old AT&T and MCI.

However, XO is nowhere near the size of these former local competitors. In 2005, XO's revenues were approximately $1.43 billion, and it had a net loss of approximately $146 million. In contrast, prior to the SBC/AT&T and the Verizon/MCI mergers, the old-AT&T had revenues of approximately $30 billion and MCI had revenues of approximately $20 billion, and both were profitable. In sum, XO does not begin to match the scale and scope of the old AT&T and MCI.

4). XO submitted bids for certain "indefeasible rights of use" for fiber laterals ("lateral IRUs") that are the subject of the proposed Verizon/MCI amended final judgment in this case. I was part of the XO team that performed due diligence on these assets and determined their value, and I will be responsible for integrating these assets into our network should XO win the bids.

5). In valuing these lateral IRUs, it is critical to understand that telecommunications providers own and compete through networks. This means that the more places and customers that a network can provide connectivity to – especially on an "end to end" basis – the more valuable that network is. Overall network revenues and traffic correlate to the value of the network.

6). Prior to the mergers, the old AT&T and MCI had invested many billions of dollars to deploy extensive local exchange networks, comprised of a web of loop and transport circuits connected by their switches to customers throughout local areas. No other local competitor to Verizon or SBC came close to matching the local network capabilities of the old AT&T or MCI, and no other local competitor came close to having the customer relationships and network traffic that the old AT&T or MCI had. Virtually all of these local facilities owned by the old AT&T duplicated facilities owned by then SBC, and the same was true of MCI's local facilities in Verizon territory. The lateral IRUs proposed to be divested represent only a fraction of these

3

duplicated facilities and are a very small percentage of the total local network facilities of the old AT&T and MCI. In other words, the lateral IRUs are not a local network, and most certainly they are nothing more than marginal additions to an existing local business. Rather, the lateral IRUs are single, isolated circuits. Further, the lateral IRUs are not associated with any customers, revenues, or traffic. At best, these lateral IRUs may offer a potentially cost-effective means to marginally augment the XO network in a short period of time. As a result, they have little market value, and XO reflected that fact in its bids.

7.) Should XO prevail in its bids, it would acquire lateral IRU facilities to augment its network, but these facilities in no way would replace the competition provided by the old AT&T or MCI as competitive suppliers in the local private line market. XO's local networks are much smaller than the local networks previously owned by the old AT&T or MCI, and XO has far fewer customers and much less traffic than those networks. Accordingly, since it lacks the same enormous scale, XO's prices to the wholesale market for local private lines are often necessarily higher than those charged by the old AT&T and MCI. The divested lateral IRUs will not change that fact. Even with these facilities, XO (or for that matter another competitive provider) will not be able to offer local private lines to the wholesale market at the same low price as the old AT&T and MCI did – even on the lines specifically divested. Consequently, XO expects the prices it pays to acquire local private lines in the wholesale market to increase substantially.

8). I am informed that at its hearing on May 10, 2006, the U.S. District Court inquired as to the significance of a July 31, 2006 deadline for the awarding of contracts for the divested lateral IRUs. I wish to state that XO does not believe an extension of this deadline would lessen its interest in these assets in any way. It therefore has no difficulty in extending the deadline to

permit the court to do as thorough an evaluation of the competitive effects of the acquisitions and proposed remedy as the court deems necessary.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 15, 2006.

*Randolph C. Nicklas*

Randolph C. Nicklas