# EXHIBIT 3

Westlaw.    NewsRoom

10/13/04 COMMD (No Page)    Page 1

10/13/04 Comm. Daily (Pg. Unavail. Online)
2004 WLNR 12929000

Communications Daily
(c) WARREN PUBLISHING INC. All Rts. Reserv.

October 13, 2004

**SUPREME COURT DECLINES TO REVIEW FCC'S TRO**

The U.S. Supreme Court on Tues. declined to hear an appeal of the FCC's Triennial Review Order (TRO). AT&T and other CLECs, as well as NARUC, the Ariz. Corp. Commission and Cal. PUC, had filed a petition for review in June. It asked the Supreme Court to reverse a decision by the U.S. Appeals Court, D.C., that vacated much of the TRO, including the FCC's decision to delegate UNE review to state commissions. But the Supreme Court denied certiorari without elaborating.

The decision was widely expected in the industry and investment community, given that the FCC and the Bush Administration hadn't supported the appeal. "When an agency's order is overturned and the agency itself does not support an appeal to the Supreme Court, it is normal for the court to refuse to hear the appeal," said Regulatory Source Assoc. Pres. Anna-Maria Kovacs. She said the decision "should not have much effect on telecom stocks. The focus continues to be on the FCC and its final order." Jessica Zufolo, senior policy dir. at Medley Global Advisors, agreed, saying the decision was "not a market moving issues, given that we'd expected the court would go in that direction."

The decision also "doesn't have much impact on the FCC's ability to get final rules," Zufolo said, noting the Commission was still expected to come up with them this year. "The question now becomes what kind of leverage the states and CLECs have in the interim," she told us: "In the absence of any final rules, states will continue to proceed along the path of asserting jurisdiction over network unbundling policies under their section 271 authority." But she said that may change if the FCC adopts the 271/251 Verizon forbearance petition seeking to preempt state jurisdiction over unbundling, which she said was on circulation at the Commission and was expected to be adopted this month. "Once the FCC adopts that item, that will most likely slow down state activity to assert jurisdiction over unbundling policies under their 271 authority." Kovacs said she expected the FCC to address "the relationship between sections 251 and 271 of the Telecom Act either in the final rules or in another docket this year."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

AT&T and NARUC expressed disappointment. "The only certain thing now is more uncertainty," NARUC Gen. Counsel Brad Ramsay told us, adding he was "hopeful" the FCC would act by Dec. and "put out an order that will survive a D.C. Circuit **review**." Ramsay said the decision created "a very difficult situation for states, because in the absence of the FCC order they have an authority but they are not going to want to move forward until they know what the FCC has done."

AT&T criticized the decision, saying it was "the unfortunate but expected consequence" of the earlier decision by the FCC and the Solicitor General not to appeal the D.C. Circuit ruling. "America's consumers have been sacrificed to the interest of the 4 powerful Bell telephone monopolies," said Vp-Law & Dir.-Federal Govt. Affairs Len Cali: "The decision of federal policymakers to subvert the will of Congress and prefer corporate greed to the public interest has won the day."

Bells applauded the decision and urged the FCC to develop new permanent rules this year. "After 8-1/2 years of working under unlawful rules, BellSouth believes the quick adoption and implementation of permanent rules is essential to economic recovery and job creation in America's technology sector," said BellSouth Vp-Govt. Affairs Herschel Abbott. Qwest Senior Vp Steve Davis said he was "pleased that the **Court** will not continue litigation on an issues that dragged on for nearly 10 years." He said commercially negotiated wholesale agreements were "not only possible, but preferable to further litigation and uncertainty," noting that Qwest was "the first to forge historic wholesale services agreements with MCI and Covad."

"Today's action by the **Supreme Court** should be the final chapter in this tortured saga of instability for the industry," USTA Pres. Walter McCormick said: "It's time for the Commission to set clear, lawful unbundling rules to bring certainty and clarity to telecom." Verizon Senior Vp-Deputy Gen. Counsel Mike Glover said the decision "confirms that the FCC got it right when it removed key unbundling requirements for broadband in the TRO." On the narrowband issues, he said: "The market has changed dramatically since the record was compiled in the TRO," and the FCC should "establish new rules that take the current market conditions into account and that comply with the directives of the **courts**." He also said it was "critical that other providers provide the information necessary for the Commission to conduct the analysis required by the **Court** and stop playing hide the ball." An SBC spokesman said his company was "gratified" that the **Court** "recognized the futility of reviving failed regulations and outmoded policies that have cost the country nearly $25 billion in capital investment, while thwarting the creation of over 200,000 jobs."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Brita Strandberg, an attorney representing Skype, said it was "now even more important that the FCC uses a light regulatory approach to VoIP because UNE-P is drying up as a competitive alternative." -- Susan Polyakova

Word Count: 1044
10/13/04 COMMD (No Page)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.