# EXHIBIT 6



> RETURN TO ARTICLE   > E-MAIL THIS ARTICLE

**Why Verizon has a dream team**
by Cecile Kohrs Lindell in Washington Posted 01:26 EST, 7, Apr 2005

How many antitrust law firms does it take to smooth the way for a multibillion-dollar telecommunications merger? John Thorne, senior vice president and deputy general counsel for **Verizon Communications Inc.**, is betting on the number four.

That's how many big-name firms - each with battalions of lawyers - Thorne has hired to help Verizon clear the antitrust review of its bid for **MCI Inc.** Most companies attempting large mergers hire one or two firms, so a team of four might look a bit like overkill, especially given the size and expertise of the firms tapped by Verizon. Among their ranks are a former chairman of the Federal Trade Commission and two former assistant U.S. attorneys general for antitrust matters. Some might even interpret the deployment of the team as a sign that Verizon expects a particularly difficult regulatory battle.

But legal experts and Thorne himself said it merely reflects a desire to get through the review quickly, as well as a recognition by Verizon that a good relationship between its lawyers and regulators at the Department of Justice and the Federal Communications Commission is crucial to smoothing the way.

"This team is an effort to build the capability and access that Verizon needs for this deal," said Stephen Axinn, a partner at **Axinn, Veltrop & Harkrider LLP**, a firm that specializes in antitrust issues (but is not working on the Verizon-MCI deal). Axinn knows the value of relationships: He was a private trial lawyer until tapped in 1999 to work as lead counsel for the Justice Department's successful effort to block the MCI WorldCom Inc.-**Sprint Corp.** merger.

Though Thorne assembled his team before Verizon's bid for MCI became a bidding war with **Qwest Communications International Inc.** - and before a hostile bid by Qwest became a distinct possibility - the mere presence of such an influential team might help to win over MCI should it start to have doubts. To the extent that the team enhances Verizon's chance of securing regulatory approval for the merger, the thinking goes, its bid should look better than MCI's.

Thorne himself says his newly assembled "brain trust" does not reflect potential regulatory problems but rather is an attempt to maximize Verizon's legal resources in what is likely to be a complex case. A deal with the magnitude of Verizon-MCI could easily strain the resources of any one or even two large firms. The cost of what regulators call a second request for information about the company's operations, its motives for the merger and its economic analysis of the market can easily exceed $1 million in legal fees, for everything from copying and reviewing documents to talking with officials at the regulatory agencies. For a large merger, the legal budget is likely to be in the millions. And there's an increased cost for legal advice and assistance for an FCC review as well.

Thorne's biggest challenge could be managing four large firms, each of which has its own expertise. Though Thorne has years of experience with telecommunications cases and is known as a hands-on manager, he acknowledged this case will be a challenge. But he also noted there are savings to be had in using the special skills and influence of each firm. "It's not more expensive, and in some ways it's more efficient," he said.

Moreover, Thorne said, Verizon's large in-house legal team is accustomed to handing off projects to outside specialists after doing most of the work the firm needs. "John's going to roll the snowballs himself," Axinn said. "Someone else is going to throw them."

Verizon's expanded team includes a mix of experts known for their political connections as well as their sharp minds on antitrust matters. The four firms, all based in Washington, are:

Case 1:05-cv-02102-EGS   Document 28-7   Filed 05/16/2006   Page 3 of 3

- **O'Melveny & Myers LLP**, led by former Federal Trade Commission Chairman Timothy J. Muris, who stepped down last year to return to teaching at George Mason University School of Law.
- **Howrey Simon Arnold & White LLP**, led by former Assistant Attorney General for Antitrust Jim Rill. Appointed by President George H.W. Bush, he has a long-standing relationship with William Barr, Verizon's general counsel.
- **Wilmer Cutler Pickering Hale and Dorr LLP**, led by former Acting Assistant Attorney General for Antitrust A. Douglas Melamed, also known in the broader legal community for his seminal work on property theory with Guido Calabresi (now a judge), "Property Rules, Liability Rules, and Inalienability: One View of the Cathedral."
- **Kellogg, Huber, Hansen, Todd, Evans & Figel PLLC**, led by Mark Hansen, a highly regarded litigator, and Evan Leo, a telecommunications expert.

The combination also shows that large law firms often serve several masters. Wilmer partner William Kolasky, also a former appointee at the DOJ, recently represented Qwest in two lawsuits. According to Thorne, at least some of Kolasky's work for Qwest was consistent with Verizon's interests. In one of the suits, he said, Verizon and Qwest were co-defendants.

Large law firms often request waivers from their large corporate clients, allowing the firms to represent other players in the same industry. Without them, firms such as Wilmer, with 1,000 lawyers, would not be able to develop and exploit expertise in specialized industries. With the waivers, law firms can function in a specialized area, such as antitrust regulation, so that individual lawyers with special experience or influence can represent the clients who want them.

**MOVERS & SHAKERS**
See who is moving into the corner office at investment banks and law firms.

▶ RETURN TO ARTICLE    ▶ E-MAIL THIS ARTICLE    ▶ REPRINT THIS ARTICLE

| HOME | SITEMAP | ABOUT US | CONTACT US | ADVERTISE | PRIVACY POLICY | TERMS AND CONDITIONS |

©Copyright 2006, The Deal, LLC. All rights reserved. Please send all technical questions, comments or concerns to the Webmaster.