IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) Civil Action No. 1:05CV02102 (EGS) <br> v. ) <br> ) <br> SBC Communications, Inc. and ) MICHAEL LOVERN, SR. ET AL <br> AT&T Corp., ) (AMICUS CURIAE) RESPONSE <br> ) TO DOJ's MOTION IN OPPOSITION <br> ) TO AMICUS CURIAE'S <br> Defendants. ) INTERVENTION AND APPEARANCE <br> ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) Civil Action No.: 1:05CV02103 (EGS) <br> ) <br> Verizon Communications Inc. and ) <br> MCI, Inc., ) <br> ) <br> Defendants. ) | |

RESPONSE MOTION BY MICHAEL LOVERN, SR., ET AL (AMICUS
CURIAE) - CASE NO. 1:05CV02102 (EGS), and, CASE NO. 1:05CV02103 (EGS)
TO DOJ'S MOTION IN OPPOSITION TO AMICUS CURIAE'S
INTERVENTION

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:
*Amici's Response Motion To DOJ's Motion In Opposition*

The undersigned, Michael Lovern, Sr., et al (Intervenor) respectfully submits this response motion to the Department of Justice (DOJ) motion in opposition to Intervenors' intervention in these cases.

**RECEIVED**

MAY 3 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

DOJ, like AT&T, does not dispute the allegations raised by the Intervenors, and, like AT&T, DOJ has misrepresented facts to this Court. On page one of DOJ's motion, footnote 2, DOJ sates, "In letters submitted to the Antitrust Division, Lovern noted that he had 'sued SBC in 1992, and the lawsuit subsequently settled against his wishes.'" Once again, this is not accurate. Lovern, nor American TeleDial Corp (ATC) or National Teleprocessing, Inc. (NTI) ever filed any lawsuits in their name, nor have they ever litigated their legal claims alleged in this Court.

Also, DOJ raises that Lovern is not licensed to practice law in the District of Columbia, and therefore cannot represent ATC and NTI. Both of those corporations are defunct as stated in the Intervenor's original brief. Because Lovern founded the companies and they are now out of business, ATC, NTI and Lovern are one in the same. Lovern is all that is left of those two companies.

DOJ goes on to say that "Lovern's concerns have nothing to do with the proposed Final Judgment... Because the issues he raises are unrelated to the impact on competition of SBC's merger with AT&T, his participation as amicus curiae would not assist the Court in making its public interest determination under the Tunney Act."

The Intervenors' disagree that the issues surrounding the Intercompany Settlement System (ISS) are unrelated to the impact on competition. That is like saying Judge Harold Greene didn't know what he was doing when he ordered AT&T to divest

themselves of the ISS because it violated antitrust laws. I don't recall DOJ taking that position when Judge Greene was breaking up AT&T. Why have they changed their mind? The court has a right to know.

DOJ claims Lovern has not demonstrated that he has "an interest relating to the property or transaction which is the subject of the action" before this court. The property in question is AT&T's records, files, etc, and the ISS. Neither DOJ, nor AT&T, even suggest that Lovern's allegations are untrue, including the allegation about the money stolen from Lovern, and, the hundreds of billions of dollars associated with fraud and racketeering, which also includes the claims of MCI Shareholders that will be destroyed if Verizon takes control of MCI. The MCI Shareholders don't even know they lost billions in profits as a direct result of the alleged conspiracy outlined in Lovern's original brief. Once Verizon gets control of MCI, and SBC gets control of AT&T, the Intervenors, and every other interested person's claims will be compromised. That includes every person who made a long distance call between 1984 and current time, plus federal, state and local government, and corporations. It is the Intervenors' position this provides plenty of justification for intervention.

DOJ goes on to say that Lovern's participation would NOT ASSIST this Court and would only delay proceedings.

This court should be very interested in the ISS and how it impacts the industry, consumers, competition, and how AT&T having control of it again impacts Judge

Greene's original ruling.

Most people consider Lovern to be the Telecommunication Industry's foremost expert on the ISS. How can having him involved not benefit the Court. He's the only person whose been willing to come forward and tell the truth about the ISS. DOJ certainly hasn't been truthful about the ISS, and, once again it's because they have a conflict of interest regarding personnel legal liability [individual capacity] going back many years.

Judge Stanley Sporkin, United States District Judge, UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF COLUMBIA, said it best on February 14, 1995, in his MEMORANDUM OPINION in the case, UNITED STATES OF AMERICA, v. MICROSOFT CORPORATION, Civil Action No. 94-1564;

> "**In Senate hearings before the Subcommittee on Antitrust and Monopoly, Judge J. Skelly Wright, U.S. Court of Appeals for the District of Columbia Circuit, emphasized the vital role of participation in the consent decree approval process by outside persons:**
>
> **The Antitrust Division of the Department of Justice, while no doubt among the most competent and dedicated groups of professionals in Government service, nevertheless is made up of human beings and, unfortunately, human beings occasionally make mistakes.**
>
> **In approving a particular decree, the Justice Department attorneys may overlook certain issues, ignore certain concerns, or misunderstand certain facts. The participation of additional interested parties in the consent decree approval process helps to correct these oversights. Senate Hearings, at 146."**

This is one of those times that the court cannot look totally to DOJ to make all the right decisions. This Court is not here to simply rubber stamp DOJ's recommendations. The whole purpose of a Tunney Act review is to make sure the court gets it right, regardless of what DOJ does. Once again Judge Sporkin, *Microsoft supra*;

> "Section 16(f) of the Tunney Act gives the Court wide latitude to gather relevant information to make its public interest determination. In order to exercise properly its independent role as mandated by Congress, the Court must ensure that it is adequately informed about the <u>intricacies and complexities of the industry</u> affected by the consent decree. FN 13 Section 16(f)(3) specifically empowers the Court to gather relevant information by means of authorizing intervention and amicus curiae participation:
>
> (f) In making its determination under subsection (e) of this section, the court may
>
> (3) authorize full or limited participation in proceedings before the court by interested persons or agencies, including appearance amicus curiae, intervention as a party pursuant to the Federal Rules of Civil Procedure, examination of witnesses or documentary materials, or participation in any other manner and extent which serves the public interest as the court may deem appropriate. 16(f)(3)." [underline added for emphasis].

The ISS and its relationship with antitrust is very much cognizable in this Tunney Act proceeding as the Government has failed to protect the "Public's Interest." There is nothing to prevent AT&T, Verizon, and the remaining ISS Hosts to utilize the ISS for the same illegal, non-competitive functions it's been used for since 1984, including the potential to use it illegally in the wireless industry.

Intervenors' fraud and conspiracy allegations [not denied by AT&T or DOJ] are totally relevant to the antitrust analysis because they are directly connected to the ISS, which controls the entire settlement process within the industry. All CLECS are required to enter into an ISS settlement contract that will be controlled by AT&T. The "conflict of interest" issue alone is enough to warrant antitrust analysis in this proceeding because Judge Greene's legal conclusion regarding the ISS is no different today.

It is well settled that intervention of right may be granted in a Government Antitrust case after a showing of Government bad faith or malfeasance. *Associated Milk Producers*, 534 F.2d at 117; *G. Heileman Brewing*, 563 F. Supp. at 649; *see Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 689 (1961). The party seeking intervention bears the burden of proving "that the Government has not acted properly in the public interest." *United States v. Blue Chip Stamp Co.*, 272 F. Supp 432, 438 (C.D.Cal. 1967), *aff'd per curiam sub nom. Thrifty Shoppers Scrip Co. v. United States*, 389 U.S. 580 (1968). Intervenors' in this case did not fail to allege bad faith and malfeasance by the Government in their brief [**Intervenor Brief at pg.'s 18-19, or provide proof**].

Once again the Intervenors defer to Judge Sporkin, *Microsoft supra*;

**"Section 16(e)(2) states 'the court may consider . . . the impact of entry of such judgment upon the public generally and individuals alleging specific injury from the violation set forth in the complaint.' 15 U.S.C. 16(e)(2).FN21 This section gives the Court the authority to consider not only the effect of the entry of the decree on those claiming to be hurt by the violations alleged in the complaint, but also the effect on the public. <u>The language of the Act does not restrict the scope of inquiry into the effect of the decree on the public to the specific injuries alleged in the complaint.</u>**

(6)

The legislative history supports the position that the Court may look beyond the face of the complaint in evaluating the public interest. FN 22 In hearings on the Tunney Act, the then Deputy Assistant Attorney General of the Antitrust Division made clear that the Justice Department's interpretation of the bill was that the Court, in certain circumstances, would look not only at whether the decree adequately addressed the complaint, but also at whether the complaint itself was adequate. '[T]his inquiry apparently would encompass not only whether the relief is adequate in view of that sought in the complaint, but whether the Government sought appropriate relief in the complaint itself.' Consent Decree Bills: Hearings Before the Subcommittee on Monopolies and Commercial Law of the Committee on the Judiciary House of Representatives, 93d Cong., 1st Sess. 87 (1973) (statement of Hon. Bruce B. Wilson, Deputy Assistant Attorney General, Antitrust Division, United States Department of Justice). FN 23

In some instances, courts evaluating consent decrees under the provisions of the Tunney Act have considered markets and practices outside the scope of the complaint. For example, in AT&T, Judge Harold Greene conditioned the Court's approval of the decree, in part, on the addition of a provision that would bar AT&T's entry into the nascent electronic publishing market. AT&T, 552 F. Supp. at 181-83. Judge Greene did this even though the Government had not alleged any anticompetitive practices by AT&T in this market. In addition, the electronic publishing market is arguably not part of the relevant market identified in the complaint.

Judge Greene's opinion in AT&T clearly explained why, in some instances, the Court cannot limit itself to the decree's effect on the practices alleged in the complaint. In order to determine whether a decree is in the public interest, the Court must evaluate whether it meets the test of a valid antitrust remedy, to 'effectively pry open to competition a market that has been closed by defendant['s] illegal restraints.' AT&T, 552 F.Supp. at 150 (quoting International Salt Co. v. United States, 332 U.S. 392, 401 (1947)). Simply prohibiting repetition of the specific conduct in the complaint may not in all cases achieve that goal. Therefore, the Court cannot limit the scope of its considerations in the way the Government has suggested.

While the Court must show some deference to the discretion of the Justice Department, see Western Electric, 993 F.2d at 1577, such deference does not preclude the Court's taking into consideration practices and markets that the Government has failed to address. Cf. Gillette, 406 F. Supp. at 715 ('Congress did not intend the court's action to be merely pro forma, or to be limited to what appears on the surface.').

Senator Tunney, the law's co-sponsor, recognized the possible adverse consequences from entry of a consent decree that fails to address anticompetitive practices outside the scope of the decree. '[A] bad or inadequate consent decree may as a practical matter foreclose further review of a defendant's practices both inside and outside the scope of the decree." 119 Cong. Rec. 3451. (statement of Sen. Tunney). The public interest may be ill-served if the Court can look only at the market and practices alleged in the complaint because of the opportunity costs of failing to address severe anticompetitive practices that not appear in the complaint.

If the Court's scope of review is as narrow as the Government claims, the Government could effectively foreclose judicial review of the decree. For example, the Government could initiate a massive antitrust probe and find significant violations in a large market. Then, bowing to political or other pressures, the Government could write a complaint that alleges only minor anticompetitive practices in a very small market and file it contemporaneously with a decree that addresses those limited violations. Under the Government's rationale, the Court could only consider whether the decree adequately addressed the alleged violations. If its scope of review were so limited, the Court would have to approve the decree. The Tunney Act as well as common sense dictate that entry of such a decree would not be in the public interest." [underline added for emphasis].

## CONCLUSION

Lovern et al (Intervenors) have a right to intervene via F.R.Civ.P. 24(a)(2), as does Lovern in his capacity as a consumer who was overcharged for the billing & collection of long distance beginning in 1984, part and parcel to the alleged racketeering enterprise that violates, but not limited to, antitrust laws, none of which has been denied

(8)

by AT&T (aka - SBC Communications) or DOJ.

At the very least, Lovern should receive permissive entitlement to intervene on behalf of himself so as to protect the general public who doesn't even know they have been defrauded. This also gives the MCI Shareholders and competitors of AT&T, SBC, Verizon et al an opportunity to get their ducks in a row.

DOJ simply dropped the ball on these two mergers. It happens, and it definitely happened this time. The Court cannot look solely to DOJ to protect the public's interest as too much is at stake.

As to Lovern adding delay to the proceeding, once again Judge Sporkin said it best, *Microsoft supra*;

> **"the Court cannot sacrifice the thoroughness of its inquiry, and hence, the validity of its determination that the consent decree is in the public interest in order to increase the speed with which the decree is approved. Judge J. Skelly Wright aptly recognized that in cases of national import the Tunney Act process would be turned on its head if the Court considered the speed of review to be more important than the accuracy of review:"**

AT&T, [aka SBC Communications, Inc. – based on SBC operating under the AT&T name and trading under AT&T's stock exchange symbol], have a very cozy relationship with DOJ, the FCC, and most regulators. If this Court fails to address the anti-competitive aspect of the ISS, and the conflict of interest of having AT&T be the "Contract Administrator" for the ISS, the opportunity to protect the public's interest is lost forever. The Court cannot ignore the paramount responsibility at this juncture,

(9)

especially considering no one has denied the allegations.

Intervenors doubt anyone who is a party to this case would say Judge Harold Greene was not an outstanding Judge. He saw a problem with having AT&T maintain control over the ISS, therefore, it deserves another look before it's too late. The only way to do that in the public's best interest is to allow Michael Lovern, Sr. to participate.

Respectfully submitted,

_____
Michael Lovern, Sr.
3713 Parke Drive
Edgewater, MD 21037
(206)-202-9074
pratgen@myway.com

American TeleDial Corp. &
National Teleprocessing, Inc.

_____
By: Michael Lovern, Sr.
3713 Parke Drive
Edgewater, MD 21037
(206)-202-9074
pratgen@myway.com

### CERTIFICATE OF SERVICE

I hereby certify that, on this 30th day of May, 2006, copies of the foregoing RESPONSE MOTION OF MICHAEL LOVERN, SR., ET AL, (INTERVENORS) AS AMICUS CURIAE TO AT&T'S MOTION IN OPPOSITION TO THE INTERVENTION OF INTERVENORS IN THIS CASE WAS served by U.S. Mail, on counsel of record as follows:

Lawrence M. Frankel (D.C. Bar No. 441532)
Matthew C. Hammond
Trial Attorneys
Telecom & Media Section
Antitrust Division
U.S. Department of Justice
1401 H Street, N.W., Suite 8000
Washington, D.C. 20530
(202) 514-5621
Attorneys for the United States


FOR DEFENDANT
SBC COMMUNICATIONS, INC.

Wm. Randolph Smith (D.C. Bar No. 356402)
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2700


FOR DEFENDANT AT&T CORP.

David L. Lawson (D.C. Bar No. 434741)
Sidley Austin Brown & Wood LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-808

FOR VERIZON COMMUNICATIONS, INC.

John Thorne
Verizon Communications Inc.
1515 North Courthouse Road
Arlington, Virginia 22201

FOR MCI, INC.

Paul M. Eskildsen
MCI, Inc.
22001 Loundon County Parkway
Ashburn, VA 20147

_Michael Lovern, Sr._
Michael Lovern, Sr., et al
3713 Parke Drive
Edgewater, Maryland 21037
(206)-202-9074
pratgen@myway.com

May 30, 2006