IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SBC Communications, Inc. and<br>AT&T Corp.,<br><br>Defendants. | Civil Action No. 1:05CV02102 (EGS) |
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>Verizon Communications, Inc. and<br>MCI, Inc.,<br><br>Defendants. | Civil Action No. 1:05CV02103 (EGS) |

**AT&T INC.'S MEMORANDUM IN RESPONSE TO ACTEL'S REPLY MEMORANDUM IN OPPOSITION TO THE DEPARTMENT OF JUSTICE'S MOTION FOR ENTRY OF FINAL JUDGMENTS**

Confronted with the stark reality that its prior filings presented nothing new, let alone anything of probative value in opposition to the entry of the final judgments, ACTel now makes one final attempt in its Reply Memorandum to breathe life into its effort to derail these proceedings. It does so by seeking to create a factual issue where none exists -- undoubtedly to support requests for discovery and an evidentiary hearing – by sprinkling the record with erroneous allegations that AT&T already has "raised" and "stabilized" prices for wholesale special access, and attaching over one hundred (100) pages of exhibits. In fact, as we explain

1

below, not only FCC orders but ACTel's own exhibits make clear that AT&T has <u>not</u> raised wholesale special access rates.[1]

But the more important point here is that such allegations are irrelevant to this proceeding. Not only do the price changes that ACTel cites have nothing to do with the merger, but any such increases have no bearing on the issue before the Court, namely whether the remedy in the Proposed Amended Final Judgment is in the public interest. That remedy has not yet been implemented, pending this Court's decision. Indeed, as AT&T and the Government have explained, three major telecom companies have signed contracts to purchase AT&T's special access facilities pursuant to the PAFJ, and are ready to close those deals and begin to put those assets to work in competition with the merging parties in response to a favorable decision by this Court.

Thus, this Court should reject ACTel's attempts to sidetrack these proceedings with irrelevant and erroneous allegations of what purportedly has happened in the past when no remedy was in place. Rather, the Court's role is to look to the future efficacy of the remedy that will happen once the decree is implemented. ACTel's fictionalized and irrelevant allegations do not alter the fact that the record here – analyzed in conformance with the applicable law – fully supports the Government's position that the proposed remedy will effectively address the "anticompetitive effects" specifically alleged in the Complaint at ¶¶ 25-26, and is thus in the public interest.

---

[1]  Legacy SBC refers to wholesale "local private line" as "special access." This is the area in which ACTel has focused its concern, as evidenced most recently by the fact that its Reply Memorandum refers to "wholesale" 9 times and to "special access" 4 times in just 3 pages (pp. 12-14), and the attached Wilkie white paper excerpt (ACTel Exh. C at 9) focuses on the "The Wholesale Market."

2

1.  ACTel's claim that AT&T's wholesale special access pricing has increased since the merger is false. ACTel Reply at 15 ("'special access' . . . price increases have already occurred"). AT&T's special access prices have not increased since the merger, nor could they since AT&T is prohibited by an FCC merger condition from increasing such rates. *See* FCC Merger Order, Appendix F, at 123, *available at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-05-183A1.pdf.

To support its claim, ACTel attached to its reply brief at Exhibit H a series of state tariff change announcements that have nothing to do with special access. It is clear from the face of the documents that these changes apply <u>only</u> to <u>intra-state</u>, <u>retail</u> services that are purchased by end users with local needs. ACTel members have expressed concern only with "special access" sold at "wholesale," as confirmed in its brief and attached "white paper." (*See* n.1, *supra*.) The Court will note that ACTel never claims that its members have paid higher prices.[2]

In addition to being wholly unrelated to wholesale special access prices, the cited rate changes had nothing to do with the merger of SBC and AT&T. Like other companies, AT&T raises (and lowers) rates for its services from time to time in the ordinary course of business. *See* Exhibit A.[3] Moreover, any such increases are completely irrelevant to the Court's analysis in

---

[2] The state-level notices attached at Exhibit H on their face make clear they relate to retail services as to which AT&T is required by the 1996 Telecommunications Act to offer at a certain discount for "resale." Telecommunications Act of 1996, 47 U.S.C. §§ 251(c)(4), 252(d)(3). These resale rates are different from wholesale "special access" services, which are priced in their own federal tariff and have no "resale" discount. *See, e.g., In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, 11 FCC Rcd 15499 (rel. Aug. 8, 1996) at ¶¶ 873-74 (distinguishing resale services from access services including special access, and specifically excepting access rates from the resale requirements of the Telecommunications Act).

[3] AT&T offers Exhibit A to complete the incomplete record created by ACTel's selective presentation of pricing notices in Exhibit H to its Reply Memorandum. While ACTel presented to this Court only post-merger pricing notices in an attempt to support its contention that prices have increased as a result of the merger, it failed to provide to the Court the notices

(continued...)

view of the fact that the proposed remedy that the Court must evaluate for purposes of its public interest determination has not yet been implemented. In short, the pricing issue is a red herring that is irrelevant to this proceeding.

2.  ACTel's use of selective quotes from AT&T executives not only to create a false impression about price increases but to deride the Government's investigation (ACTel Reply at 12, 17) should also be summarily rejected. First, it is (again) clear on the face of ACTel's exhibits that the general statements about "price stability" and "upside to pricing" do not relate to wholesale special access, but only to retail "enterprise" business services.[4] What ACTel fails to point out is that when its exhibit does in fact refer explicitly to "wholesale" services, the AT&T executive's comments reflect the exact opposite of a price increase: "wholesale revenues . . . are down 2.2%," "reflecting pricing pressures." ACTel Exh. G at 6, 8. AT&T makes this point not because the Court needs to make a finding on past pricing – given the irrelevance of the pricing issue -- but only as it goes to the credibility of ACTel's overall allegations.

3.  Despite clear legal precedent and its own statements that it accepts the Complaint as filed (Reply at 6), ACTel continues to assert that this Court should look for competitive harm the Government did not allege. The Complaint is limited to the anticompetitive effects of the merger in certain 2-to-1 buildings (¶¶ 25-26), but ACTel still seeks to re-litigate its contention that the merger creates actionable harm in 3-to-2, 4-to-3, and 5-to-4 buildings. ACTel Reply at 8-12. First, ACTel seeks to confuse the issue by citing to the "market definition" allegations in

---

(…continued)
that were issued pre-merger that complete the picture, show that price increases occurred prior to the merger, and belie any contention that there is a causal relationship between the merger and price increases.

[4] See ACTel Exhibit G at 6 ("enterprise" customers are "large business operations"); Exhibit J at 9 (quoted language begins with "there are several aspects to enterprise").

4

¶¶ 19-23 of the Complaint, while ignoring the specific "Anticompetitive Effects" alleged at ¶¶ 18, 25, and 26 that specifically focus on 2-to-1 buildings and are the foundation of the remedy. *See* ACTel Reply at 4.

ACTel's next claim (at 8-10) that HHI calculations somehow demonstrate harm not only is an improper collateral attack on the Complaint, it is simply not the law. The DOJ's <u>Merger Guidelines</u> clearly state at ¶ 2.0 that HHI data "provide only the starting point for analyzing the competitive impact of a merger," and that DOJ will assess "other market factors" including "entry." This comment reflects longstanding Supreme Court precedent. *United States v. General Dynamics Corp.*, 415 U.S. 486, 498 (1974) (market share statistics "are not conclusive indicators of anticompetitive effects"). ACTel continues to ignore the DOJ's explanation that buildings beyond certain 2-to-1 buildings would not experience competitive harm as a result of the merger because "the fact that at least two CLECs had added the buildings in question to their networks suggested that the characteristics of the buildings (*e.g.*, location, capacity demand) made them susceptible to entry – significantly more so than the 2-to-1 buildings." DOJ Reply to Public Comments at 25. Thus, the DOJ properly took into account the likelihood that additional competitors would enter as well as other factors in looking beyond HHI statistics under the governing "totality of the circumstances" standard. *General Dynamics Corp.*, 415 U.S. at 498; *U.S. v. Baker Hughes*, 908 F.2d 981, 984 (D.C. Cir 1990).

As we have previously demonstrated, Constitutional imperatives regarding separation of powers do not permit a court to second-guess the scope of the executive branch's complaint. Especially where DOJ not only filed a clear complaint, but explained to the Court the analytical basis for its decision, this Court cannot and should not second-guess that decidedly prosecutorial function.

*       *       *

For the foregoing reasons, those expressed in AT&T's prior briefs, and those separately expressed by the Government, the Court should grant the United States' Motion for Entry of Final Judgments.

        Respectfully submitted,

        /s/ Wilma A. Lewis
        Wilma A. Lewis (D.C. Bar No. 358637)
        Wm. Randolph Smith (D.C. Bar No. 356402)
        **CROWELL & MORING LLP**
        1001 Pennsylvania Avenue, N.W.
        Washington, DC 20004
        Telephone: (202) 624-2500
        Facsimile: (202) 628-5116

        Counsel for Defendant AT&T Inc.

Dated: June 19, 2006