**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 1:05CV02102 (EGS) |
| SBC Communications, Inc. and AT&T Corp., | ) ) ) ) | |
| Defendants. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 1:05CV02103 (EGS) |
| Verizon Communications Inc. and MCI, Inc., | ) ) ) ) | |
| Defendants. | ) ) | |

**VERIZON'S OPPOSITION TO MOTIONS OF THE NEW JERSEY DIVISION
OF RATE COUNSEL AND NATIONAL ASSOCIATION OF STATE UTILITY
CONSUMER ADVOCATES TO INTERVENE**

Two groups purporting to represent the interests of consumers have sought leave to intervene in this proceeding without any legitimate explanation for the untimeliness of their motions. On July 19, 2006, the New Jersey Division of Rate Counsel (formerly the New Jersey Ratepayer Advocate) filed a motion to intervene "in order to present the views of a state consumer advocate" and "to present the expert opinions of Susan M. Baldwin and Sarah M. Bosley upon which the Ratepayer Advocate relied in its preparation of comments and briefs that were filed with the Federal Communications Commission ("Commission" or "FCC") and with the New Jersey Board of Public

Utilities."  On July 20, 2006, the National Association Of State Utility Consumer Advocates ("NASUCA") filed a motion to intervene in order to "have entered into the record NASUCA's submissions that were included in the record of the Federal Communications Commission ('FCC') review of these merger applications," and to offer their expert, Dr. Lee Selwyn, to appear before the Court "to address, as best he can, any questions that the Court may wish to ask about the procedural, substantive or constitutional issues" at stake.  Both motions suffer from multiple flaws and should be rejected.

      1.     The movants seek permissive intervention pursuant to Fed. R. Civ P. Rule 24(b)(1) ("when a statute of the United States confers an unconditional right to intervene").  The Tunney Act does not confer such a right to intervene.  *See*, *e.g.*, *United States v. Microsoft Corp*, No. 98-1232, 2002 U.S. Dist. Lexis 26551 (D.D.C. Feb. 28, 2002); *Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 780 n.2 (D.C. Cir. 1997).  While movants do not seek leave under Rule 24(b)(2), they cannot meet that test either because, at this late stage, they cannot demonstrate that their intervention will not cause undue delay.  *See Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1234 (D.C. Cir. 2004).  The New Jersey Rate Counsel offers no explanation for its failure to seek leave before now and cannot claim it lacked notice; they "participated extensively" in the merger proceedings below.  N. J. Rate Counsel at 3.  NASUCA's excuse – that it did not think this Court's review would "justify diverting additional and time and effort to these mergers" – is difficult to credit given that it merely seeks to file existing pleadings and that its expert has agreed to appear "pro bono."  NASUCA at 2-3.

Movants offer nothing germane or useful to the Court. The documents they seek to provide the court, previously submitted to the FCC and state commissions, do not address the Local Private Line market that is the subject of the government's complaint. The briefs and testimony they offer deal exclusively with competition in the mass-market, which is not at issue here and can only distract from the inquiry actually before the Court. (Both movants also seek to introduce comments regarding a merger that is not at issue here – AT&T/BellSouth – and which the government has not even finished reviewing.) Expanding this proceeding to include these latecomers, with their extraneous issues, would be unfairly and unduly prejudicial to the parties.

2. As this Court stated at the July 12 hearing, the sole remaining issue for the Court to resolve is whether the government's proposed final judgment provides a meaningful remedy for the harm alleged in its complaint. The Court said it will "consider those same factors that the parties have considered and then make determinations of fact and law that either the proposed final judgment addresses and resolves issues raised by the complaint in a manner that's consistent with the public's interest or not." July 12, 2006 Hearing, Tr. at 9. The movants are not qualified to assist the Court with this inquiry. They were not involved in, and thus lack familiarity with, the detailed process of analyzing the transactions and of developing the targeted remedy. As noted, movants and their experts limited their analysis in the proceedings below to mass-market competition. They accordingly have no basis to give opinions on how the remedy addresses the harm identified in the complaint. Movants clearly wish that the government had filed a different complaint directed to different issues, in particular the mass market. But this Court has made clear that it has "no desire whatsoever to redraft the complaint or require

the government to redraft the complaint to address concerns of others at this point." *Id.* at 60.

  3. The movants are also asking this Court to impose a remedy that is contrary to antitrust and regulatory law, and also contrary to the public interest. They want the Court to require the defendants to provide other carriers with the "Unbundled network element platform ('UNE-P') at total element long run incremental cost ('TELRIC') rates." N.J. Rate Counsel at 7; *see also* NASUCA, attachment 2 (providing hyperlink to, among other things, NASUCA's brief at the FCC where they requested as the first condition that Verizon provide UNE-P at TELRIC rates). "UNE-P at TELRIC rates" is industry jargon for a forced sharing arrangement whereby defendants are required to resell their service to non-facilities-based providers at rates below retail prices.

  The Supreme Court has held that forced sharing arrangements like the UNE-P could not be imposed under the antitrust laws even in a litigated case. In *Verizon Communications v. Law Offices of Curtis Trinko*, 540 U.S. 398 (2004), the Supreme Court rejected an antitrust claim against Verizon specifically seeking to impose forced sharing arrangements of this sort.

  The UNE-P regime is an unsound proposal even under general regulatory law. Until late 2004, the FCC required Verizon and other local exchange carriers to provide these UNE-P arrangements to competitive carriers. In August 2004, the D.C. Circuit rejected the FCC rules requiring these arrangements. *See United States Telecom Ass'n v. FCC*, 359 F.3d 554, 568-71 (D.C. Cir. 2004). On remand, the FCC acknowledged that it could no longer require the UNE-P consistent with the requirements of the Telecommunications Act of 1996. *See* Order on Remand, *Unbundled Access to Network*

*Elements; Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 20 FCC Rcd 2533, ¶ 204 (2005).  The FCC further acknowledged that its UNE-P requirements had not only failed to promote competition, but had actually resulted in "investment disincentives" that were contrary to the public interest.  *Id.* ¶ 218.  The movants here appealed that determination and lost.  The D.C. Circuit rejected their claims and upheld the FCC.  *See Covad Communications v. FCC*, No. 05-1095 (D.C. Cir. June 16, 2006).

In sum, the movants and their proposed experts are advocating the reincarnation of a regulatory regime that the courts and the FCC have rejected.  They accordingly will not be helpful to the Court on the issue actually presented here.  Although the Tunney Act gives the Court wide discretion in gathering information to conduct its review, permitting the movants to intervene would be an abuse of that discretion.

## CONCLUSION

The Court should deny the motion.

                        Respectfully submitted,

                        /s/ Mark C. Hansen

| | |
|---|---|
| John Thorne | Mark C. Hansen |
| David E. Wheeler | Aaron M. Panner |
| Verizon Communications Inc. | Evan T. Leo |
| 1515 N. Courthouse Road | Kellogg, Huber, Hansen, Todd, |
| Arlington, Virginia 22201 |    Evans & Figel, P.L.L.C. |
| Telephone: (703) 351-3000 | 1615 M Street, N.W., Suite 400 |
| Facsimile: (703) 351-3670 | Washington, D.C. 20036-3209 |
| | Telephone (202) 326-7900 |
| | Facsimile (202) 326-7999 |

July 20, 2006