IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:05CV02102 (EGS) |
| v. | ) | |
| | ) | |
| SBC Communications, Inc. and | ) | **MICHAEL LOVERN, SR. et al** |
| AT&T Corp., | ) | **(INTERVENOR / AMICUS CURIAE)** |
| | ) | **MOTION FOR LEAVE OF COURT TO** |
| | ) | **FILE a - Rule 60 (b) F.R.Civ. P.,** |
| | ) | **MOTION FOR RECONSIDERATION** |
| Defendants. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:05CV02103 (EGS) |
| | ) | |
| Verizon Communications Inc. and | ) | |
| MCI, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

**INTERVENOR, MICHAEL LOVERN SR.'s MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION, with Exhibits & SUPPORTING BRIEF,
TO ADDRESS THE COURT AS EXPERT ON ANTI-COMPETIVE ISSUES
ASSOCIATED WITH THE INTERCOMPANY SETTLEMENT SYSTEM**

Intervenor, Michael Lovern, Sr. (Lovern) comes before this Court on behalf of himself, a.k.a. American TeleDial Corp (ATC) & National Teleprocessing, Inc. (NTI) {hereinafter all three parties [Lovern, ATC & NTI] referred to as "Lovern"}, which Lovern is all that's left of ATC & NTI, two companies he founded. Lovern respectfully

RECEIVED
JUL 2 0 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

requests this Court to grant him leave to file his Motion For Reconsideration pursuant to Rule 60 (b), whereby Lovern requests the Court to allow him to represent his personal financial interest, which is adverse to the Government's representation of the "Public" as the Department of Justice (DOJ) Antitrust Lawyers have an adverse position regarding the anti-competitive problems connected to the Intercompany Settlement System (ISS).

Lovern intervened back in May under his guaranteed right pursuant to Rule 24(a)(1)&(2) – F.R.Civ.P., which the Court has not addressed. Lovern did not seek permission from the Court to intervene on the grounds he has a guaranteed right to intervene. If it's this Court's policy that all parties must ask for leave to intervene as a matter of policy, Lovern apologizes to the Court, however, he does not feel his adverse financial interest falls under Rule 24(b) – F.R.Civ.P., except possibly as a member of the Public, which he is a member of the public over and above his position as an adversely affected Businessman pursuant to Rule 24(a).

Lovern files this motion for leave to file a Motion For Reconsideration to personally address the Court as an Expert and aggrieved businessman regarding the unanswered questions surrounding the anti-competitive issues associated with the ISS; and, how the two mergers before the Court will damage his claims and the Public's Claims in conjunction with the ISS, and, the control of the ISS by AT&T – a.k.a. SBC Communications, Inc., and how that violates antitrust laws.

The Rule governing intervention traditionally receives liberal construction in favor of applicants for intervention. **Arakaki v. Cayetano**, C.A. 9 (Hawaii) 2003, 324 F.

3d 1078, as amended, cert denied 124 S. Ct. 570. Intervenors need not show standing. **Day v. Sebelius,** 376 F. Supp. 2d 1022.

On Motion to intervene as of right based on alleged interest in property or transaction which is the subject of cause of action, question is not whether applicable law assigns prospective Intervenor a cause of action, but whether movant may intervene in an already pending cause of action; Intervenors of right must have only an "interest" in litigation, not a cause of action or permission to sue. **Jones v. Princes George's County, Maryland, C.A.D.C. 2003,** 348 F. 3d 1014, 358 U.S. App. D.C. 276.

In determining whether movant seeking to intervene as of right has demonstrated requisite interest in subject matter of the action, court should define "interest" broadly. **In re Foos, Bkrtcy, N.D. Ill. 1995**, 183 B.R. 149.

Lovern raises the question that the Government's Lawyers in these two cases do not adequately represent Lovern's interest, and in fact DOJ has stated to the court they are **NOT** going to represent Lovern's interest, nor are they going to address the anti-competitive issues surrounding the ISS. Without intervention, Lovern cannot protect his interest as AT&T [a.k.a. SBC] will have total control of the ISS, and without question SBC will destroy remaining documents / evidence and then use the Doctrine of Laches in any future proceedings. Intervenor need only show that representation may be inadequate, not that it is. **Conservation Law Foundation of New England, Inc. v. Mosbacher,** 966 F. 2d 39.

**CONFLICT OF INTEREST**

What has not been addressed by the Court is the obvious "Conflict of Interest" of the DOJ lawyers whose primary role is to represent the "Public's Interest," which includes Lovern. The DOJ lawyers are public servants, paid by the general public [Taxpayers], and they are here in court to represent the Public's Interest, not further the cause of the Defendants.

There is an obvious adverse position in these cases between Lovern, the Public, AT&T's Competitors, and the Government / Taxpayers' lawyers. DOJ's narrow view of anti-competitive issues allows for Lovern to intervene on it's own. **See Forest Conservation Council v. U.S. Forest Service,** 66 F. 3d 1489. **Civil Procedure "Key" 338.** DOJ has made it perfectly clear they will not represent Lovern's interest in these cases. This Court's role in protecting the public's interest, as required by the Tunney Act when approving antitrust consent decree, is one of ensuring that the government has not breached its duty to the public in consenting to a consent decree. **Clayton Act, § 5(e), 15 U.S.C.A. § 16(e). U.S. v. Microsoft,** 231 F. Supp. 2d 144, affirmed *Massachusetts v. Microsoft Corp.*, 373 F. 3d 1199, 362 U.S. App. D.C. 152.

DOJ Antitrust Lawyers are governed by the **McDade Amendment: Title 28 U.S.C., Section 530B. "Ethical standards for attorneys for the Government," and, Title 28 CFR, Part 77, Section 77.2(a),** which includes practicing in the District of Columbia.

D.C. "Rules of Professional Responsibility"

**Rule 1.7 — Conflict of Interest: General Rule**

<u>(a) A lawyer shall not advance two or more adverse positions in the same matter.</u>

(b) Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:
   <u>(1) That matter involves a specific party or parties and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter even though that client is unrepresented or represented by a different lawyer;</u>
   (2) Such representation will be or is likely to be adversely affected by representation of another client;
   <u>(3) Representation of another client will be or is likely to be adversely affected by such representation;</u>
   (4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.

(c) A lawyer may represent a client with respect to a matter in the circumstances described in paragraph (b) <u>above if each potentially affected client provides consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation.</u>

**Representation Absolutely Prohibited—Rule 1.7(a)**

   [2] Institutional interests in preserving confidence in the adversary process and in the administration of justice preclude permitting a lawyer to represent adverse positions in the same matter. For that reason, paragraph (a) prohibits such conflicting representations, with or without client consent.

      DOJ lawyers clearly have a conflict of interest with Lovern and cannot be allowed to speak for him as they have stated they do not intend to represent his interest. This raises the question about whether or not in DOJ's 300 Interviews and 24,000 lawyers hours of review, did they review the ISS for anti-competitive problems? This Court asked the Government to give the Court a Declaration, Affidavit, or something to say there are no other anti-competitive issues outside what's in the government's complaint, but the Government, nor AT&T, SBC or Verizon will provide the Court such.

Another example of a conflict for DOJ is Richard Rosen, current private practice lawyer at Arnold & Porter. Lovern discussed his claims and the antitrust issues associated with the ISS with Mr. Rosen (Rosen) in great detail when Rosen was Chief of the Communications and Finance Section of the U.S. Department of Justice Antitrust Division. Rosen simply swept it all under the carpet, then, after he left DOJ he has been SBC's main man on all their major transactions, representing SBC on:

- SBC Communications and Cingular Wireless in Cingular's $41 billion acquisition of AT&T Wireless;
- SBC Communications in its acquisitions of AT&T Corporation, Ameritech, and Pacific Telesis **[This information is on Rosen's bio on the Arnold & Porter web site].**

This is just one example of the DOJ <u>personnel</u> conflicts Lovern brought to the attention of the Court in his original brief.

DOJ continues to act in bad faith [malfeasance] in these cases. On July 21st, 2006, AT&T and Bellsouth Shareholders will vote on the proposed merger between AT&T and Bellsouth. How is that even possible? The Shareholders don't even know what AT&T will be after these hearings. Once again, contrary to Ms. Lewis' statements to this Court, AT&T does not take these proceedings seriously. Lovern reported this illegal shareholder vote to the Senate Banking & Judiciary Committees, as DOJ has done nothing.

On May 2, 2006, Lovern filed a FOIA with the DOJ Antitrust Department requesting all documents in the Department's possession regarding the ISS. [Lovern Exhibit A]. DOJ refused to comply, so Lovern appealed. [Lovern Exhibit B]. On June 21,

2006, Lovern received a letter from the Office of Information & Privacy stating that they were too busy to deal with his appeal. To this day nothing has been done. [See Lovern Exhibit C]. This blocked Lovern from appealing to the Court.

It's a well known fact DOJ did not interview Lovern, part and parcel to its 300 Interviews / 24,000 lawyer hours regarding the ISS, even though Lovern is considered by most to be the Industry's foremost expert on the ISS, and a RBOC / AT&T expert, nor will they even acknowledge whether they took the ISS into consideration as part of their anti-competitive – antitrust review. DOJ has refused to give the Court any evidence.

On July 12, 2006, in court, DOJ, AT&T & Verizon attempted to convince His Honor that he should just <u>trust them</u> regarding any other potential anti-competitive / antitrust issues associated with the merger[s], and that he should not be concerned with looking outside the complaint filed by DOJ. This court already has information that indicates there are antitrust problems with the ISS, especially Judge Greene's former ruling in the MFJ. This Court cannot fulfill its obligations under the 2004 amended Tunney Act without making sure the consent decree is in the best interest of the public. That obligation is not restrained to the Government's Complaint. 15 U.S.C. § 16(e)(1)&(2) requires an independent decision by the Court, not a rubber stamping of the Government's Complaint.

Ms. Lewis, representing AT&T, told the Court on the 12th that all concerns had been dealt with and corrected and the court should trust them, yet DOJ, AT&T, SBC, nor Verizon will give the Court any evidence to support their position. A refusal to provide

(7)

the court with any documentation to support the government's conclusion and proposed consent decree does not comply with the Tunney Act.

> "To reiterate, the Act as interpreted by this Court requires the government to disclose '[t]he materials and documents that substantially contribute to the determination [by the government] to proceed by consent decree...'" **United States v. Central Contracting Co., Inc.,** 537 F. Supp. 571, quoting *United States v. Central Contracting Co., Inc.,* 531 F. Supp. 133 at 134 (E.D. Va. 1982). Also see, Clayton Act § 5(b).

This does not require full disclosure of DOJ's files, or defendant's files, but it does require a good faith review of all pertinent documents and materials and a disclosure of those which meet the above criterium.

**EXPERT KNOWLEDGE OF INTERVENOR REGARDING ISS**

Even if DOJ wanted to represent Lovern's interest, which they don't, they do not have the expertise with the ISS to adequately do such nor can they adequately represent the public, which this alone gives Lovern a guaranteed right to intervene. DOJ is not capable of fully understanding the impact of AT&T controlling the ISS, which makes it impossible for them to adequately represent Lovern, or the general public's interest in these hearings regarding the anti-competitive issues surrounding the ISS.

Lovern, in his capacity as an ISS Expert, goes far beyond the capabilities of the Government's lawyers, therefore, Lovern has a guaranteed right to intervene in his capacity as an Expert. **Sagebrush Rebellion, Inc. v. Watt**, 713 F.2d 525. [Also see *Prete v. Bradbury*, 438 F.3d 949 (2006).

In closing, Lovern will address the questions the Court presented in its July 7, 2006, Order:

"(1) What authority, if any, does the Court have to question the scope of the government's Complaints in these two case?"

**Answer:** Plenty – a) The 2004 Amended Tunney Act. The Court is required to

> "determine that the entry of such judgment is in the public interest. For the purpose of such determination, the court may consider -
> (1) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration or relief sought, anticipated effects of alternative remedies actually considered, and any other considerations bearing upon the adequacy of such judgment;
> (2) the impact of entry of such judgment upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial." **15 U.S.C., § 16 (e).**

DOJ and the Defendants told this Court the proposed consent decree restores competition. That's a joke. It restores AT&T back to pre-divestiture status, just a little smaller. That status included violations of antitrust laws, addressed by Judge Greene.

What separates the **"Big Boys"** from the **"little boys"** in this industry is billing & collection. This industry is all about **money**, not Fiber. Many a Company went into the stock market, raised millions of dollars, laid hundreds of miles of Fiber lines, then went bankrupt. AT&T is the best example of how important Billing & Collection (B&C) is. After they were denied direct access to the ISS in the mid 90s [after Lovern exposed the Conspiracy/Racketeering Enterprise] the evidence will show a steady decline in AT&T's

financial condition. It was all downhill as AT&T had been living on <u>cash flow</u> due to the rapid decline in "Market Share." Without direct access to the ISS they had to wait to receive their receivables [90-180 days] like all their Competitors, hence, the huge reduction in cash flow sent them into a tail spin. Under the ISS, when a Billing LEC [local exchange carrier] receives a toll call or other service for LEC billing via the ISS, the Billing LEC is required to immediately <u>purchase</u> the receivable and remit back to their Host [Bellcore Client Company – Originally 9 beginning in 1984, 7 RBOCS, Southern New England Telephone {Canadian Traffic} & Cincinnati Bell {Illegal Back Door Access for AT&T Domestic}]. This means immediate cash flow for the original owner of the receivable, unlike the inferior B&C product sold to everyone else by the RBOCs. Huge advantage for AT&T, until they got kicked out. By taking away their direct access, Ed Whitacre set them up for failure and future acquisition. AT&T's access up to that point was 100% illegal and in violation of Judge Greene's Order [MFJ].

b) The government has not provided the Court with any documentation. **<u>United States v. Central Contracting Co., Inc.,</u>** *supra.*

"(2) What authority, if any, does the Court have to inquire of the government as to what other alternative remedies it (and the defendants) considered and why those alternatives were rejected in view of the remedies suggested?"

**Answer:** Once again, **<u>United States v. Central Contracting Co., Inc.,</u>** *supra; and,* Lovern's expertise - **<u>Sagebrush Rebellion, Inc. v. Watt</u>**, *supra, and, Prete v. Bradbury, supra.*

(10)

"(3) What weight should the Court give to the legislative history of the amended Tunney Act, 15 U.S.C. §16, in its determination of what the appropriate standard of review is under the 2004 amended Tunney Act?"

**Answer:** All the weight necessary to protect the "Public's Interest."

"(4) The government and the defendants contend that the Court should continue to be deferential to the government in its Tunney Act review. Is that consistent with the legislative history of the amended Tunney Act, which purport to overturn this Circuit's precedents that employed what Congress considered to be too deferential a standard in evaluating consent decrees?"

**Answer:** The Government has not met its burden regarding the consent decree. [Determative Disclosure] If the Government & Defendants actually think that there are no additional anti-competitive issues then let them step up and say it under oath, or, if they are so sure Lovern is wrong about the ISS, then challenge his allegations, evidence & witnesses. The Government needs to do something!

"(5) What specific evidence is the government relying on for its assertion that its proposed remedies would replace the competition that would be lost as a result of the two mergers?"

**Answer:** Who knows, they have not provided any Determative Disclosure as required by law.

(11)

"(6) Has the government provided the Court with sufficient information for it to make an independent determination as to whether entry of the proposed consent decrees is in the public interest? If not, what other information should the government have provided to the Court?"

**Answer:** Absolutely NOT, See **United States v. Central Contracting Co., Inc.,** *supra.*

"(7) What weight, if any, should the Court give to the findings of the FCC as related to these two mergers?"

**Answer:** It depends on their work product and Determative Disclosure.

"(8) Through the eyes of a layperson, the mergers, in and of themselves, appear to be against public interest given the apparent loss in competition. In layperson's terms, why isn't that the case?"

**Answer:** It is the case, and in fact it should be the entire case as the Government's lawyers have a conflict of interest, and there is no immunity for them in the current Tunney Act Reviews in this Court. They are bound by the Rules of Professional Conduct for the D.C. Jurisdiction, and undeniably they have a conflict, plus, they have not provided the Court with any Determative Disclosure.

"(9) Why isn't the government's selected remedy broader in time - i.e. IRUs longer than ten years - and in substance - i.e. focus on the transport as well as the last-mile connections?"

**Answer:** This has been addressed adequately by ACTel & COMPTEL's lawyers.

"(10) What consideration should the Court give the arguments of the Attorney General of New York, Elliot Spitzer, that the mergers will adversely affect digital subscriber lines ('DSL') and the Internet backbone?"

**Answer:** The Court should give it serious consideration and seek experts to assist the Court.

"(11) What criteria did the government use in determining which buildings should be covered by the PFJs?"

**Answer:** Who knows, they provided the Court with NO Determative Disclosure.

If the Court does not go beyond the Government's Complaint in its independent review of anti-competitive issues associated with these two mergers incredible damage will be done, plus additional court proceedings will follow, and the already massive securities fraud[s] will magnify 100 fold. [See Supporting Brief].

It is now well settled that "*a denial of intervention is treated as final and appealable if the intervening party had a valid claim for intervention as of right or if the district judge abused his discretion in denying permissive intervention.*" United States v. American Tel. & Tel. Co., 642 F.2d 1285, 1290 (D.C. Cir. 1980) (italics original) (footnote omitted); accord Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 524-25 (1947); Twelve John Does v. District of Columbia, 117 F.3d 571, 574

(D.C. Cir. 1997).

For this Court to deny Lovern the right to intervene and address the Court on the anti-competitive issues surrounding the ISS will not only damage his personal financial interest, it will damage the rights of the general public as well. On July 12, 2006, in open court, DOJ, AT&T, SBC, Verizon, and the Court itself stated that no one from the "Public" was there or had showed any interest in the proceedings. That was an incredibly incorrect statement. Lovern was sitting in the Well. Lovern is a Member of the Public. He may not represent some consumer advocate group, however, he is more qualified to address anti-competitive issues in this case than any consumer group in the country.

This country was founded on "Individual Rights," not group rights. You won't find anything in the Bill of Rights regarding "Consumer Unions," or "Associations," or, "Special Interest Groups." It's all about the rights of individuals. Lovern may only be ONE INDIVIDUAL MEMBER of THE PUBLIC, but that's all it takes. It doesn't take a "Village" to protect the rights of the Public, it only takes ONE. If this wasn't true the amended Tunney Act would require a special panel of Judges, not just ONE JUDGE. Somehow this proceeding got started on the wrong track, just like the many proceedings since the 2004 Tunney Amendment, however, the Court is now getting this proceeding on the right track, and, the Court needs to <u>continue</u> to do what's right. Whether you agree with Judge Sporkin or not, you have to give him credit for speaking the truth.

> "...**the Court cannot limit the scope of its considerations in the way the Government has suggested. While the Court must show some deference to the discretion of the Justice Department, see Western Electric, 993 F.2d at 1577, such deference does not preclude the**

> Court's taking into consideration practices and markets that the Government has failed to address. Cf. Gillette, 406 F. Supp. at 715 ('Congress did not intend the court's action to be merely pro forma, or to be limited to what appears on the surface.')."
>
> "The Antitrust Division of the Department of Justice, while no doubt among the most competent and dedicated groups of professionals in Government service, nevertheless is made up of human beings and, unfortunately, human beings occasionally make mistakes.
>
> In approving a particular decree, the Justice Department attorneys may overlook certain issues, ignore certain concerns, or misunderstand certain facts. The participation of additional interested parties in the consent decree approval process helps to correct these oversights. Senate Hearings, at 146."

*Above Quotes From Judge Sporkin in the Microsoft case.*

Lovern respectfully informs this Court that the Public has shown interest in these proceedings and is represented by Lovern's presence. Lovern has patiently waited his turn to address the court in his capacity as an Intervenor. Lovern is prepared to provide this Court the evidence to back up his claims. It's time to hear from Lovern and,

**THERFORE**, for all the reasons stated in this Motion, attached Exhibits, and Supporting Brief, Lovern respectfully asks this Court to grant this motion, his Rule 60 b Motion for Reconsideration, and allow him to address the Court as an Intervenor on July 25, 2006, and in future proceedings, for the protection of his claims, those of the General Public, Respective Shareholders, and AT&T"s Competitors.

Respectfully submitted,

*(signature)*
Michael Lovern, Sr.
3713 Parke Drive
Edgewater, MD 21037
(206)-202-9074
pratgen@myway.com


American TeleDial Corp. &
National Teleprocessing, Inc.

*(signature)*
By: Michael Lovern, Sr.
3713 Parke Drive
Edgewater, MD 21037
(206)-202-9074
pratgen@myway.com


## CERTIFICATE OF SERVICE

I hereby certify that, on this 19th day of July, 2006, copies of the foregoing Motion For Leave to file a Motion For Reconsideration was e-mailed to the Following Parties:


Lawrence M. Frankel (D.C. Bar No. 441532)
Matthew C. Hammond
Telecom & Media Section
Antitrust Division
U.S. Department of Justice
1401 H Street, N.W., Suite 8000
Washington, D.C. 20530
(202) 514-5621
Attorneys for the United States

FOR DEFENDANT
SBC COMMUNICATIONS, INC. & AT&T

Wm. Randolph Smith (D.C. Bar No. 356402)
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2700

(16)

FOR VERIZON COMMUNICATIONS, INC. & MCI

John Thorne
Verizon Communications Inc.
1515 North Courthouse Road
Arlington, Va. 22201


ACTel

Gary Reback
Attorney For ACTel
Carr & Ferrell LLP
2200 Geng Road
Palo Alto, CA 94303


COMPTEL

Jonathan Lee & Kevin Sullian
C/O King & Spalding
1700 Pennsylvania Ave., N.W.
Washington, D.C. 20006


*Michael Lovern, Sr.* (signature)
Michael Lovern, Sr., et al
3713 Parke Drive
Edgewater, Maryland 21037
(206)-202-9074
pratgen@myway.com


July 19, 2006