UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>v.<br><br>SBC COMMUNICATIONS, INC. and<br>AT&T CORP.,<br><br>        Defendants. | Civil Action No. 03-2512 (EGS) |
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>v.<br><br>VERIZON COMMUNICATIONS, INC.<br>And MCI INC.,<br><br>        Defendants. | Civil Action No. 03-2513 (EGS) |

**MOTION OF THE
NEW JERSEY DIVISION OF THE RATEPAYER ADVOCATE
TO INTERVENE AND MEMORANDUM OF POINTS**

The New Jersey Division of Rate Counsel ("Rate Counsel"), with offices at 31 Clinton Street, 11th Floor, Newark, New Jersey 07101, pursuant to Federal Rules of Civil Procedure, Rule 24 (b)(1), and the Antitrust Penalties and Procedures Act, 15 U.S.C. §§16(b)-(h) (the "Tunney Act"), moves for permissive statutory intervention in the above captioned consolidated cases for the limited purpose of assisting the Court in making its public interest determination. The Rate Counsel seeks to intervene in order to present the views of a state consumer advocate who represents consumers in one of the major

jurisdictions that Verizon serves as the incumbent local exchange carrier ("ILEC"). The Rate Counsel also seeks to intervene in order to present the expert opinions of Susan M. Baldwin and Sarah M. Bosley upon which the Ratepayer Advocate relied in its preparation of comments and briefs that were filed with the Federal Communications Commission ("Commission" or "FCC") and with the New Jersey Board of Public Utilities ("Board").

## MEMORANDUM OF POINTS AND AUTHORITIES

**The New Jersey Division of Rate Counsel**

The Rate Counsel, formerly known as the New Jersey Ratepayer Advocate, is a Division within the Department of the Public Advocate,[1] that represents and protects the interests of all utility consumers, including residential, business, commercial, and industrial entities. The Rate Counsel participates actively in relevant Federal and state administrative and judicial proceedings. The above captioned cases are germane to the Rate Counsel's continued participation and interest in implementation of the

---

[1]/ The Department of the Public Advocate is a government agency that gives a voice to New Jerseyans who often lack adequate representation in our political system. The Department of the Public Advocate was originally established in 1974, but it was abolished by the New Jersey State Legislature and New Jersey Governor Whitman in 1994. The Division of the Ratepayer Advocate was established in 1994 through enactment of Governor Christine Todd Whitman's Reorganization Plan. The mission of the Ratepayer Advocate is to make sure that all classes of utility consumers receive safe, adequate and proper utility service at affordable rates that are just and nondiscriminatory. In addition, the Ratepayer Advocate works to insure that all consumers are knowledgeable about the choices they have in the emerging age of utility competition. The Department of the Public Advocate was reconstituted as a principal executive department of the State on January 17, 2006, pursuant to the Public Advocate Restoration Act of 2005, P.L. 2005, c. 155 (*N.J.S.A.* §§ 52:27EE-1 et seq.). The Department is authorized by statute to "represent the public interest in such administrative and court proceedings . . . as the Public Advocate deems shall best serve the public interest," *N.J.S.A.* § 52:"27EE-57, *i.e.*, an "interest or right arising from the Constitution, decisions of court, common law or other laws of the United States or of this State inhering in the citizens of this State or in a broad class of such citizens." N.J.S.A.§52:27EE-12, and the office of the Rate Counsel, formerly known as the Ratepayer Advocate, became a division therein to continue its mission of protecting New Jersey ratepayers.

Telecommunications Act of 1996.[2]   The outcome of the pending cases affects the national telecommunications industry and, therefore, the options, quality, and price of telecommunications services offered to consumers throughout the nation, including consumers in New Jersey.

The Rate Counsel welcomes the Court's consideration of whether and how the acquisitions by SBC Communications, Inc. ("SBC") of AT&T Corp. ("AT&T") and by Verizon Communications, Inc. ("Verizon") of MCI, Inc. ("MCI") will benefit the public interest.  The Rate Counsel has participated extensively in the investigation of these two major mergers by the Federal Communications Commission ("FCC" or "Commission") in WC Docket Nos. 05-65 and 05-75; and also in the investigation by the New Jersey Board of Public Utilities ("Board") in Docket Nos. TM05020168 and TM05030189. Also, the Rate Counsel recently submitted extensive comments in WC Docket No. 06-74, the Commission's investigation of AT&T's proposed acquisition of BellSouth Corporation ("BellSouth").

The Rate Counsel brings a unique perspective to the Court's review of these consolidated cases.  First, the Rate Counsel represents New Jersey utility consumers. Second, the Rate Counsel (and its consultants) are among the few parties who actually reviewed the voluminous proprietary and copy prohibited documents[3] submitted by the merger applicants to the FCC in response to the FCC's Information and Data Requests in WC Docket Nos. 05-65 and 05-75.

---

[2] / Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 ("1996 Act"). The 1996 Act amended the Communications Act of 1934. Hereinafter, the Communications Act of 1934, as amended by the 1996 Act, will be referred to as "the 1996 Act," or "the Act," and all citations to the 1996 Act will be to the 1996 Act as it is codified in the United States Code.

[3] / The majority of the documents consisted of copy prohibited documents.

**DISCUSSION OF RELEVANT PORTIONS OF THE LAW**

Pursuant to §5(e) of the Tunney Act, 15 U.S.C. §16(e), the proposed final judgments pending in these cases may only be entered upon the Court's determination "that the entry of such judgment is in the public interest." In making its public interest determination, the Tunney Act authorizes the Court to take such action "as the court may deem appropriate," 15 U.S.C. §16(f)(5).

The Tunney Act requires the Court in this proceeding to consider "any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest."[4] The law also requires the Court to consider "the impact of competition in the relevant market or markets, upon the public generally...."[5]

In furtherance of these duties, the Court issued its order of July 7, 2006. The Court's order raised, *inter alia*, the following questions:

> (6) Has the government provided the Court with sufficient information for it to make an independent determination as to whether entry of the proposed consent decrees is in the public interest? If not, what other information should the government have provided to the Court?
>
> (7) What weight, if any, should the Court give to the findings of the FCC as related to these two mergers?
>
> (8) Through the eyes of a layperson, the mergers, in and of themselves, appear to be against the public interest given the apparent loss in competition. In layperson's terms, why isn't that the case?

We understand that concerns were raised at the July 12 hearing about the failure of the DoJ to provide the Court any meaningful data or information upon which an

---

[4] 15 U.S.C. § 16(e)(1)(A).

[5] 15 U.S.C. § 16(e)(1)(B).

independent judicial review of the merger approval could be conducted. The Rate Counsel submits these comments and attachments to assist the Court in addressing these questions.[6]

**Major Conditions recommended by Rate Counsel**

Our office and consultants to our office examined thousands of pages of documents that SBC, Verizon, legacy AT&T, and MCI submitted to the Commission in response to its Data and Information Requests, and that the parties designated as confidential, highly confidential or copy prohibited. Our detailed analyses of the relevant product and geographic market data, and impact of the mergers on the public interest, accordingly, are redacted from the filings that are attached for the Court's review. The Rate Counsel believes that few parties examined the extensive data submitted in these merger proceedings (particularly information germane to mass market consumers and the public interest) at a level of detail similar to that conducted by our office and the consultants to our office.

We will forward the proprietary versions of testimony, declarations, comments, and briefs to the Court, which provide summaries of relevant proprietary data and information, should the Court issue such a directive and/or should the relevant parties consent to the disclosure to the Court of the information designated as proprietary.

The Ratepayer Advocate opposed both of the mergers presently under your review, and also is presently opposing, before the Commission, AT&T's acquisition of BellSouth. In all three merger proceedings, however, the Ratepayer Advocate also

---

[6] / In the interest of not inundating the Court with numerous documents, the attachments to this motion and comments represent a subset of the many documents that the Rate Counsel has submitted in relevant federal and state proceedings regarding the two mergers. The Rate Counsel will submit the entirety of its filings to the Court, upon request.

identified conditions to mitigate the harm to consumers and to increase the probability of benefits flowing through to consumers. I am attaching several, but by no means all, of the documents that the Ratepayer Advocate submitted in federal and state proceedings. We will forward additional documents to the Court, upon request, and also, are prepared to further assist the Court in assessing the impact of the two recent mergers on mass market consumers and on the public interest, including making our expert witnesses available.

The Rate Counsel's level of participation in the relevant federal and state proceedings regarding the SBC/AT&T and the Verizon/MCI mergers, and also in the pending Commission investigation of AT&T's acquisition of BellSouth, is unique among consumer advocates.[7] Our office and our consultants examined thousands of pages of documents submitted by the parties in purported support of their filings. We then submitted more than 600 pages of comments (including supporting declarations) in the three Commission investigations (WC Docket Nos. 05-65, 05-75, and 06-74) and more than 1200 pages of testimony and briefs in the Board's investigations (New Jersey BPU

---

[7] / In reply comments submitted in WC Docket No. 06-74, we stated:

> There is an air of resignation to the comments about the proposed acquisition by AT&T Inc. ("AT&T") of BellSouth Corporation ("BellSouth") ("Applicants"). Although virtually all oppose the merger and recommend that the Commission deny the Application, parties also seem to view Commission approval as a fait accompli. Parties propose numerous conditions, which merit serious consideration by the Commission, yet parties also express pessimism about the likelihood that conditions will prevent the Applicants' post-merger anticompetitive behavior or ensure that the Applicants flow through benefits to consumers. There is also an almost universal concern regarding the sheer size (as measured by access lines, geography, and product market) and regarding the effect of this merger on wireline competition, intermodal competition, and net neutrality.

Reply Comments of the New Jersey Division of the Ratepayer Advocate, WC Docket No. 06-74, June 20, 2006, at 1-2 (cites omitted).

Docket Nos. TM05020168 and TM05030189), based on our analysis of how the proposed mergers would affect telecommunications markets and consumers.

The Rate Counsel urges the Court to consider carefully whether and how the Bell operating companies' re-monopolization of telecommunications markets (through the acquisition of their rivals) benefits consumers and the public interest. Among the key conditions that the Court should impose are the following:

1. *Divestiture of competitive local exchange carrier ("CLEC") lines:* If SBC and Verizon will not commit to compete out of region, the Court should require SBC (now AT&T) and Verizon to divest CLEC lines.[8]

2. *Unbundled network element platform ("UNE-P") at total element long run incremental cost ("TELRIC") rates:* In the absence of effective local competition for the mass market, with the departure of two significant competitors (MCI and legacy AT&T) from the mass market, and with the expiration of TELRIC-based UNE-P as of March 2006,[9] CLECs must now enter commercial "negotiations" with ILECs should they seek access to ILECs' wholesale facilities. Clearly, with each successive wave of Bell mergers, the shift of balance between the CLEC and the ILEC tips more in favor of the latter, rendering the commercial negotiation of rates, terms, and conditions between the incumbent and the entrant entirely lopsided. Therefore, the Court should direct Bells to offer UNE-P at TELRIC-based rates, in order to promote local competition, consistent with the policy set forth in the 1996 Act.

The Rate Counsel has identified several other important conditions, which are discussed in more detail in the attached documents.[10] I am attaching the following redacted

---

[8] / For example, in New Jersey, and in all other territories where Verizon is the incumbent local exchange carrier ("ILEC"), Verizon would be required to divest those lines that had been served by MCI. Similarly the "new" AT&T would be required to divest all legacy AT&T lines in its ILEC territories.

[9] / *Unbundled Access to Network Elements; Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, FCC WC Docket No. 04-313; CC Docket No. 01-338, *Order on Remand*, rel. February 4, 2005 ("Triennial Review Remand Order" or "TRRO"), at para. 227.

[10] / Please see, in particular, the initial comments of the Division of the Ratepayer Advocate, and accompanying declaration, submitted in WC Docket No. 06-74, on June 5, 2006, for a comprehensive discussion of recommended conditions. Although these conditions are discussed in the context of the proposed AT&T/BellSouth merger, many are germane to all major mergers involving incumbent local exchange carriers, and, therefore, merit consideration by the Court in the instant cases.

documents for your review, which discuss our concerns about the impact of the merger on consumers, and which also identify suggested conditions.

**ATTACHED DOCUMENTS (REDACTED VERSIONS) FOR COURT REVIEW:**

The Rate Counsel submits the following documents for the Court's review and consideration.[11]

**Verizon/MCI Merger**

*Commission Investigation: In the Matter of Verizon Communications Inc. and MCI, Inc., Applications for Approval of Transfer of Control, WC Docket No. 05-75*

> Initial Comments of the New Jersey Division of the Ratepayer Advocate, including Declaration of Susan M. Baldwin and Sarah M. Bosley, filed on May 9, 2005. (This document reviews the original, proprietary version of Verizon and MCI's application.)

*Board Investigation: Joint Petition of Verizon Communications Inc. and MCI, Inc. for Approval of Merger, New Jersey Board of Public Utilities Docket No. TM05030189:*

> Rebuttal Testimony of Susan M. Baldwin, on behalf of the New Jersey Division of the Ratepayer Advocate, filed August 19, 2005. (Please note that the proprietary version of this testimony describes and analyzes relevant product and geographic market data based on an analysis of documents submitted by Verizon and MCI to the Commission.)

> Initial Brief filed on behalf of the New Jersey Division of the Ratepayer Advocate, filed October 14, 2005. (Please note that the proprietary version of this brief includes, among other things, Herfindahl Hirschman Index ("HHI") analyses of relevant markets affected by the merger, based on proprietary data submitted by the parties in response to the Commission's Information and Data Request).

**SBC/AT&T Merger**

*Commission Investigation: In the Matter of Transfer of Control Filed by SBC Communications Inc. and AT&T Corp., WC Docket No. 05-65*

> Initial and Reply Comments of the Division of the Ratepayer Advocate, filed April 25, 2005, and May 10, 2005, respectively.

---

[11]/   The documents listed below refer to the New Jersey Division of the Ratepayer Advocate. The agency has subsequently changed its name to Division of Rate Counsel

**AT&T/BellSouth Merger:**

*Commission Investigation: In the Matter of AT&T Inc. and BellSouth Corporation Applications for Approval of Transfer of Control, Federal Communications Commission WC Docket No. 06-74:*

> Initial Comments of the New Jersey Division of the Ratepayer Advocate, including declaration of Susan M. Baldwin and Sarah M. Bosley filed June 5, 2006. (Among other things, this document includes an HHI analysis; a detailed discussion of recommended conditions; and an analysis of the impact of increasing consolidation on "net neutrality.").

The Rate Counsel submits the documents identified above to assist the Court in the determination of the public interest required by 15 U.S.C. § 16(e), and are relevant to the specific considerations required by 15 U.S.C. § 16(e)(1) and (2).

## OTHER RATEPAYER ADVOCATE DOCUMENTS, AVAILABLE UPON REQUEST

The following documents have been prepared by or on behalf of the Ratepayer Advocate, and, although they are not attached to this letter, will be provided to the Court, upon request.

**Verizon/MCI Merger**

*Commission Investigation: In the Matter of Verizon Communications Inc. and MCI, Inc., Applications for Approval of Transfer of Control, WC Docket No. 05-75:*

> Reply Comments of the Division of the Ratepayer Advocate, filed May 24, 2005.

*Board Investigation: Joint Petition of Verizon Communications Inc. and MCI, Inc. for Approval of Merger, New Jersey Board of Public Utilities Docket No. TM05030189:*

> Direct testimony of Susan M. Baldwin, filed July 8, 2005.

> Reply Brief of the Division of the Ratepayer Advocate, filed October 28, 2005.

**SBC/AT&T Merger**

*Board Investigation: Joint Petition of SBC Communications Inc. and AT&T Corp., Together with its Certificated Subsidiaries for Approval of Merger, New Jersey Board of Public Utilities Docket No. TM05020168:*

>Testimony of Susan M. Baldwin on behalf of the New Jersey Division of the Ratepayer Advocate, filed May 4, 2005 and June 1, 2005.

>Initial and Reply Briefs of the New Jersey Division of the Ratepayer Advocate, filed July 8, 2005, and July 22, 2005, respectively.

**AT&T/BellSouth:**

*Commission Investigation: In the Matter of AT&T Inc. and BellSouth Corporation Applications for Approval of Transfer of Control, Federal Communications Commission WC Docket No. 06-74:*

>Reply Comments of the New Jersey Division of the Ratepayer Advocate, WC Docket No. 06-74, filed June 20, 2006.

**CONCLUSION**

The Rate Counsel is hopeful that the attached documents will assist the Court in considering the merits of the recent wave of Bell mergers, and the impact of those mergers on the public interest. The Rate Counsel stands ready to assist the Court in remedying the anti-consumer consequences of the recently consummated and pending mega-mergers among telecommunications carriers.

Respectfully submitted,

*Christopher J. White*

Christopher J. White, Esq.
Deputy Ratepayer Advocate
Division of the Ratepayer Advocate
31 Clinton Street, 11th Floor
P.O. Box 46005
Newark, NJ 07101
973-648-7575 (Direct Line)
973-624-1047 (Fax)

Dated: July 18, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2006, a true and correct copy of the Motion of the New Jersey Division of Rate Counsel to Intervene For The Limited Purpose of Providing Consumer Views on the Public Interest and Memorandum of Points was filed with the clerk's office and copies were served by overnight mail to (due to technical difficulties resulting from a power outage at the New Jersey Division of Rate Counsel, a CD with the attachments will be mailed tomorrow):

*Attorneys for Plaintiff, United States:*
**Jared A. Hughes**
**Lawrence M. Frankel**
**Matthew C. Hammond**
**David T. Blonder**
Telecommunication and Media
Enforcement, Antitrust Division
U.S. Department of Justice
1401 H Street, N.W., Ste. 8000
Washington, D.C. 20530

*Attorneys for Defendant, Verizon Communications Inc.:*
**Aaron Martin Panner**
**Joseph S. Hall**
**Mark C. Hansen**
Kellogg, Huber, Hansen, Todd, Evens & Figel, PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

**David Earl Wheeler**
4445 Warren Street, N.W.
Washington, D.C. 20016-2439

**John Thorne**
1320 North Courthouse Road, 8th Floor
Arlington, VA 22201

*Attorneys for Defendant, SBC Communications, Inc.:*
**William Randolph Smith**
**Michael L. Lazarus**
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

*Attorneys for Defendant, AT&T Corp.:*
**Wilma A. Lewis**
**William Randolph Smith**
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

*Attorneys for Movant, CompTel:*

**Kevin R. Sullivan**
King & Spalding LLP
1730 Pennsylvania Ave., N.W.
Washington, D.C. 2006

*Attorneys for Eliot Spitzer, Attorney General of the State of New York:*

**Jay L. Himes**
Chief Antitrust Bureau
120 Broadway
New York, NY 10271

*Attorney for National Association of State Utility Consumer Advocates:*

**David C. Bergmann**
Assistant Ohio Consumers' Counsel
Chairman, NASUCA Telecommunications Committee
Office of the Ohio Consumers' Counsel
10 West Broad St., Suite 1800
Columbus, Ohio 43215

*Attorney for Movant, American Antitrust Institute, Inc.:*

**Jonathan Laurence Rubin**
Jonathan L. Rubin, PC
14121 Saddle River Drive
North Potomac, MD 20878

*Attorneys for Movant, Alliance for Competition in Telecommunications:*

**Gary L. Reback**
Carr & Ferrell LLP
2200 Geng Road
Palo Alto, CA 94303

National Association of State Utility Consumer Advocates
8380 Colesville Road, Suite 101
Silver Spring, Maryland 20910

_____
Susan M. Baldwin
On behalf of the New Jersey Division of Rate Counsel