**Attachment 17**

**Public portion of SBC response to
FCC April 18, 2005 Staff Data Request
item no. 4**



>   **business or wholesale customers in the possession of … SBC custodians William McCullough, Susan Johnson, Jose Gutierrez, Scott Helbing, Christine Urbanek, James Carter, Greg D'Anna, Jon Ramsey, Amy Bruns, Hunt Kingsbury, Edward Cholerton, Donna Harrison, Steven Mitchell, Debra Moore, Yno Gonzalez, Norma Buss, Daniel T. Walsh, John Nordberg, Thomas Wilson, Margaret Moschetto, Randall Porter, Mark Fishler, Howard Irgang, Randy Tomlin, Rick Moore and Brad Bridges.**

**RESPONSE:**

In response to Specification 3(e) and pursuant to agreement with Commission staff, SBC reviewed all documents submitted to the Department of Justice ("DOJ") from the above-named custodians in response to DOJ's Specification for Additional Information and Documentary Material issued to SBC Communications, Inc. on March 24, 2005. Pursuant to this request, Instruction 20(b), and agreement with Commission staff, SBC attempted to limit its response to final versions of high-level analyses and studies prepared expressly for AT&T and SBC that discuss business and wholesale competition between AT&T and SBC. In accordance with Instruction 21(d), the following custodians are most likely to have documents responsive to Specification 3(e): Christine Urbanek, James Carter, Greg D'Anna, and Jon Ramsey.

>   4.  **According to page 91 of the Public Interest Statement, "[m]any business telecommunications customers (and particularly large businesses) . . . employ rigorous competitive bidding processes." For situations since October 1, 2004 in which AT&T or SBC has submitted a proposal to provide any service to a business customer and in which AT&T or SBC is aware or believes that the other applicant also submitted a proposal identify:**
>
>       a.  **The service(s) which was or were the subject of the proposal;**
>
>       b.  **The month the proposal was submitted;**
>
>       c.  **The class of customer as defined in response to Specifications l.a and l.b;**

- 20 -

      d.      **The revenues that would have been generated, separately within SBC's region and outside SBC's region, under the proposal;**

      e.      **Any other person which your company is aware or believes also submitted a proposal;**

      f.      **The location(s) in which the service was or is scheduled to be provided; and**

      g.      **The person awarded the contract to provide the relevant service(s).**

**RESPONSE:**

As agreed by Commission staff, SBC's response to Specification 4 is limited to data maintained in the ordinary course of business in the SBC ICB and Horizon databases, and does not include the names of the applicable customers. The data requested by Specification 4 is set forth in Exhibits 4(i) and 4(ii).

Because there is no non-burdensome method of "mapping" proposals listed in the ICB and Horizon databases to each other (*i.e.*, the two systems do not include a reliable common indicator of what are identical customers or competitive opportunities for those customers' business), SBC is producing responsive information from the two databases separately. Many of the proposals listed in the two files may be the same. However, information about the proposals may be inconsistent between the sources, as they are maintained by separate people and organizations within SBC.

Both data sources are subject to significant limitations, as the contents of the databases are not systematically maintained. For example, identification of the competitors on any given proposal depends on incomplete and sometimes inaccurate information available to sales or other personnel involved in the proposal. The identity of the bidders is not usually public information, and even when the issuer of the RFP

- 21 -

chooses to reveal information regarding bidders, that information is often limited and imcomplete. For example, it may reveal the identity only of one or two bidders among many. Employees who recognize such inherent limitations may not devote adequate time to pursuing information or maintaining the accuracy of the databases. Accordingly, the competitors listed in the databases are likely to be incomplete, substantially undercounted, and in some cases incorrect. SBC is aware of many situations in which the ICB and/or Horizon databases may list only one competitor (such as AT&T) on a proposal, when in fact there are or were numerous other competitors bidding on those accounts. Similarly, SBC is aware of situations in which the ICB and/or Horizon databases list AT&T as the competitor when in fact SBC has subsequently learned that AT&T either did not compete or was not a finalist in the customer's RFP process. Furthermore, the ICB and Horizon databases include entries for many proposals on which no competitor is listed at all, even though many of them were competitive and involved numerous bidders.

Accordingly, the databases are simultaneously underinclusive, inaccurate, and overinclusive with respect to the identification of competitors on proposals in which SBC has participated. It would be extremely time consuming and, as a practical matter, virtually impossible for SBC to ascertain with any reasonable degree of accuracy the identity of competitors on the thousands of proposals in which SBC has been involved since October 1, 2004.

In compiling proposal data from the ICB and Horizon databases, SBC has applied the following methods and procedures:

- To identify the proposals on which the databases indicate that AT&T also competed, SBC has searched for "AT&T" in all "Competitor" fields of ICB and Horizon. To the extent that "Comments" fields of the databases sometimes include references to competitors not listed in the "Competitor" fields, it is possible that these searches have not yielded some opportunities on which AT&T competed.

- Similarly, references to competitors other than AT&T (on proposals for which the "Competitor" fields indicate that AT&T also competed) may be found in "Comments" fields (which we have included) as well as the "Competitor" and "Competitor Name" fields. Indeed, in most cases the latter fields contain the name of only a single competitor (AT&T, in the data extract requested by the Commission), even though, as noted above, it is highly likely that there were other competitors on many of these cases.

- When multiple competitors are listed on a proposal, there is no reliable means of determining whether they are competing for the same services included in the customer's RFP or other competitive bidding process. As noted in the attached files, many customer RFPs include requests for bids on multiple different services, and competitors on some may differ from competitors on others. Indeed, SBC often competes on only parts of customer RFPs, whether geographically, with respect to different services, or both.

- In many cases, some or much of the information requested by the Commission about a proposal – for example, the services covered by the proposal, the

locations at which services were requested, or the identity of bidders and winners – is now partly or completely unknown to or not tracked by SBC. Where maintained in either the Horizon or ICB databases, as agreed by the Commission staff, all such information is provided in the attached files.

B. **Special Access and Private Line Services**

5. **Pages 102-03 of the Public Interest Statement assert, in general terms, that SBC faces growing competition in the special access market.**

   a. **For each incumbent LEC franchise area and MSA where AT&T or SBC provide special access service, provide the special access revenues billed and number of circuits for AT&T and SBC, separately for each type of special access service, and separately for each class of business and wholesale customers as defined in response to Specifications 1.a and 1.b. Provide definitions for each type of special access service (which, cumulatively, should encompass all special access services offered by the company).**

**RESPONSE:**

Revenues inclusive of all special access and number of circuits by service, organized by MSA and/or state, are set forth in two attached files at Exhibits 5(a)(1) and 5(a)(2).

The data at Exhibit 5(a)(1) represent special access services billed through the Industry Markets group and provided by MSA and state. Revenues provided reflect quarterly revenues aggregated for each month from billing databases; circuit counts were compiled by taking a "snapshot" of the billing databases during the second month of each quarter, from the first quarter of 2004 to the first quarter of 2005. All geographic areas identified in this response are within SBC's region.

- 24 -