IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>  )<br>Plaintiff,   )<br>v.   )<br>  )<br>SBC Communications, Inc. and   )<br>AT&T Corp.,   )<br>  )<br>Defendants.   )<br>  ) | Civil Action No. 1:05CV02102 (EGS) |
| UNITED STATES OF AMERICA,   )<br>  )<br>Plaintiffs,   )<br>v.   )<br>  )<br>Verizon Communications, Inc. and   )<br>MCI, Inc.,   )<br>  )<br>Defendants.   )<br>  ) | Civil Action No. 1:05CV02103 (EGS) |

## MOTION TO CORRECT THE RECORD

Pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, COMPTEL respectfully requests leave to correct the record by bringing to the Court's attention an error in the Reply Submissions of the Department of Justice ("DOJ") and Verizon which were filed on September 19, 2006.

In its Reply Submission, the DOJ correctly noted that COMPTEL has argued that defining a building as a geographic market for commercial customers (wholesale or retail) is unreasonable because there is no evidence that customers purchase on a less-than-whole-demand basis. DOJ Reply at 7. However, the DOJ subsequently states,

> Yet COMPTEL, which purports to represent both customers and competitors in the market for LPL [Local Private Line services], argued that the FCC should use a building-by-building approach to evaluate competitive conditions for LPL.

DOJ Reply at 7-8, citing *Covad Communications Co. v. FCC*, 450 F.3d 528 at 544 (D.C. Cir. 2006) ("[T]he CLECs argue that impairment should be assessed on a building-by-building (as opposed to a wire center-by-wire center) basis").

COMPTEL is compelled to point out that the quote from the *Covad* case was deliberately and misleadingly taken out of context; and that the *Covad* case involved a completely different statute, with a different purpose, and an analytical framework that is distinctly different from the Merger Guidelines framework that is relevant to this Court's inquiry. *Covad* was an appeal from a Federal Communications Commission ("FCC") decision adopting rules for determining whether competitors are "impaired" in providing services without access to certain elements of the incumbent LEC networks (as opposed to services such as local private lines) on either a nationwide, or a more geographically limited, basis. In rejecting the CLECs' first contention—that they are, in fact, impaired on a nationwide basis—the court stated

> Nonetheless, the CLECs advocated the most *un*-nuanced and *un*-granular impairment finding imaginable--namely, a nationwide unbundling decree --notwithstanding the fact that we *vacated* the CLECs' proffered alternative in *USTA II*.

*Id.* (emphasis in the original; internal citations omitted). The court followed up with the sentence that DOJ conveniently edited to hide the fact that a building-by-building approach was not the CLECs' primary position:

> *As a fallback position*, the CLECs argue that impairment should be assessed on a building-by-building (as opposed to a wire center-by-wire center) basis. However, after chronicling extensive record evidence, the

2

> Commission concluded that a building-by-building approach would be an administrative nightmare, a font of endless litigation, and an ineffective metric of impairment.

*Id.* (internal citations omitted). If the FCC's interpretation of Section 251(d)(2) of the Communications Act of 1934 47 U.S.C. § 251(d)(2), was at all germane to the present issue of geographic market definition—which it is not—then the DOJ would have an equally-weak claim that a building is a relevant geographic market.

The FCC Order that was under review in the *Covad* case involved rules that the FCC adopted to implement Section 251(c)(3) of the Communications Act, 47 U.S.C. § 251(c)(3), which requires incumbent telephone companies to provide competitors access to certain parts of their networks if denial of that access would "impair" the competitors' ability to provide telecommunications services. Significantly, the FCC has previously, and unequivocally, rejected recommendations to adopt a Merger Guidelines analytical framework for conducting such an impairment analysis. See, *e.g.*, *In the Matter of Review of the Section 251 Obligations of Incumbent Local Exchange Carriers*, 18 FCC Rcd 16,978 at 17,051 (August 21, 2003) at ¶ 109. ("We reject the arguments that we should require the unbundling of network elements to remove an incumbent LEC's market power in the retail market and that we should use the H[orizontal] M[erger] G[uidelines] to identify market power. The purposes of a market power analysis are not the purposes of section 251(d)(2).")

Verizon also cites arguments that COMPTEL has made in FCC proceedings to determine impairment issues as support for the DOJ's use of a building as a geographic market. Verizon Response at 21, n.33. Neither the DOJ, nor the Verizon out-of-context observations have any relevance to the customer purchasing behavior information critical

3

to a market definition question in the context of a merger. Indeed, in the same FCC proceeding in which COMPTEL argued that a route by route analysis was appropriate for impairment determinations, Verizon argued that the appropriate market definition was an MSA,

> [g]eographic market definitions must reflect the manner in which carriers actually compete. . . . when carriers seek to provide . . . high capacity services, they enter broad geographic markets. Although they (rationally) target the most lucrative customers in those markets, the markets in which they compete cannot be reasonably defined as limited to individual loop or transport routes, or to individual wire centers. Instead . . . they compete *throughout* a broad geographic area, normally an area the size of a Metropolitan Statistical Area ("MSA") and often a larger area, and in some cases competing providers have entered nationwide.

Verizon Comments, WC Docket No. 04-313, filed October 1, 2004 at 25 available at http://svartifoss2.fcc.gov/prod/ecfs/retrieve.cgi?native_or_pdf=pdf&id_document=6516791453.

COMPTEL informed the other parties of its intent to file this Motion. DOJ, Verizon and AT&T all stated that they would object to the filing.

September 21, 2006                             Respectfully submitted,

                                                */s/ Jonathan D. Lee*
                                                Jonathan D. Lee
                                                Mary C. Albert
                                                COMPTEL
                                                1919 M Street N.W., Suite 800
                                                Washington, D.C. 20036
                                                (202) 296-6650

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of September 2006, a true and correct copy of the foregoing Motion To Correct Record was filed with the Court's ECF system and the following were noticed electronically:

Attorneys for the United States

David T. Blonder
David.blonder@usdoj.gov

Claude F. Scott, Jr.
Claude.scott@usdoj.gov

Attorneys for Verizon Communications

Joseph S. Hall
jhall@khhte.com

Mark C. Hansen
mhansen@khhte.com

Aaron Martin Panner
apanner@khhte.com

John Thorne
John.thorne@verizon.com

David Earl Wheeler
David.e.wheeler@verizon.com

Attorneys for Sprint Nextel

Charles Thomas Kimmett, Jr.
ckimmett@harriswiltshire.com

Timothy J. Simone
tsimeone@harriswiltshire.com

Attorneys for AT&T Corp.

Michael L. Lazarus
mlazarus@crowell.com

Wilma A. Lewis
wlewis@crowell.com

William Randolph Smith
wrsmith@crowell.com

Attorneys for NASUCA

Kathleen F. O'Reilly
kforeilly@igc.org

Attorneys for ACTel

Gary Reback
greback@carrferrell.com

Thomas Cohen
tcohen@theKDWGroup.com

Attorney for the NJRPA

Christopher J. White
cwhite@rpa.state.nj.us

Attorney for NY Attorney General

Jay L. Himes
jay.himes@oag.state.ny.us

_____
Mary C. Albert

5