IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>  v.<br><br>SBC Communications, Inc. and<br>AT&T Corp.,<br><br>    Defendants. | Civil Action No.: 1:05CV02102 (EGS) |
| United States of America,<br><br>    Plaintiff,<br><br>  v.<br><br>Verizon Communications Inc. and<br>MCI, Inc.,<br><br>    Defendants. | Civil Action No.: 1:05CV02103 (EGS) |

**UNITED STATES' OPPOSITION TO ACTEL'S MOTION FOR
LEAVE TO FILE SURREPLY**

  The United States opposes the motion by amicus ACTel to file a surreply. ACTel argues that another filing is necessary so that it can address "arguments to which it has not otherwise had an opportunity to respond,"[1] but the Proposed Surreply simply reiterates ACTel's arguments that the United States' Complaints should have alleged broader harm. ACTel should not be permitted to prolong these proceedings and burden the Court and the parties by being granted yet

---

[1] ACTel's Motion and Memorandum of Points and Authorities in Support of Motion for Leave to File Surreply at 1 (Sept. 25, 2006).

another opportunity to advance arguments that have been submitted and responded to in multiple pleadings.

The Proposed Surreply repeats ACTel's argument, made in its Response, that high market concentration is inconsistent with the United States' decision not to allege broader harm beyond 2-to-1 buildings.[2]  However, nothing in the *Horizontal Merger Guidelines* ("*Merger Guidelines*")[3] or the case law supports a merger challenge based solely on HHIs or other measures of concentration.[4]  To the contrary, and as the United States has already shown, the law of this Circuit and Department practice under the *Merger Guidelines* reject the proposition that a merger may be challenged based on concentration figures alone.[5]

---

[2] ACTel alleges that the Department ignored existing case law and antitrust precedent by failing to "inform[] the Court that the HHIs for the deals far exceeded those deemed acceptable by the case law in this circuit." ACTel's Surreply to the United States' Reply Submission in Response to the Court's Minute Order of July 25, 2006 at 2 (Sept. 25, 2006) ("ACTel Proposed Surreply"). ACTel cites no cases on what HHIs this Circuit has deemed "acceptable." And it cannot because no modern court has held that all mergers that increase concentration above a particular HHI are illegal.

[3] U.S. Dep't of Justice & Federal Trade Comm'n, *Horizontal Merger Guidelines* (rev. ed. 1997) ("*Merger Guidelines*").

[4] ACTel's Proposed Surreply continues its practice of taking language out of context. For example, ACTel states that the Department's "Merger Challenges Data" report "categorizes the mergers it has challenged *solely* by HHI because, in the words of the report, 'the market share and concentration levels at which the Agencies have challenged mergers are significant.'" ACTel Proposed Surreply at 3 (emphasis in original). The quoted language appears on the very first page of the report, followed by another sentence noting that "large market shares and high concentration by themselves are an insufficient basis for challenging a merger." U.S. Dep't of Justice & Federal Trade Comm'n, *Merger Challenges Data, Fiscal Years 1999-2003* (Dec. 18, 2003), attached to ACTel Proposed Surreply.

[5] *See United States v. General Dynamics Corp.,* 415 U.S. 486, 498 (1974); *United States v. Baker Hughes,* 908 F.2d 981, 985 (D.C. Cir. 1990); *FTC v. Arch Coal, Inc.,* 329 F. Supp. 2d 109, 130 (D.D.C. 2004); U.S. Dep't of Justice & Federal Trade Comm'n, *Commentary on the Horizontal Merger Guidelines* at 15-16 (2006) ("[T]he Agencies have often not challenged mergers involving market shares and concentration that fall outside the zones set forth in Guidelines section 1.51. This does not mean that the zones are not meaningful, but rather that market shares and concentration are but a 'starting point' for the analysis, and that many mergers falling outside these three zones nevertheless, upon full consideration of the factual and economic evidence, are found unlikely substantially to lessen

In an effort to breath new life into an old argument, ACTel suggests that the United States' Reply Submission ("Reply") adopted "new, far more stringent criteria" for merger review.[6] To the contrary, the United States has demonstrated in both its initial Submission and its Reply that its approach to these mergers followed well-established economic principles, the *Merger Guidelines,* and the case law of this Circuit. To challenge a merger, the United States must have evidentiary support to demonstrate that the merger will cause harm. As described in the *Merger Guidelines*, the two overarching theories of harm are coordinated effects and unilateral effects.[7] As Dr. Majure explained, the Department looked at both coordinated and unilateral effects, taking into account the nature of competition, the products, and the competitors. Dr. Majure concluded that a complete analysis indicated that it would be hard to establish that either type of harm was likely from the mergers in 4-to-3 or 3-to-2 buildings.[8] Nothing in this analysis represented a departure from existing standards for merger review, the *Merger Guidelines*, or precedent. Moreover, the United States has repeatedly explained its analysis of these issues in prior filings.[9]

---

competition.").

[6] ACTel Proposed Surreply at 1. ACTel has argued repeatedly that the United States is ignoring established antitrust principles. *See, e.g.*, ACTel Comments Regarding the Proposed Consent Decrees in United States v. SBC Communications, et al., Submitted on Behalf of the Alliance for Competition in Telecommunications at 22-23 (Feb. 9, 2006).

[7] *See generally Merger Guidelines* § 2.

[8] Reply Declaration of W. Robert Majure ("Majure Reply Decl."), ¶¶ 23-30, attached to United States' Reply Submission in Response to the Court's Minute Order of July 25, 2006 ("United States' Reply").

[9] *See, e.g.*, United States' Response to Public Comments at 24-25 (Mar. 21, 2006) ("Before coming to a judgment on the competitive effect of a merger, the United States evaluates whether coordinated or unilateral effects are likely, whether entry likely will occur, and whether a merger will

ACTel sets up a straw-man argument, asserting that the United States has announced that it will challenge a merger only where it can establish that the acquired firm is unique – and that this standard will impair future antitrust enforcement.[10] ACTel attempts to support this argument by pointing to portions of the United States' Reply and Dr. Majure's Reply Declaration which conclude that AT&T and MCI are not uniquely capable competitors for local private lines ("LPL").[11] ACTel ignores, however, that these discussions respond to arguments in the Responses of ACTel and other amici that MCI and AT&T were unique competitors for LPL.[12] The United States' Reply and Dr. Majure's Reply Declaration explain that the United States investigated – but did not find evidence to support – arguments that AT&T or MCI had unique

---

generate efficiencies.  Here, given the particular structure of the marketplace, in looking at buildings where the number of competitors went from three to two or four to three, the United States was unable to conclude that the mergers would significantly increase the risks of coordinated interaction.  Moreover, largely because the merging firms were not especially close substitutes, the evidence did not support a finding of likely unilateral anticompetitive effects in these buildings." (internal citations omitted)); Reply of the United States to ACTel's Opposition to the United States' Motion for Entry of the Final Judgments at 16 n.48 (June 1, 2006) ("[A] theory of competitive harm typically depends on an enhanced risk of either coordinated interaction or unilateral effects. . . . '[U]nilateral effects' is one of two basic types of competitive harm theories, one in which 'merging firms may find it profitable to alter their behavior unilaterally following the acquisition by elevating price and suppressing output.' *Merger Guidelines* § 2.2. . . . In this matter, the United States did not believe that a theory asserting an enhanced risk of either unilateral effects or coordinated effects was plausible in 4-to-3 or 3-to-2 situations." (internal citations omitted)).

[10] ACTel Proposed Surreply at 12.

[11] *Id.* at 11-12 (citing United States' Reply at 26, 28, 29; Majure Reply Decl. ¶ 27).

[12] *See, e.g.*, ACTel's Corrected Response to the United States' Submission Pursuant to the Court's Minute Order of July 25, 2006 (Sept. 11, 2006) at 26 ("The information submitted by purchasers shows that AT&T and MCI were important suppliers to the local wholesale market; that they were, in many cases, low price leaders; and that their elimination will significantly lessen competition and raise prices throughout the relevant markets, not just in a few hundred buildings."); Response of Sprint Nextel Corporation to the United States' Submission in Response to the Court's Minute Order of July 25, 2006 (Sept. 5, 2006) at 13 ("Before the mergers AT&T and MCI were uniquely positioned in the local access market in substantial part as a result of these purchases.").

4

advantages in selling LPL services.[13]  Moreover, ACTel fails to recognize that unique characteristics of the merging parties or their products can be one of many factors relevant to traditional unilateral effects analysis.  As Dr. Majure has explained, unilateral effects would be more likely if AT&T's and MCI's LPL products were substantially differentiated from those of other CLECS, but that the evidence did not support the conclusion that they were.[14]  This is far from establishing a standard that mergers can only be challenged if the acquired firms are unique.  Even where firms are not unique, other market factors may suggest that a merger is likely to have unilateral or coordinated effects.  The United States' approach here is neither new nor novel.

The Tunney Act proceedings in these matters have afforded all interested parties ample opportunities to provide their views to the Court on these and other issues.  Beginning during the statutory comment period, continuing through several rounds of motions, and culminating in its response to the United States' Submission, ACTel has filed close to 500 pages of briefs, exhibits, and declarations.  ACTel's Proposed Surreply adds nothing new to these proceedings and does

---

[13] *See* Majure Reply Decl. ¶¶ 27-30; United States' Reply at 26-34.

[14] Majure Reply Decl. ¶ 25.  ACTel's criticisms of Dr. Majure's reference to the Bertrand model are also misplaced.  ACTel Proposed Surreply at 10-11.  The Bertrand model, as noted in the ACTel Proposed Surreply, is included in most standard industrial organization text books.  As those texts explain, this model is studied by economists precisely because it demonstrates useful principles, such as how intense competition can exist among a small number of firms, particularly if their products are very similar.  *See* Jean Tirole, *The Theory of Industrial Organization* 212 (1988); Luis M.B. Cabral, *Introduction to Industrial Organization* 114 (2000).  ACTel notes that the texts all express some skepticism that this principle should be adopted as a general rule, but ACTel fails to note that the texts all agree that the principle will apply in some cases where the facts of the industry fit.  ACTel Proposed Surreply at 11.  Dr. Majure acknowledged that the markets here had characteristics that suggested that the Bertrand model was not a perfect fit.  Majure Reply Decl. ¶ 25 n.36.  In response to arguments raised by amici that there was no economic theory that would apply to 2-to-1 buildings but not to 4-to-3 or 3-to-2 buildings, Dr. Majure referenced this model as one under which a third competitor would not substantially increase competition.  *Id*.

not warrant modifying the Court's briefing schedule.  Therefore, the United States respectfully submits that ACTel's motion should be denied.

## Conclusion

For the foregoing reasons, the Court should deny ACTel's motion.

Respectfully submitted,

_____
Laury E. Bobbish
Assistant Chief

_____
Claude F. Scott, Jr. (D.C. Bar No. 414906)
Jared A. Hughes
John M. Snyder (D.C. Bar No. 456921)
Trial Attorneys

Telecommunications & Media Section
Antitrust Division
U.S. Department of Justice
1401 H Street, N.W., Suite 8000
Washington, D.C. 20530
(202) 514-5621
Attorneys for the United States

Dated: Sept. 28, 2006