# Exhibit A



# Department of Justice

FOR IMMEDIATE RELEASE  
WEDNESDAY, OCTOBER 11, 2006  
WWW.USDOJ.GOV  

AT  
(202) 514-2007  
TDD (202) 514-1888  

## Statement by Assistant Attorney General Thomas O. Barnett Regarding the Closing of the Investigation of AT&T's Acquisition of Bellsouth

*Investigation Concludes That Combination Would Not Reduce Competition*

WASHINGTON — Thomas O. Barnett, Assistant Attorney General in charge of the Department of Justice's Antitrust Division, issued the following statement today after the Department announced the closing of its investigation into the proposed acquisition of BellSouth Corporation by AT&T Inc.:

"After thoroughly investigating AT&T's proposed acquisition of BellSouth, the Antitrust Division determined that the proposed transaction is not likely to reduce competition substantially. The Division investigated all areas in which the two companies currently compete – including residential local and long distance service, telecommunications services provided to business customers, and Internet services – and the merger's impact on future competition for wireless broadband services.

"The presence of other competitors, changing regulatory requirements and the emergence of new technologies in markets for residential local and long distance service indicate that this transaction is not likely to harm consumer welfare. The proposed acquisition does not raise competition concerns with respect to Internet services markets or 'net neutrality'. The merged firm would continue to face competition from other facilities-based rivals in the provision of telecommunications services to business customers including local private line services. The combination would not significantly increase concentration in the ownership of spectrum in any geographic area or give AT&T control over a large enough share of all spectrum suitable for wireless broadband services to raise competitive concerns. Finally, the merger would likely result in cost savings and other efficiencies that should benefit consumers."

This transaction is subject to review by the Federal Communications Commission (FCC). The Antitrust Division coordinated with the FCC throughout its investigation.

(Background information is attached.)

###

06-692

### BACKGROUND TO CLOSING OF INVESTIGATION OF AT&T'S PROPOSED ACQUISITION OF BELLSOUTH

On March 5, 2006, AT&T Inc. and BellSouth Corporation announced their agreement to merge in an all-stock deal valued at $67 billion. AT&T, a Delaware corporation with headquarters in San Antonio, Texas, is the recently combined SBC Communications Inc. and the "legacy" AT&T. SBC is the incumbent local exchange carrier (ILEC) throughout much of the western, southwestern and mid-western United States. The legacy AT&T is a large provider of long distance and enterprise telecommunications services nationwide. BellSouth, a Georgia corporation with headquarters in Atlanta, is the ILEC throughout much of the southeastern United States.

After an extensive investigation, the Antitrust Division determined that the transaction is not likely to lessen competition substantially. The Division reviewed extensive information obtained from the merging parties and from industry participants and interviewed dozens of industry participants, including competitors and customers of the merging parties. The Division thoroughly examined all areas in which the two companies currently compete – including residential local and long distance service, telecommunications services provided to business customers, and Internet services –and also considered the merger's impact on future competition for wireless broadband services. The Division also evaluated the large cost savings and other efficiencies that AT&T has indicated it will achieve through the transaction. The parties provided documentation indicating that much of these efficiencies are likely to be realized, which would further reduce the likelihood that the transaction might harm consumer welfare.

### Local Private Lines

The Division's investigation focused in significant part on the provision of local private line services to wholesale and retail business customers. Local private lines are used to supply voice and data telecommunications services to business customers at locations within a metropolitan area. Because of BellSouth's extensive network, the company can provide local private lines to virtually every building in its region, while AT&T can provide services over its own facilities to only a small minority of buildings. In each metropolitan area where the two firms have significant overlapping facilities, the Division found that, postmerger, AT&T would have several competitors with extensive local networks. The merged firm would continue to face existing or potential facilities-based competition at nearly all of the buildings served by AT&T before the merger. Although the Division required divestitures of certain local private line assets before SBC acquired the former AT&T, applying the same criteria to this transaction led the Division to conclude that divestitures were unnecessary to preserve competition.

### Other Telecommunications Services Provided to Business Customers

For other retail business services, the Division concluded that the merger would not harm competition due to the presence of other competitors, the emergence of new technologies, and the fact that the merging parties' respective strengths are largely complementary. Within BellSouth's territory, AT&T's strength is in serving the complex, often nationwide needs of large businesses, while BellSouth focuses on serving smaller firms and providing traditional voice and data services to in-region businesses. BellSouth has very little business outside of its region.

### Residential Local and Long Distance Service

In markets for residential local and long distance service in the BellSouth region, the Division found that AT&T was of limited and declining competitive significance. The presence of other competitors, changing regulatory requirements, and the emergence of new technologies, such as voice over IP, indicate that the merger is unlikely to harm consumers.

### Internet Services

The Division also investigated whether the merger would create competitive problems in Internet services, including "net neutrality" concerns regarding the merged firm's ability or incentive to favor its own Internet content over that of its rivals. The Division found that the merger would neither significantly increase concentration in markets for the provision of broadband services to end users nor increase Internet backbone shares significantly. Although the merger would increase the number of subscribers on AT&T's broadband network, the large majority of the nation's residential and small business "eyeballs" remain with other large broadband Internet service providers (such as Verizon, Qwest, Comcast, and Time Warner).

### Wireless Broadband Services

The merger is not likely substantially to lessen competition in the provision of wireless broadband services. The combination would not significantly increase concentration in the ownership of spectrum in any geographic area or give AT&T control over a large enough share of spectrum suitable for wireless broadband services to raise competitive concerns.

The Division provides this statement under its policy of issuing statements, in appropriate cases, concerning the closing of investigations. This statement is limited by the Division's obligation to protect the confidentiality of certain information obtained in its investigations. As in most of its investigations, the Division's evaluation has been highly fact-specific, and many of the relevant underlying facts are not public. Consequently, readers should not draw overly broad conclusions regarding how the Division is likely in the future to analyze other collaborations or activities, or transactions involving particular firms. Enforcement decisions are made on a case-by-case basis and the analysis and conclusions discussed in this statement do not bind the Division in any future enforcement actions. Guidance on the Division's policy regarding closing statements is available at:
http://www.usdoj.gov/atr/public/guidelines/201888.htm.