AGREEMENT FOR THE PROVISION AND SUPPORT
OF THE CENTRALIZED MESSAGE DATA SYSTEM I
AND THE CREDIT CARD AND THIRD NUMBER SYSTEM

This Agreement is made as of January 1, 1984, by and between Southwestern Bell Telephone Company ("SWBT") and Bell Communications Research, Inc. (hereinafter "Bellcore");

WITNESSETH:

WHEREAS, on August 24, 1982, the U.S. District Court for the District of Columbia in <u>United States v. Western Electric Co., Inc.</u>, Civil Action No. 82-0192 entered a Modification of Final Judgment ("MFJ"), said MFJ requiring, <u>inter alia</u>, divestiture from American Telephone and Telegraph Co. ("AT&T") of certain assets;

WHEREAS, the Plan of Reorganization ("Plan"), has been approved by the Decree Court on August 5, 1983;

WHEREAS, AT&T is required under the Plan to develop and transfer ownership to Bellcore of a replicated version of Centralized Message Data System I ("CMDS I") which will provide a centralized facility for the collection and distribution of collect, credit card and third number calls for billing by other than the originating local exchange company;

WHEREAS, CMDS I is essential to all local exchange companies' ability to bill collect, credit card and third number calls;

WHEREAS, each local exchange company requires a means to account for its credit card, collect and third number calls billed by other local exchange companies;

LOVERN SUPPLEMENTAL BRIEF

EXHIBIT E

WHEREAS, AT&T has agreed to modify the existing Credit Card and Third Number System (CATS) for local exchange company use in the post-divestiture environment;

*[handwritten: BOC CATS]*

WHEREAS, SWBT has agreed to undertake certain services with respect to CMDS I and CATS for Bellcore and be compensated therefor;

WHEREAS, AT&T will transfer ownership of the replicated CMDS I and rewritten CATS to Bellcore on or before January 1, 1984 and SWBT and Bellcore wish to define their ongoing relationship with respect to the operation and administration of CMDS I and CATS;

*[handwritten: AT&T never gave up their original Billing System.]*

NOW, THEREFORE, in consideration of the mutual promises and convenants herein, the parties agree as follows:

1. **GENERAL**

    SWBT will operate, maintain and enhance CMDS I and CATS in accordance with the terms and conditions set forth herein and in Exhibit A, which is attached hereto and incorporated by reference herein.

2. **LICENSE**

    In consideration of the services to be provided herein, Bellcore hereby grants to SWBT a non-exclusive, personal, non-transferable and royalty-free right to use the CMDS I and CATS software on any of SWBT's facilities for the sole and exclusive purpose of providing CMDS I and CATS to the local exchange companies as provided in this Agreement. The license granted herein shall expire upon cancellation or other termination of this Agreement. SWBT shall in no event be

**PROPRIETARY**

permitted to sublicense or disclose to third parties any codes, documentation or other information with respect to the CMDS I and CATS software except as agreed to by the parties in a subsequent written instrument. All enhancements developed by SWBT shall be and remain the sole and exclusive property of Bellcore.

3. SOURCE CODES AND RELATED DOCUMENTATION

Bellcore shall, at no charge to SWBT, provide SWBT with any and all object code, source code, related documentation and technical assistance deemed necessary by SWBT for the successful operation, maintenance and enhancement of the system which SWBT shall not use except for the purposes set forth in this Agreement and shall not transfer, sublicense, or otherwise disclose without Bellcore's express written consent.

4. CHARGES

Bellcore shall fully reimburse and compensate SWBT for all costs associated with operating, maintaining and enhancing CMDS I and CATS. Said costs shall include, but not be limited to, primary, overhead, investment related and miscellaneous costs as they are more particularly described in Exhibit B, which is attached hereto and incorporated herein by reference. In addition, SWBT will be entitled to a reasonable contribution as described in Exhibit B. SWBT reserves the right to change its pricing methodology so that it remains consistent with SWBT methodology for the internal allocation of costs for corporate systems between SWBT departments, divisions and/or affiliates using those systems.

PROPRIETARY

-4-

5. <u>BILLING AND PAYMENTS</u>

   A.   SWBT shall issue a monthly bill for services rendered for the previous month. The bill shall include supporting details in the format set forth on Exhibit C, which is attached hereto and incorporated by reference herein or in such other format as is mutually agreed to by the parties from time to time. Bellcore shall remit payment within thirty (30) days of its receipt of a substantiated and accurate bill.

   B.   Bellcore shall be primarily liable to SWBT for all charges incurred by CMDS I users. Bellcore shall in turn bill all CMDS I users, shall be wholly responsible for collection of such charges and shall not withhold timely payment to SWBT because of non-payment or tardy payment of said charges by a user of the system. In the event that Bellcore or a user disputes a charge on a monthly bill, Bellcore shall furnish SWBT written notice specifying the details of such dispute within thirty (30) days of its receipt of the disputed bill and may withhold payment of the disputed amount until the dispute is resolved. Bellcore and SWBT agree to use their best efforts to resolve the dispute in a timely manner.

6. <u>RECORD KEEPING FOR AUDITS</u>

   SWBT shall keep such full and detailed accounts as may be necessary for proper financial management under this Agreement in accordance with generally accepted accounting practices. SWBT agrees that Bellcore's authorized representative shall, <u>until the expiration of three years after final payments under this Agreement</u>, have access to and the right to examine all books, documents, papers and records of SWBT

**PROPRIETARY**

relating to the services provided under this Agreement and that all such records shall be kept and preserved until the expiration of said time period.

7. COMMUNICATIONS NETWORK

Except as specifically provided to the contrary in this Agreement, Bellcore and SWBT shall be jointly responsible for arranging for and administering the communications network between all CMDS I users participating in any such network and SWBT's CMDS I/CATS data center. Costs for access lines and terminations (initially the Information Network provided under the Shared Network Facilities Agreement) used exclusively for CMDS I and CATS purposes by SWBT pursuant to meeting the obligations of this Agreement shall be included in the charges billed to Bellcore by SWBT.

8. EQUIPMENT

[handwritten: AT&T already had system]

Bellcore or its users other than SWBT shall acquire, at their own expense, compatible terminals and telephone equipment necessary for accessing SWBT's system. The cost of installing, operating, maintaining and removing such equipment shall be borne by Bellcore or its users and in no event shall SWBT or its affiliates be required to share the cost of same.

9. NONDISCLOSURE OF USER INFORMATION

A. Any technical or business information or data ("Information") furnished or disclosed to SWBT by Bellcore's users, including SWBT, shall be deemed the property of the user and, when in tangible form, shall be returned to the user upon request. Unless such

PROPRIETARY

Information was previously known to SWBT free of any obligation to keep it confidential, or has been or is subsequently made public by Bellcore, its users or a third party, it shall be held in confidence by SWBT, shall be used only for the purposes hereunder, and may be used for other purposes only upon such terms and conditions as may be mutually agreed upon in writing. Nothing contained herein shall obligate SWBT to protect such confidential and proprietary Information to any greater extent than it protects its own similar confidential and proprietary information.

B. SWBT's sole obligation in the event that it is served with legal process requesting the production of any Information shall be to promptly notify Bellcore so that Bellcore or any CMDS I/CATS users affected by such a request may move to quash or limit the scope of same prior to the date upon which SWBT is required to produce the Information.

10. SECURITY

SWBT shall provide reasonable security provisions commensurate with SWBT standards and practices.

11. SCOPE OF LIABILITY

It is agreed and understood that the services provided hereunder by SWBT are being offered in order to accommodate Bellcore and the local exchange companies in a divested environment. SWBT will use its best efforts to perform the services as described herein and in Exhibit A but does not guarantee absolute conformity with a certain level of performance. Any costs incurred by SWBT arising out of any errors, omissions or equipment malfunctions, not caused by the negligence or intentional misconduct of SWBT in failing to maintain proper standards of

**PROPRIETARY**

Case 1:05-cv-02102-EGS    Document 212-5    Filed 10/12/2006    Page 7 of 9

-7-

maintenance and operation and to exercise reasonable measures in the selection and supervision of its employees, agents and contractors shall be billed to Bellcore and borne by Bellcore and its users. SWBT shall not be liable for any consequential damages arising out of its performance hereunder.

12. REGULATORY MATTERS

Bellcore expressly recognizes that SWBT is affiliated with communications common carriers licensed by the Federal Communications Commission and certificated, where required, by state regulatory authorities operating under federal and state statutes, rules and regulations issued thereunder and filed tariffs. This Agreement may be subject to such changes or modifications as any such regulatory body may from time to time direct in the exercise of its jurisdiction. This Agreement is also subject to modification under the continuing jurisdiction of the Court under the MFJ.

13. CONTINGENCY

Neither Bellcore nor SWBT shall be held responsible for any delay or failure in performance hereunder caused by fires, strikes, embargoes, government requirements, civil or military authorities, acts of God or by the public enemy, inability to secure raw material or transportation facilities, acts or omissions of carriers not owned or controlled by SWBT or other causes beyond the control of Bellcore or SWBT.

14. ASSIGNMENT

SWBT shall have the right to assign this Agreement to its parent, a subsidiary of its parent or any other affiliate of Southwestern

PROPRIETARY

Bell Corporation whether or not said entity is in existence on the date of execution hereof but only if the assignee assumes all obligations of this Agreement or SWBT agrees to continue to assume said obligations.

15. **SEVERABILITY**

If any of the provisions of this Agreement shall be invalid or unenforceable under the laws of the jurisdiction applicable to the Agreement, such invalidity or unenforceability shall not invalidate or render unenforceable the entire Agreement, which shall be construed as if not containing the particular invalid or unenforceable provision.

16. **GOVERNING LAW**

The construction, interpretation and performance of this Agreement shall be governed by the laws of the state of Missouri.

17. **RENEGOTIATION**

CMDS I currently processes an average of 100 million messages per month. The growth rate is approximately 10% annually. If the message volume or any other major processing requirement varies significantly, this Agreement may be subject to renegotiation.

18. **TERMINATION**

Either party may terminate this Agreement by giving one (1) year written notice to the other. Upon termination by either party, SWBT shall give to Bellcore all software, codes and accompanying documentation which it developed for Bellcore and for which SWBT was compensated by Bellcore pursuant to this Agreement.

PROPRIETARY

19. ENTIRE AGREEMENT

This constitutes the entire agreement between the parties and shall not be changed except by written agreement signed by both parties.

20. OBLIGATIONS OF THE PARTIES

Each party has and hereby retains the right to exercise full control of and supervision over its own performance of the obligations under this Agreement. Each party will be soley responsible for all matters relating to payment of such employees, including compliance with social security taxes, withholding taxes and all other regulations governing such matters. And each party will be responsible for its own acts and those of its own subordinates, employees, agents and subcontractors during the performance of that party's obligations hereunder.

BELL COMMUNICATIONS RESEARCH, INC.

By: _____

Title: VP-Finance & Administration

Date: 6/28/85

SOUTHWESTERN BELL TELEPHONE CO.

By: _____

Title: Executive Vice President

Date: 7.3.85

**PROPRIETARY**