IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | | |
|       Plaintiff, ) | | |
|     v. ) | Civil Action No. 1:05CV02102 (EGS) | |
| SBC Communications, Inc. and ) AT&T Corp., ) | | |
|       Defendants. ) | | |
| UNITED STATES OF AMERICA, ) | | |
|       Plaintiff, ) | | |
|     v. ) | Civil Action No. 1:05CV02103 (EGS) | |
| Verizon Communications, Inc. and ) MCI, Inc., ) | | |
|       Defendants. ) | | |

**RESPONSE OF ELIOT SPITZER,
ATTORNEY GENERAL OF THE STATE OF NEW YORK,
TO THE DECEMBER 13, 2006 REPLY OF THE UNITED STATES**

      The December 13, 2006 Reply by the United States Department of Justice does not meet the objections presented by the State of New York or the other *amici* at the November 30, 2006 hearing. To the contrary, all it does is re-package parts of earlier, inadequate filings by the Department in these cases.

      We understand that the other *amici* are filing a joint response to the Justice Department's December 13, 2006 submission. We are offering this individual response to address three matters that, in our view, warrant further elaboration.

I

## THE DEPARTMENT OF JUSTICE'S PROCESS OF SELECTING
## 2-TO-1 BUILDINGS REMAINS IMPENETRABLE

The State of New York, and *amici* generally, have protested the opaqueness of the process by which the Justice Department claims to have identified the roughly 700 buildings nationwide that are the subject of its remedy. The Department has never provided to the Court the initial list of 2-to-1 buildings from which it derived the much smaller number of buildings included in its proposed final judgments. Nor has it disclosed to the Court or the *amici* the analysis that it used to generate the final building list so that the soundness of the filtering process could be probed. Nothing in the the Justice Department's December 13 Reply fills these gaping holes.[1]

At the November 30, 2006 hearing, the Justice Department suggested that the filtering process involved reviewing two factors: (1) the CLEC's distance from a particular building, a proxy for entry cost; and (2) the demand level at that building, a proxy for revenue from entry. *See* November 30, 2006 Transcript at 102-03 (citing Majure Declaration of August 7, 2006, at ¶14, n.17).[2] By setting out distance and demand categories that are defined using objective criteria – miles and line ("pipe") size – the Justice Department would have the Court believe that its filtering process was straightforward. However, it was anything but that.

---

[1] *See generally* DOJ Reply to Allegations Made by Amici at November 30, 2006 Hearing, Attachment at 1 (merely cross-referencing the Court back to parts of prior filings, in which the Department purports to explain the methodology used to conduct its analysis).

[2] According to Dr. Majure:

"Estimates of the revenue opportunity (based on the current traffic being generated in the building adjusted for special circumstances) and the distance to the closest CLEC fiber provide bases for identifying the subset of 2-1 buildings for which long-term harm was not likely to be offset by entry.

Majure Declaration of August 7, 2006, at ¶ 14 (footnote omitted).

Dr. Majure, the Department's economist, admits that the demand data was "adjusted for special circumstances . . . ." Majure Declaration of August 7, 2006, at ¶ 14, n.17. He further concedes that "[i]n some cases, a building was eliminated because there was unlikely to be competition in the future for its business." *Id.* As a result, buildings were eliminated from the remedy "for various reasons."[3] Dr. Majure also admits that the Department of Justice "did not take into account unusual features or circumstances regarding buildings or customers that could raise costs (e.g., the existence of railbeds), nor did they consider the possibility of increased revenues (e.g., if sales could be predicted to increase)." Majure Reply Declaration of September 19, 2006, at ¶ 18.

Despite all this admitted tinkering at an individual building level, the Justice Department maintains that it "would be impracticable to separately analyze any building-specific access costs or potential physical barriers." DOJ Reply Submission of September 19, 2006, at 14. So, in one breath, the Justice Department admits that its "adjustments" *eliminated* individual buildings from any remedy. Yet, in the next breath, the Department protests that it is "impracticable" *to do* a "building-specific" evaluation for the 2-to-1 buildings.

Simply put, the Justice Department fudged. Perhaps this explains why the Department has never provided the Court with the building list from which the Department's entry exercise began, nor any entry analysis that either the Court or the amici could evaluate and independently verify.

---

[3] DOJ Reply of June 1, 2006 to ACTel Opposition at 23. *See also id*. at 20; DOJ Reply of April 17, 2006 to COMPTel Opposition at 8, n.20; Majure Declaration of August 7, 2006, at ¶ 14, n.17.

## II

## THE DEPARTMENT OF JUSTICE'S 2-TO-1 BUILDING REMEDY
## IS IRREPARABLY FLAWED

At the November 30 hearing, *amici* showed that there are many buildings at which CLECs have rights to serve only a very limited number of floors, with the two merger parties – either Verizon and MCI, or SBC and AT&T – covering the entire building. In these buildings, post-merger, most tenants will have with no competitive alternative because the CLEC is not connected to their floor. Nevertheless, the Justice Department counts these as 3-to-2 buildings, for which no remedy at all is proposed.

The Justice Department's December 13 Reply dodges the point by referring to a statement by Dr. Nicholas Economides, the New York Attorney General's consultant, to the effect that, in constructing loops to reach a customer in a particular building, CLECs also tend to include surplus capacity to serve additional building customers. DOJ Reply Submission of December 13, 2006, at 9 (quoting Economides Dec. ¶ 45, n.34). But surplus capacity remains just that unless the CLEC can obtain owner or landlord consent to connect customers in the remainder of the building where the CLEC did not have pre-merger access rights. And the Justice Department's own Complaints list "difficulty of securing the necessary consent" as a barrier to CLEC entry. Verizon Complaint ¶ 27; SBC Complaint ¶ 27.

Accordingly, even assuming available CLEC capacity, that does not justify ignoring these 3-to-2 buildings where, post merger, the CLEC lacks any right to connect to most of the building. The anti-competitive effect in such buildings, reflected in the lack of customer choice, post merger, is the same as that underlying the remedy that the Department has offered for those 2-to-1 buildings that the Department has identified in the proposed final judgments.

## III

## LOCAL PRIVATE LINE PRODUCTS ARE NOT "COMMODITIES"

The Department of Justice asserts that local private line products are commodities – similar to wheat, corn and soybeans. If that really were so, then companies selling these items – Verizon and SBC, for example – should be reporting relatively low profitability. That is a characteristic of commodity markets, where intense price competition drives prices close to cost.

However, public evidence, filed with the FCC and cited in Dr. Economides' declaration in this proceeding, shows that SBC's 2005 rate of return for Local Private Lines was a whopping 91.7%, while Verizon's was 41.6%. Economides Declaration ¶ 48. These very high profitability rates, unchallenged by the Justice Department, directly contradict the Department's assertion that this is a commodity market.

In no way, shape or form can Local Private Line services be considered a commodity product. That the Department of Justice makes this argument at all speaks volumes.

## CONCLUSION

The Department of Justice has failed to meet its burden of proof under the Tunney Act. The Department has not shown, and cannot show, that the proposed final judgments are in the public interest. Accordingly, this Court should reject the two proposed consent decrees.

Dated: New York, New York
       December 21, 2006

Respectfully Submitted,

ELIOT SPITZER
Attorney General of the State of New York

By:   /s/ Jay L. Himes
       Jay L. Himes
       Chief, Antitrust Bureau
       120 Broadway
       Suite 26C
       New York, NY 10271
       212-416-8282

Mary Ellen Burns
Special Counsel
Public Advocacy Division

Keith H. Gordon
Assistant Attorney General
Consumer Frauds and Protection Bureau