UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
|                                      |
| UNITED STATES OF AMERICA,           )
|                         Plaintiff,  )
|                                     )
|         v.                          )
|                                     )   Civil Action No. 1:05CV02102 (EGS)
| SBC COMMUNICATIONS, INC. and        )
| AT&T CORP.,                         )
|                         Defendants. )
|_____)
|                                     )
| UNITED STATES OF AMERICA,           )
|                         Plaintiff,  )
|                                     )
|         v.                          )
|                                     )   Civil Action No. 1:05CV02103 (EGS)
| VERIZON COMMUNICATIONS, INC.        )
| and MCI, INC.,                      )
|                         Defendants. )
|_____)

**MOTION TO SUPPLEMENT SPRINT NEXTEL CORPORATION'S
RESPONSE TO THE UNITED STATES' REPLY
TO ALLEGATIONS MADE BY AMICI AT NOVEMBER 30, 2006 HEARING**

Pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, Sprint Nextel Corporation moves to file this supplemental memorandum to call the Court's attention to events that occurred since the filing of the response that Sprint Nextel filed jointly with other amici on December 21, 2006.[1]  Those recent events involve the approval by the Federal Communications Commission ("Commission" or "FCC") of AT&T's merger

---

[1] Pursuant to Local Civil Rule 7(m), Sprint Nextel informed counsel for the Department of Justice ("DOJ"), the defendants, and the other amici of its intent to file this Motion. AT&T and Verizon indicated that they object and DOJ stated that it does not consent.

with BellSouth pursuant to conditions that may broaden the effect of this Court's decision if it rejects the proposed consent decrees.

On December 28, 2006, AT&T Corporation submitted a list of commitments to the FCC concerning its merger with BellSouth. The next day, the Commission accepted the commitments and issued a news release announcing its approval of the merger, effective December 29, 2006.[2] The commitments included a promise to make divestitures in the AT&T/BellSouth merger similar to those required by DOJ in the mergers before this Court. Exhibit A (Merger Commitments) at 10.[3]

Although those divestitures are utterly insufficient to restore the competition lost on account of the mergers, the commitments also included a promise to make additional divestitures or to negotiate additional conditions to govern the AT&T/BellSouth merger if additional divestitures or conditions result from a denial of the pending motions to

---

[2] The FCC's news release, which appended a copy of AT&T's commitments, are attached as Exhibit A. The public, including amici, were not given the opportunity to comment on the adequacy of the commitments offered by AT&T. Although those commitments are in some respects more substantial than the conditions and divestitures required as part of the SBC/AT&T merger and the Verizon/MCI merger, they are not adequate to restore the competition lost on account of the merger. In any event, the commitments AT&T made as part of its acquisition of BellSouth do not correct the deficiencies in the proposed consent decrees concerning the SBC/AT&T merger or the Verizon/MCI merger.

[3] The divestitures themselves relate to only 31 buildings in the entire AT&T/BellSouth overlap regions. Even the briefest review of AT&T's building list (Exhibit A at 19) discloses gross errors in identifying divestiture locations. Buildings are said to be located in "Lauderhill, TN" and "Sunrise, TN," but the addresses bear Florida zip codes. Lauderhill and Sunrise are in fact in Florida. Other buildings are said to be located in "Nashville, FL," although the corresponding zip code is in Tennessee. Of course, at some point, these errors will be discovered and corrected. The fact that they exist at all, however, is telling: the lack of attention that produced these mistakes is a by-product of the trivial value of the divestiture offer itself.

approve the proposed consent decrees.  The relevant language in AT&T's submission to the FCC provides:

> If it is found in a final, non-appealable order, that the remedy in the Consent Decree [for the SBC/AT&T merger] is not adequate to address the concerns raised in the Complaint and AT&T and the DOJ agree to a modification of the Consent Decree (the "Modified Consent Decree"), then AT&T agrees that (1) AT&T/BellSouth will conform its divestiture of the BellSouth Divestiture Assets to the terms of the Modified Consent Decree; and (2) AT&T/BellSouth will negotiate in good faith with the Commission to determine whether the conditions imposed on AT&T/BellSouth in the Commission order approving the merger of AT&T and BellSouth satisfies, with respect to the BellSouth territory, the concerns addressed in the Modified Consent Decree.

Exhibit A (Merger Commitments) at 11.

The FCC has not yet issued its Order approving the merger.  However, two members of the four-member Commission (one commissioner recused himself because he previously worked for COMPTEL) addressed the Tunney Act provision in statements issued on December 29, 2006.[4]

Commissioner Copps began by noting that in October "the U.S. Department of Justice incomprehensibly concluded that it had no concerns about the AT&T/BellSouth merger."  Exhibit B (Statement of Comm'r Copps) at 1.  He found that particularly surprising because the Government Accountability Office recently found that "only 6% of buildings with demand for special access services have any competitive alternative besides the incumbent LEC" and that "the FCC's de-regulatory 'price flex' regime has actually led to higher prices in the very areas where one would ordinarily expect to find lower prices."  *Id*. at 6.

---

[4] Their statements, and the Joint Statement of Chairman Martin and Commissioner Tate, are attached as Exhibit B.

>With respect to the Tunney Act commitment, Commissioner Copps stated:
>
>We have also been quite cognizant in recent months of the Tunney Act proceeding concerning the prior merger between SBC and AT&T that is currently pending in district court. While the resolution of this issue will ultimately be between the federal courts and the Justice Department, I do believe the FCC's public interest review of this merger must take into account a concern about whether the ultimate decision in the prior mergers will be reflected in this current, related merger. To alleviate this concern, the company has agreed to come back to the FCC after the courts and the Justice Department have resolved the pending proceeding to work with us in good faith to ensure that any remedies ultimately imposed in the prior merger are adequately addressed here.

*Id.* at 7.

Commissioner Adelstein also criticized the Department of Justice for approving the AT&T/BellSouth merger "without the imposition of even a single condition to protect competition or consumers." Exhibit B (Statement of Comm'r Adelstein) at 2. In light of AT&T's dominance in the special access markets in its 22-state region, he noted that it could "raise prices as a result of diminished competition," which "would directly impact the cost and availability of services for large and small businesses, schools, hospitals, government offices, and independent wireless providers." *Id*. at 5.

>With respect to the Tunney Act commitment, Commissioner Adelstein stated:
>
>It is worth noting that, even as we move forward with this proposed merger, a federal court is still reviewing the historic Bell-IXC mergers approved by DOJ and the Commission last year, and the adequacy of the conditions imposed on those mergers. With that review pending, leading members of Congress on a bi-partisan basis have raised questions about whether it is appropriate to move forward with review of this transaction. Both this Order and the Commission's orders in last year's mergers take note of DOJ's review and conclusions, so I am pleased that the applicants have committed to apply the result of any changes in the consent decree regarding the divested buildings in the SBC-AT&T merger in the BellSouth territory, as well. I have serious reservations about whether the divestiture analysis applied by DOJ adequately reflects the competitive harms, so I was also pleased that AT&T has agreed to consult with the

> FCC on the need for further conditions, should the Tunney Act review
> process lead to the imposition of greater conditions for last year's mergers.

*Id*. at 6-7.

As Commissioner Adelstein suggested, this proceeding should lead to imposition of substantially more significant conditions designed to restore the competition lost on account of the mergers. In the case arising from the merger of The Thomson Corporation and West Publishing Company, DOJ responded to the court's Tunney Act decision rejecting its proposed consent decree, *United States v. The Thomson Corp.*, 949 F. Supp. 907 (D.D.C. 1996), by negotiating a consent decree with stricter terms, *United States v. The Thomson Corporation*, 1997 U.S. Dist. LEXIS 1893 (D.D.C. 1997), and that is what should happen here. Following a decision by this Court denying the motions to approve the proposed final judgments, DOJ should attempt to require the merging parties to agree to terms that restore the competition lost on account of these mergers. *See* Nov. 30, 2006, Tr. 51 (statement of counsel that DOJ would negotiate with the parties to determine whether "we could fix it in a way that would satisfy the Court").

In the response of amici that Sprint Nextel joined on December 21, 2006, and at the November 30, 2006, hearing, we urged the Court to bring these proceedings to an end by denying the motions to enter the proposed consent decrees. The conditions placed on the AT&T/BellSouth merger by the FCC make it all the more important that this Court reject the proposed consent decrees. Such a denial should spur DOJ to insist upon substantial divestitures and other conditions that restore the competition lost on account of these mergers, and the FCC has ensured that those conditions will apply to the AT&T/BellSouth merger as well. If DOJ does not respond appropriately to a denial of its

motions, Congress or the FCC may take the steps necessary to restore the competition lost on account of these mergers.

                                      Respectfully submitted,

                                      _____/s/_____
                                      Christopher J. Wright
                                              D.C. Bar No. 367384
                                      Timothy J. Simeone
                                              D.C. Bar No. 453700
                                      Joseph C. Cavender
                                              D.C. Bar No. 499613
                                      Harris, Wiltshire & Grannis LLP
                                      1200 Eighteenth Street, N.W, 12th Floor
                                      Washington, D.C. 20036
                                      (202) 730-1300

January 4, 2006                                  *Counsel for Sprint Nextel Corporation*