**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>      **Plaintiff,**<br>  v.<br><br>**SBC Communications, Inc. and AT&T Corp.,**<br><br>      **Defendants.** | Civil Action No. 1:05CV02102 (EGS) |
| **UNITED STATES OF AMERICA,**<br><br>      **Plaintiffs,**<br>  v.<br><br>**Verizon Communications, Inc. and MCI, Inc.,**<br><br>      **Defendants.** | Civil Action No. 1:05CV02103 (EGS) |

**COMPTEL'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO
INTERVENE FOR PURPOSES OF APPEAL**

*Amicus curiae* and proposed intervenor COMPTEL respectfully submits this Reply in Support of its Motion for Leave to Intervene for Purposes of Appeal.

**INTRODUCTION**

The Oppositions of the Government and the merged parties do not contest that unless COMPTEL's motion to intervene is granted the significant and novel issues that received this Court's consideration for the past year and half will escape appellate review. Instead, the parties claim that COMPTEL's post-judgment intervention ought be rejected simply because

COMPTEL's pre-judgment motion to intervene was denied. But this Court has recognized in previous cases that post-judgment intervention for the purposes of appeal is appropriate in a Tunney Act case even if pre-judgment intervention was denied. Ironically, the parties themselves relied heavily on this distinction in their opposition to COMPTEL's initial motion to intervene. Now that these proceedings have moved to the post-judgment stage, the parties contradict themselves and argue that the instant post-judgment intervention request ought be evaluated as if it were made at the pre-judgment stage. Of course, doing that would ignore the previous Tunney Act cases where this Court has allowed third parties to intervene following entry of final judgment after previously denying those same third parties' pre-judgment intervention. Without such intervention, there will be no appellate review of the Court's public interest determination, and, in this case, interpretation of the 2004 Tunney Act amendments.

The parties also argue that COMPTEL lacks a "claim" that shares a common question of law or fact with the main action. In doing so, the parties apply a much stricter reading of Rule 24's requirements than that ordered by the D.C. Circuit, and ignore the ample evidence of actual, concrete harm that COMPTEL's members will suffer as a direct result of these mergers and the inadequate remedies provided in the Final Judgments.

**ARGUMENT**

I.  **Post-Judgment Intervention for Purposes of Appeal Is Often Appropriate As a Result of the Changed Circumstances That Exist After Judgment**

The parties argue that nothing has changed since COMPTEL's initial motion to intervene to justify intervention at this point in the proceedings. Verizon's Opp'n to COMPTEL's Mot. for Leave to Intervene for Purposes of Appeal ("Verizon's Opp'n") at 1; AT&T Inc.'s Opp'n to COMPTEL's Mot. for Leave to Intervene for Purposes of Appeal ("AT&T's Opp'n") at 1. The parties' argument that the Rule 24 inquiry following entry of the Final Judgments is identical to

2

the pre-judgment inquiry is surprising given the contrary position taken in opposition to COMPTEL's initial Motion for Leave to Intervene ("Initial Motion"). *See* AT&T Inc.'s Opposition to COMPTEL's Motion for Leave to Intervene, or in the Alternative, to Participate as *Amicus Curiae* ("AT&T Initial Opp'n") at 9-10 (citing *United States v. Am. Tel. & Tel. Co.*, 552 F. Supp. 131 (D.D.C. 1982); United States' Opposition to COMPTEL's Motion for Leave to Intervene, or in the Alternative to Participate as Amicus Curiae ("Gov't Initial Opp'n") at 9.

In response to COMPTEL's initial motion to intervene, the parties argued that pre-judgment motions to intervene are different from post-judgment motions to intervene, and that proposed intervenors must meet a higher standard when moving to intervene prior to judgment. For example, AT&T stated:

> The decision in *United States v. AT&T*, 552 F. Supp. 131 (D.D.C. 1982), a case on which COMPTEL repeatedly relies (COMPTEL Mem. at 6-7, 15), does not change the high standard required to permit pre-judgment intervention. In fact, Judge Greene repeatedly denied requests to intervene, stating that 'the public comment procedures provided ample protection for all legitimate interests at that stage of the proceeding.' *Id.* at 146 n.61. Only *after* the Court had entered a final judgment in the proceedings did he grant intervention, for purposes of appeal and other post-judgment proceedings. *Id.* at 219 & n.365. The concerns with delay in post-judgment proceedings may not be as great as those pre-judgment. *See Microsoft*, 373 F.3d at 1236 (allowing intervention for the limited purpose of appealing the district court's public-interest determination).

AT&T Initial Opp'n at 9-10 (emphasis in original). AT&T now takes the opposite position, ignoring entry of the final judgment, and argues that "nothing has changed to lend merit to [COMPTEL's] arguments." AT&T Opp'n at 1.

The Government also relied heavily on the distinction between pre-judgment and post-judgment intervention in its opposition to COMPTEL's Initial Motion: "Judge Greene denied all

3

motions to intervene in the Tunney Act proceedings, although he nevertheless permitted extensive participation and granted intervention for proceedings to be held *after* the public interest determination and entry of judgment." Government Initial Opp'n at 9 (internal citations omitted and emphasis in original). Tellingly, the Government's current opposition fails to address two key differences between pre-judgment intervention and post-judgment intervention.[1] First, prior to intervention, COMPTEL's views were heard through its participation as an *amicus*. Following entry of judgment, COMPTEL will have no such opportunity to share its perspective – and that of its members who are customers and competitors of the merged companies. Second, without COMPTEL's post-judgment intervention, there will be no appellate review of the Court's public interest determination and its interpretation of the 2004 Tunney Act amendments.

The parties also offer no meaningful distinction between the instant case and this Court's decision to grant a pre-judgment *amicus* post-judgment intervention for purposes of an appeal in *United States v. Thomson Corp.*, No. 96-1415, 1997 WL 90992 (D.D.C. Feb. 27, 1997). AT&T seems to concede that *Thomson* is on all fours with this case, by only pointing out in a footnote that the D.C. Circuit has not explicitly approved its holding. AT&T Opp'n at 3 n.2.

The Government's only attempt to distinguish *Thomson* rests on its incorrect claim that unlike the intervenor in *Thomson*, "COMPTEL has not attempted to make such a showing of harm from the entry of the decrees here." United States' Opp'n to COMPTEL's Mot. for Leave to Intervene for Purposes of Appeal ("Gov't Opp'n") at 3. As detailed below, COMPTEL has shown throughout these proceedings the harms its members will suffer as a result of the Final

---

[1] Verizon did not argue in its Opposition to COMPTEL's Initial Motion that pre-judgment intervention differed from post-judgment intervention, but it cannot and does not dispute that this Court in *United States v. Am. Tel. &Tel. Co.*, 552 F. Supp. 131 (D.D.C. 1982) and *United States v. Thomson Corp.*, No. 96-1415, 1997 WL 90992 (D.D.C. Feb 27, 1997) recognized the important distinction between pre-judgment and post-judgment intervention.

4

Judgments, including forced dependence on the merged companies for transport, and drastically reduced choice among Local Private Line service providers.

Verizon takes a different approach, claiming that *Thomson* should be distinguished because of a "development that took place *after* the court had already approved the settlement" in *Thomson*. Verizon Opp'n at 2 n.2. But the "development" Verizon points to -- that Lexis-Nexis (a pre-judgment *amicus*) had agreed to purchase the divestiture assets and would no longer be challenging the merger -- only emphasized the importance of granting appellate intervention to HyperLaw (the remaining *amicus*). Indeed, when the *Thomson* Court denied Lexis's and HyperLaw's initial motions to intervene, it recognized the possibility of post-judgment intervention: "Lexis-Nexis may, if it chooses, renew its motion to intervene for purposes of appeal…." *United States v. Thomson Corp.*, No. 96-1415, 1996 U.S. Dist. LEXIS 14819 at *7 n.3 (D.D.C. Sept. 25, 1996).

Later, the Court relied on the removal of Lexis-Nexis as a potential appellant as a reason for granting HyperLaw leave to intervene to appeal the final judgment:

> Having accepted the substantive positions of plaintiffs and defendants, Lexis-Nexis is no longer in a position to ensure that the Final Judgment is properly tested in the appellate crucible. More importantly, Lexis-Nexis has agreed that, upon execution of the Purchase and Sale Agreement governing the sale of the Divestiture Products by Thomson to Lexis-Nexis, Lexis-Nexis will withdraw its appeal with prejudice….HyperLaw therefore remains the only potential appellant prepared to test the validity of the Final Judgment.

*United States v. Thomson Corp.*, No. 96-1415, 1997 WL 90992 at *4 (D.D.C. Feb. 27, 1997). This Court's concern was that the Final Judgment be "properly tested in the appellate crucible." Lexis's purchase of the divested assets only affected the court's decision as to *which* party should intervene, not *whether* intervention was appropriate as Verizon suggests. Here, just like

in *Thomson*, COMPTEL's intervention provides the only means for this Court's important decision to receive appellate review.

## II.     COMPTEL Has a Claim Under the Meaning of Rule 24

None of the parties dispute that the D.C. Circuit has adopted an interpretation of Rule 24 that "eschew[s] strict readings of the phrase 'claim or defense.'" *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). For example, in *United States v. Am. Tel. & Tel. Co.*, this court allowed intervention based on an "interest" in the action. 552 F. Supp. 131, 219 n.365 (D.D.C. 1982) ("In order to permit interested persons to challenge the Court's public interest determination, they will be allowed to intervene for the purpose of appealing the entry of the decree.") *See also*, *United States v. W. Elec. Co.*, No. 82-0192, 1987 WL 56667 at *1 (D.D.C. Feb. 4, 1987) ("The Court, however, will grant limited intervenor status to those persons or entities with legitimate interests in the issues raised and the changes recommended in the papers filed by the Department and AT&T.")

Despite the parties' claims to the contrary, *see* Verizon Opp'n at 2 and n.1; Gov't Opp'n at 3; AT&T Opp'n at 3-4, COMPTEL has a very real interest in this Tunney Act proceedings, and has provided many examples of actual, concrete harm its members will suffer as a result of competitive harms identified in the Complaints and the inadequate remedies provided in the final judgments.[2] As COMPTEL stated in its Comments filed with the Department of Justice, "COMPTEL's members are the primary remaining customers and competitors of the surviving entities of the respective mergers, and, therefore, have a strong interest in securing appropriate divestiture relief." COMPTEL Comments at 2. For example, "[t]hese mergers harm

---

[2]     The parties also suggest that COMPTEL will seek to expand appellate proceedings beyond the scope of the Complaints. To the contrary, COMPTEL has limited its arguments to the proper scope of the proceedings, that is, whether the remedies imposed by the consent decrees adequately address the competitive harm identified in the Complaints and are in the public interest.

6

COMPTEL's members as wholesale customers who lose the ability to purchase Local Private Line Services from AT&T instead of SBC or from MCI instead of Verizon. Following the merger, COMPTEL's members will face dramatically concentrated Local Private Line service markets that will now further foreclose access to non-Bell transmission facilities in dozens of cities." Initial Motion at 5. COMPTEL's members who act as competitors to the merged companies will also suffer harm as a result of the mergers because "[t]he limited divestitures ensure that the buyer remains dependent on the monopolist merged companies for transport to the buyer's telecommunication network. Given the merged companies' incentives as competitors of the buyer, there is a significant likelihood that the terms of service offered to the buyer will be unfavorable and meant to stifle, not encourage, competition." *Id.* at 17. Having demonstrated the competitive harm its members will suffer and its resulting interest in this proceeding, COMPTEL satisfies the standards for Rule 24 intervention.

## CONCLUSION

For the reasons stated above and set forth in COMPTEL's Motion to Intervene for Purposes of Appeal, COMPTEL's Motion to Intervene should be granted.

Dated:  June 4, 2007                                  Respectfully submitted,


_____/s/_____
Kevin R. Sullivan (D.C. Bar No. 411718)
Peter M. Todaro (D.C. Bar. No. 455430)
King & Spalding LLP
1700 Pennsylvania Avenue N.W.,
Washington, D.C. 20006
(202) 737-0500
(202) 626-3737 (fax)

Jonathan D. Lee (D.C. Bar No. 435586)
Mary Albert (D.C. Bar No. 347617)
COMPTEL
900 17th Street N.W., Suite 400
Washington, D.C. 20006
(202) 296-6650
(202) 296-7585 (fax)

*Attorneys for Amicus and Proposed Intervenor COMPTEL*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2007, a true and correct copy of COMPTEL'S Reply in Support of Its Motion for Leave to Intervene was filed via the Court's ECF system and the following were served by U.S. mail:

Lawrence M. Frankel
Matthew C. Hammond
U.S. DEPARTMENT OF JUSTICE
City Center Building
1401 H Street, NW
Antitrust Division
Washington, DC 20530

*Attorneys for the United States*

Michael Lovern, Sr.
3713 Parke Drive
Edgewater, MD 21037

Wendy Carrillo
Senior Paralegal